UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JANET MALAM<br><br>        Petitioner- Plaintiff<br><br>        v.<br><br>REBECCA ADDUCCI, in her official capacity as Detroit District Director of U.S. Immigration & Customs Enforcement; MATTHEW T. ALBENCE, in his official capacity as Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration & Customs Enforcement; CHAD WOLF, in his official capacity as Acting Secretary, U.S. Department of Homeland Security;  WILLIAM P. BARR, in his official capacity as Attorney General, U.S. Department of Justice; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; HEIDI E. WASHINGTON, in her capacity of Director of Michigan Department of Corrections Calhoun Correctional Facility<br><br>        Respondents-Defendants. | CIVIL ACTION N._____ |

**PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Now comes Petitioner JANET MALAM, by and through her undersigned counsels, and file this application for Temporary Restraining Order.

Pursuant to Fed. R. Civ. P. 65, Petitioner seeks a Temporary Restraining Order 1) releasing her on this Court own recognizance, subject to reasonable and appropriate conditions,

1

and 2) restraining Respondents, in their official capacities from arresting Petitioner for civil immigration detention purposes during pendency of her immigration proceedings.

WHEREFORE, for the reasons set forth in the accompanying brief, Petitioner respectfully requests this Court to grant the Temporary Restraining Order pending decision on Writ of Mandamus and Complaint for Declaratory and Injunctive Relief.

Dated: March 30, 2020        Respectfully submitted,

*/s/ Andrew D. Stacer*
Attorney for Plaintiff
Stacer, PLC
472 Starkweather St.
Plymouth, MI 48170
734-453-7878
astacer@stacerplc.com

*/s/ Rosana M. Garbacik*
Attorney for Plaintiff
Stacer, PLC
472 Starkweather St.
Plymouth, MI 48170
734-453-7878
rgarbacik@stacerplc.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| JANET MALAM<br><br>　　　　　Petitioner- Plaintiff<br><br>　　　　　v.<br><br>REBECCA ADDUCCI, in her official capacity as Detroit District Director of U.S. Immigration & Customs Enforcement; MATTHEW T. ALBENCE, in his official capacity as Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration & Customs Enforcement; CHAD WOLF, in his official capacity as Acting Secretary, U.S. Department of Homeland Security;  WILLIAM P. BARR, in his official capacity as Attorney General, U.S. Department of Justice; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; HEIDI E. WASHINGTON, in her capacity of Director of Michigan Department of Corrections Calhoun Correctional Facility<br><br>　　　　　Respondents-Defendants. | CIVIL ACTION N._____ |

**PETITIONER'S BRIEF IN SUPPORT OF PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER**

In support of her application, Janet states the following:

Janet is 56 years old United Kingdom national who came to the United States in a lawful permanent resident status when she was 5 years old. Immigration and Customs Enforcement

3

(ICE) has been subjecting her to immigration detention since March 4, 2020 in connection to removal proceedings pending in Detroit Immigration Court.

Janet is detained in Calhoun Correctional Facilities, in Battle Creek MI where it is very likely that detainees or staff have tested positive for COVID-19. Michigan Department of Corrections (MDOC) is not releasing information of which jails inmates and staff are testing positive to COVID-19 but press releases has confirmed that nearly 13 inmates have of March, 26,2020 have tested positive and other 10 are being quarantine due to Influenza. [1]

In addition, Janet is 56 years old and suffers from serious medical conditions and faces an imminent risk of death or serious injury in immigration detention if exposed to COVID-19. Janet has a lengthy story serious multiple sclerosis, alcoholism and cigarettes additions, multiple sclerosis, bipolar disorder; pain; anemia, essential primary hypertension, hypothyroidism, CHRONIC OBSTRUCTIVE PULMONARY DISEASE, fibromyalgia, mild cognitive impairment, carpal tunnel syndrome, severe major depressive disorder, opioids addition, polyneuropathy.

## LEGAL STANDARD

Motions for temporary restraining orders are governed by a four-factor test (the same test as for preliminary injunctions): Courts consider whether petitioners have shown: (1) a likelihood of success on the merits, (2) that they are likely to suffer irreparable harm in the absence of such relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); see also *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir.

---

[1] https://www.mlive.com/public-interest/2020/03/michigan-prisons-prep-for-possibility-of-coronavirus-spread-among-inmate-population.html last checked on March 27, 2020.

4

2006) ("'These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.' *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay. See id.").

## ARGUMENT

### I. JANET WILL LIKELY SUCCEED ON HER CLAIM THAT DETENTION VIOLATES DUE PROCESS

The Due Process Clause of the Fifth Amendment to the United States Constitution forbids the government from depriving a person of life, liberty, or property without due process of law. The protection applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Janet is in continued confinement in ICE civil detention while COVID-19 is spreading in Michigan jails and detention centers violates her due process rights. ICE is well aware that the conditions that it is currently imposing on Janet are posing an excessive risk to her health but refuses to take action and release Janet from custody. ICE showed deliberate indifference to her bond request and showings of health conditions.

The spread of COVID-19 is measured in a matter of a single day—not weeks, months, or years—and Respondent appear to ignore this condition of confinement that will likely cause imminent, life-threatening illness.

### II. JANET WILL SUFFER IRREPARABLE HARM ABSENT EMERGENCY RELIEF

The harm to Janet is highly likely, grievous and irreparable. Coronavirus is spreading exponentially in Michigan and in the United States, as the official numbers are being released, it is more likely that the virus will spread where Janet is detained. Moreover, the Center for Disease Control (CDC) guidance provides that people over the age of fifty and those with certain medical conditions face greater chances of serious illness or death from COVID-19. The COVID-19 outbreak in the state of Michigan resulted in unprecedented health measures to facilitate and enforce social distancing. The risk of harm is so outrageous that President Trump found and proclaimed that the COVID-19 outbreak in the United States constituted a national emergency, beginning March 1, 2020.[2] Whereas, on March 23, 2020, State of Michigan Governor Whitmer issued an executive order, in response to the COVID-19 outbreak, urging all residents to stay home except for essential services and suspending activities that are not necessary to sustain or protect life in the state, effective by midnight of March 24, 2020.[3] Michigan has became one of the global epicenters of the outbreak, Michigan is one of the states with the largest COVID-19 outbreak in the United States and one of the largest outbreaks in the world with a more than 2,294 reported cases and at least 43 deaths reported.

The nature of detention facilities makes exposure and spread of the virus particularly harmful. Medical doctors, including two medical experts for the Department of Homeland Security, have warned of a "tinderbox scenario" as COVID-19 spreads to immigration detention

---

[2] Proclamation 9994 of March 13, 2020, https://www.federalregister.gov/documents/2020/03/18/2020-05794/declaring-a-national-emergency-concerning-the-novel-coronavirus-disease-covid-19-outbreak last checked on March 24, 2020

[3] MI Executive Order 2020-21 (COVID-19) Temporary Requirement https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-522626--,00.html

6

centers and the resulting "imminent risk to the health and safety of immigrant detainees" and the public. [4]

Janet faces serious risks to her health in confinement. Her underlinying illness and older age put her in heightened risk to fight COVID-19. Therefore, one day or even one week can be too late to save her life, once infected. The best way to care for her wellbeing is preventing that she can get infected.

A number of courts have recognized the threat that COVID19 poses to individuals held in jails and other detention facilities. See *United States v. Stephens*, No. 15 Cr. 95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) ("[I]nmates may be at a heightened risk of contracting COVID-19 should an outbreak develop.") (collecting authorities); *United States v. Garlock*, 18 Cr. 418, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) ("By now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided. Several recent court rulings have explained the health risks—to inmates, guards, and the community at large—created by large prison populations. The chaos has already begun inside federal prisons—inmates and prison employees are starting to test positive for the virus, quarantines are being instituted, visits from outsiders have been suspended, and inmate movement is being restricted even more than usual." (citations omitted)); Indeed, at least one court has ordered the release on bail of a non-citizen in immigration detention on the ground that detention conditions have been rendered unsafe by COVID-19. *Calderon Jimenez v. Wolf*, No. 18 Civ.10225 (D. Mass. Mar. 26, 2020).

Courts have also recognized that health risk to be particularly acute—and of constitutional significance—for inmates who are elderly or have underlying illnesses. See *United*

---

[4] Catherine E. Shoichet, Doctors Warn of "Tinderbox scenario" if Coronavirus Spreads in ICE Detention, CNN (Mar. 20, 2020), https://www.cnn.com/2020/03/20/health/doctors-ice-detention-coronavirus/index.html

7

*States v. Martin,* No. 19 Cr. 140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020) ("[T]he Due Process Clauses of the Fifth or Fourteenth Amendments, for federal and state pretrial detainees, respectively, may well be implicated if defendants awaiting trial can demonstrate that they are being subjected to conditions of confinement that would subject them to exposure to serious (potentially fatal, if the detainee is elderly and with underlying medical complications) illness.").

At least one court has ordered the release on bail of an inmate facing extradition on the basis of the risk to his health the pandemic poses. *Matter of Extradition Toledo Manrique*, No. 19 MJ 71055, 2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020) ("These are extraordinary times. The novel coronavirus that began in Wuhan, China, is now a pandemic. The nine counties in the San Francisco Bay Area have imposed shelter-in-place orders in an effort to slow the spread of the contagion. This Court has temporarily halted jury trials, even in criminal cases, and barred the public from courthouses. Against this background, Alejandro Toledo has moved for release, arguing that at 74 years old he is at risk of serious illness or death if he remains in custody. The Court is persuaded. The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail.").

The risk that Janet will face a severe, and quite possibly fatal, infection if she remains in immigration detention constitutes irreparable harm warranting a TRO. See *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (upholding finding of irreparable harm "premised . . . upon [the district court's] finding that [plaintiff] was subject to risk of injury, infection, and humiliation"); *Mayer v. Wing*, 922 F. Supp. 902, 909 (S.D.N.Y. 1996) ("[T]he deprivation of life-sustaining medical services . . . certainly constitutes irreparable harm.").

## III. THE BALANCE OF HARMS AND PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF EMERGENCY RELIEF

The balance of harms and public interest weigh strongly in favor of granting emergency relief. See *Winter*, 555 U.S. at 24. In contrast to the irreparable with have eminent risk of death. The balance of equities is substantially more favorable to Janet, who has a strong cancellation of removal claim, and should not be civil detained pending removal proceedings.

Finally, the public interest also strongly favors release, because the public benefits from a fair immigration system, which means an immigration system that does not incarcerated people that have been living legally in this country for over 50 years in terrible health conditions and in disregard to her health needs.

This is precisely the situation in which a TRO is warranted: when "the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined, then there is cause to preserve the status quo." *Reid v. Hood*, No. 1:10 CV2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

## CONCLUSION

WHEREFORE, for the reasons set forth, Petitioner respectfully requests this Court to grant the Temporary Restraining Order to 1) release Petitioner on this Court own recognizance, subject to reasonable and appropriate conditions, and 2) restrain Respondents, in their official capacities from arresting Petitioner for civil immigration detention purposes during pendency of her immigration proceedings.

Dated: March 30, 2020                              Respectfully submitted,

/s/ Andrew D. Stacer
Attorney for Plaintiff
Stacer, PLC
472 Starkweather St.
Plymouth, MI 48170
734-453-7878
astacer@stacerplc.com

/s/ Rosana M. Garbacik
Attorney for Plaintiff
Stacer, PLC
472 Starkweather St.
Plymouth, MI 48170
734-453-7878
rgarbacik@stacerplc.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2020 the foregoing Application for Temporary Restraining Order was served by certified mail with return receipt requested:

**Rebecca Adducci,** U.S. Immigration and Customs Enforcement, Detroit Field Office, Office of the General Counsel, U.S. Department of Homeland Security 2707 Martin Luther King Jr. Ave, Se, Mail Stop 0485, Washington, DC 20528-0485;

**Matthew T. Albence,** Deputy Director and Senior Officer Performing the Duties of the Director of ICE, Office of the General Counsel, U.S. Department of Homeland Security 2707 Martin Luther King Jr. Ave, Se, Mail Stop 0485, Washington, DC 20528-0485;

**ICE,** Office of the General Counsel, U.S. Department of Homeland Security 2707 Martin Luther King Jr. Ave, Se, Mail Stop 0485, Washington, DC 20528-0485;

**Chad Wolf,** Acting Secretary of ICE, Office of the General Counsel, U.S. Department of Homeland Security 2707 Martin Luther King Jr. Ave, Se, Mail Stop 0485, Washington, DC 20528-0485;

**William P. Barr**, Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue, N.W. Washington, D.C. 20530-0001;

**Heidi E. Washington,** Director of Michigan Department of Corrections Calhoun Correctional Facility, Grandview Plaza, 206 E. Michigan Ave. P.O. Box 30003, Lansing, MI 48909;

Dated: March 31, 2020            Respectfully submitted,

*/s/ Andrew D. Stacer*
Attorney for Plaintiff
Stacer, PLC
472 Starkweather St.
Plymouth, MI 48170
734-453-7878
astacer@stacerplc.com

*/s/ Rosana M. Garbacik*
Attorney for Plaintiff
Stacer, PLC
472 Starkweather St.
Plymouth, MI 48170
734-453-7878
rgarbacik@stacerplc.com