UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JANET MALAM,

                              Plaintiff,

                - against -

REBECCA ADDUCCI, in her official capacity as
Detroit District Director of U.S. Immigration &
Customs Enforcement; MATTHEW T.
ALBENCE, in his official capacity as Deputy
Director and Senior Official Performing the Duties
of the Director of the U.S. Immigration &
Customs Enforcement; CHAD WOLF, in his
official capacity as Acting Secretary, U.S.
Department of Homeland Security; WILLIAM P.
BARR, in his official capacity as Attorney
General, U.S. Department of Justice; U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT; HEIDI E. WASHINGTON, in
her capacity of Director of Michigan Department
of Corrections Calhoun Correctional Center,

                              Defendants.

No. 2:20-cv-10829-JEL-APP

## MOTION TO INTERVENE BY NON-PARTIES RUBY BRISELDA ESCOBAR AND AMER TOMA AND BRIEF IN SUPPORT

## **MOTION TO INTERVENE**

Ruby Briselda Escobar and Amer Toma (collectively the "Applicants"), by and through the undersigned counsel, respectfully request that they be permitted to intervene as plaintiffs in this action pursuant to Federal Rule of Civil Procedure 24.  The Applicants seek to intervene as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b).

In support of this Motion, the Applicants submit the accompanying Brief in Support.  If intervention is granted, Applicants would expeditiously prepare and submit an Amended Complaint/Petition, and motion for a temporary restraining order/writ of habeas corpus.

In accordance with LR 7.1(a), the Applicants' counsel contacted counsel for the parties to seek their consent on this motion to intervene. Counsel for Plaintiff has no objection to this motion.  Counsel for Defendants object to this motion.

WHEREFORE, the Applicants respectfully request that the Court grant this Motion and allow the Applicants to intervene as plaintiffs in this matter.

Dated:   April 2, 2020

Respectfully submitted,

/s/ Miriam J. Aukerman
Miriam J. Aukerman (P63165)

American Civil Liberties Union
   Fund of Michigan
1514 Wealthy Street SE, Suite 260
Grand Rapids, MI 49506
Telephone: 616-301-0930
maukerman@aclumich.org

Daniel S. Korobkin (P72842)
Monica C. Andrade (P81921)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
Telephone: 313-578-6824
dkorobkin@aclumich.org

David C. Fathi*
Eunice H. Cho*
American Civil Liberties Union
   Foundation, National Prison
   Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
Telephone: 202-548-6616
dfathi@aclu.org
echo@aclu.org

Anand V. Balakrishnan*
Michael K.T. Tan*
Omar C. Jadwat*
ACLU Foundation Immigrants'
   Rights Project

125 Broad Street, 18th Floor
New York, New York 10004
Telephone: 212-549-2660
abalakrishnan@aclu.org
mtan@aclu.org
ojadwat@aclu.org

My Khanh Ngo*
ACLU Foundation Immigrants'
   Rights Project
39 Drumm Street
San Francisco, CA 94111
Telephone: 415-343-0770
mngo@aclu.org

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

/s/ Jeannie S. Rhee
Jeannie S. Rhee
Mark F. Mendelsohn*
Rachel M. Fiorill*
Peter E. Jaffe
2001 K Street NW
Washington, D.C. 20006-1047
Telephone: 202-223-7300
Facsimile: 202-223-7420
jrhee@paulweiss.com
mmendelsohn@paulweiss.com
pjaffe@paulweiss.com
rfiorille@paulweiss.com

Jonathan M. Silberstein-Loeb*
1285 Avenue of the Americas
New York, N.Y. 10019-6064
Telephone: 212-373-3000
Facsimile: 212-757-3990
jsilberstein-loeb@paulweiss.com

*Attorneys for Proposed*
*Intervenor-Plaintiffs*

* Application for admission forthcoming

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

---

JANET MALAM,

                                        Plaintiff,

                    - against -

REBECCA ADDUCCI, in her official capacity as
Detroit District Director of U.S. Immigration &
Customs Enforcement; MATTHEW T.
ALBENCE, in his official capacity as Deputy
Director and Senior Official Performing the Duties
of the Director of the U.S. Immigration &
Customs Enforcement; CHAD WOLF, in his
official capacity as Acting Secretary, U.S.
Department of Homeland Security; WILLIAM P.
BARR, in his official capacity as Attorney
General, U.S. Department of Justice; U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT; HEIDI E. WASHINGTON, in
her capacity of Director of Michigan Department
of Corrections Calhoun Correctional Center,

                                        Defendants.

No. 2:20-cv-10829-JEL-APP

---

## BRIEF IN SUPPORT OF NON-PARTIES RUBY BRISELDA ESCOBAR AND AMER TOMA'S MOTION TO INTERVENE

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 3

DESCRIPTION OF APPLICANTS FOR INTERVENTION ................................. 6

ARGUMENT ..................................................................................... 9

I.    THE APPLICANTS ARE ENTITLED TO INTERVENE AS OF
RIGHT UNDER RULE 24(a)(2) .................................................... 9

    A.    The Applicants' Motion is Timely. ..................................... 9

    B.    The Applicants Have a Substantial Legal Interest in the Case. ......... 10

    C.    The Applicants' Ability to Protect their Interests Will be
Impaired Absent Intervention ............................................ 13

    D.    Ms. Malam Inadequately Represents the Applicants' Interest. ......... 16

II.    IN THE ALTERNATIVE, THIS COURT SHOULD PERMIT THE
APPLICANTS TO INTERVENE UNDER RULE 24(b)(1)(B). ................. 17

CONCLUSION .................................................................................. 19

# INDEX OF AUTHORITIES

**Page(s)**

CASES

*ACLU of Michigan v. Trinity Health Corp. et al.*,
   No. 15-12611, 2016 WL 922950 (E.D. Mich. Mar. 10, 2016)...................18, 19

*Ams. United for Separation of Church & State v. City of Grand
   Rapids*,
   922 F.2d 303 (6th Cir. 1990) ................................................................14

*Bradley v. Milliken*,
   828 F.2d 1186 (6th Cir. 1987) ..............................................................11

*Coalition to Defend Affirmative Action v. Granholm*,
   240 F.R.D. 368 (E.D. Mich. 2006) ......................................................13

*DeShaney v. Winnebago County Dept. of Soc. Servs.*,
   489 U.S. 189 (1989)..............................................................................11

*EEOC v. Guardsmark, LLC,*
   No. 2:13-cv-15229, 2014 WL 12724973 (E.D. Mich. June 5, 2014)..................1

*Grubbs v. Norris*,
   870 F.2d 343 (6th Cir. 1987) ................................................................15

*Grutter v. Bollinger*,
   188 F.3d 394 (6th Cir. 1999) .........................................10, 12, 16, 17

*Helling v. McKinney*,
   509 U.S. 25 (1993)............................................................................7, 11

*Kirsch v. Dean*,
   733 Fed. App'x 268 (6th Cir. 2018) ......................................................9

*Lauve v. Winfrey*,
   No. 17-cv-12726, 2017 WL 6032549 (E.D. Mich. Dec. 6, 2017).......................1

*League of Women Voters of Michigan v. Johnson*,
   902 F.3d 572 (6th Cir. 2018) ..........................................................18, 19

## INDEX OF AUTHORITIES
### (cont'd)

Page(s)

*Linton v. Comm'r of Health & Env't*,
    973 F.2d 1311 (6th Cir. 1992) ............................................................15

*Meriwether v. Trustees of Shawnee State Univ.*,
    No. 18-00753, 2019 WL 2052110 (S.D. Ohio May 9, 2019) ......................14, 15

*Michigan State AFL-CIO v. Miller*,
    103 F.3d 1240 (6th Cir. 1997) ...................................................*passim*

*Midwest Realty Mgmt. Co. v. City of Beavercreek*,
    93 F. App'x 782 (6th Cir. 2004) ........................................................13

*Ne. Oh. Coalition for Homeless v. Blackwell*,
    467 F.3d 999 (6th Cir. 2006) .....................................................14, 15

*Priorities USA v. Benson*,
    No. 19-13188, 2020 WL 1433852 (E.D. Mich. Mar. 24, 2020) .........................19

*Schmid v. Bui*,
    No. 19-cv-01663, 2020 WL 377821 (N.D. Ohio Jan. 22, 2020) .......................15

*Tarazi v. Oshry*,
    No. 10-cv-00793, 2011 WL 1326271 (S.D. Ohio Apr. 4, 2011) .......................12

*Usery v. Brandel*,
    87 F.R.D. 670 (W.D. Mich. 1980) ......................................................12

*United States v. Griswold, Inst., Inc.*,
    No. 85-00752, 1989 WL 16587 (N.D. Ohio Oct. 31, 1989) ...........................12

*United States. v. Michigan*,
    424 F.3d 438 (6th Cir. 2005) ..........................................................17

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ..................................................................11

**STATUTES**

Fed. R. Civ. Proc. 24 .........................................................*passim*

iv

Ruby Briselda Escobar and Amer Toma (collectively the "Applicants"), by and through the undersigned counsel, respectfully submit this memorandum of law in support of their motion to intervene as plaintiffs in this action.

## INTRODUCTION

The Applicants move to intervene in Plaintiff Janet Malam's request for declaratory relief that Defendants' continued immigration-related detention of individuals at increased risk of a severe case of COVID-19 violates the Due Process Clause. The Applicants neither seek to intervene in, nor delay in any way, Ms. Malam's request for a TRO or other immediate relief, which are of the utmost urgency and should be granted forthwith.[1]

---

[1] These papers on their own make abundantly clear the nature of the Applicants' claims, but the Applicants are aware of the requirement under Fed. R. C. Proc. 24(c) to provide a pleading that sets out the claim or defense for which intervention is sought. The majority of circuits, including the 6th Circuit, take a "lenient approach to the procedural requirements of Rule 24(c)" and "courts often rule that 'inconsequential procedural noncompliance with the requirements of Rule 24 should be excused.'" *EEOC v. Guardsmark, LLC*, No. 2:13-cv-15229, 2014 WL 12724973, at *2 (E.D. Mich. June 5, 2014) (quoting *Providence Baptist Church v. Hillandale Comm.*, Ltd., 425 F.3d 309, 314 (6th Cir. 2005)); *accord Lauve v. Winfrey*, No. 17-cv-12726, 2017 WL 6032549, at *1 (E.D. Mich. Dec. 6, 2017). Because of the very tight timeline, and the urgency of the Applicants' circumstances, it was impossible to assemble a pleading to file with this motion, but the Applicants will file one as soon as possible after permission to intervene is granted.

1

The Applicants have a significant interest in Ms. Malam's request for declaratory relief on behalf of individuals who are being held by U.S. Immigration and Customs Enforcement (ICE) at the Calhoun County Correctional Center in Michigan and who are at increased risk of contracting COVID-19, "including all people over fifty years old and persons of any age with underlying medical conditions." ECF 1 at 17.

The Applicants, like Ms. Malam, are being held in civil immigration detention by ICE at Calhoun County Correctional Center. Like Ms. Malam, the Applicants are, by virtue of their pre-existing medical conditions, particularly vulnerable to serious illness or death if infected by COVID-19, and they face a heightened risk of contracting the virus unless they are released immediately. Like Ms. Malam, the Applicants seek immediate release, with appropriate precautionary public health measures, on the ground that their continued detention violates the Due Process Clause. And, like Ms. Malam, the Applicants will be seeking declaratory relief that Defendants' continued detention of individuals at increased risk of a severe case of COVID-19 violates the Due Process Clause.[2]

---

[2]   The Applicants seek to intervene in the instant case because they, like Ms. Malam, are detained in the Calhoun County Correctional Center. The Applicants recognize that there several other emergency habeas cases have been filed in this district, which reflects the exigency of the COVID-19 crisis. But any objection to Applicants' motion on that

2

This motion to intervene is timely, the Applicants have a substantial legal interest in the subject matter of the pending action, their claims share common questions of law and fact with those of Ms. Malam, their ability to protect their interest in the absence of intervention may be impaired by the disposition of the action, and Ms. Malam cannot on her own adequately represent their interest in the declaratory relief she seeks.  The Applicants are therefore entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2).  In the alternative, the Court should permit the Applicants to intervene under Federal Rule of Civil Procedure 24(b)(1)(B).   For these reasons, and for the reasons explained further below, the Court should grant the Applicants' motion to intervene with respect to Ms. Malam's request for declaratory relief.

## BACKGROUND

Ms. Malam has already explained to the Court (*see* ECF 1), and it is now a matter of public record, that the novel coronavirus that causes COVID-19 has led to a global pandemic the likes of which has not been seen for over a hundred years.  In only a few months, at least 900,306 people worldwide

---

basis is meritless: the fact that there are numerous cases already is not a reason to tax further scarce judicial resources by denying intervention here, so that there will be even more cases before even more judges resulting in even more inefficiency.

3

have been diagnosed with the disease, and over 45,693 of those people have died.[3]  Many of the people who have died were elderly or suffered from pre-existing medical conditions.  These are the two populations that are most likely either to suffer serious illness or to die from the disease.  There is no vaccine, there is no known cure, and no one is immune from contracting the disease.  To combat the spread of the coronavirus, the federal government and state governments across the United States have urged at least 294 million people throughout the country to stay at home to avoid contact with other people.[4]  The federal and state governments have taken these extraordinary steps because the only known effective measures to reduce the spread of contagion are social distancing and improved hygiene.

For individuals held in correctional facilities it is virtually impossible to engage in the necessary social distancing and follow the hygiene practices required to mitigate the risk of transmission.  In Michigan, all ICE detainees are held in local jails, including the Calhoun County Correctional Center.

---

[3]  WHO, *Coronavirus Disease (COVID-19) Outbreak Situation* (last accessed Apr. 2, 2020), *available at* https://www.who.int/emergencies/diseases/novel-coronavirus-2019.

[4]  Sarah Mervosh, Denise Lu & Vanessa Swales, *See Which States and Cities Have Told Residents to Stay at Home*, N.Y. Times (last updated Apr. 2, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html.

People in civil immigration detention are confined to small spaces with large groups of people in which they eat, sleep, and live every day, all day in close proximity.  People confined to small spaces with large groups are more likely to contract COVID-19, as already evidenced by the rapid spread of the virus in cruise ships and nursing homes.

The enormity of the dangers faced by people in detention facilities has become self-evident as more of them are testing positive for COVID-19 with each passing day.   For these reasons, leading public health experts have recommended releasing from custody people who are most vulnerable to COVID-19.   Governor Gretchen Whitmer has authorized enhanced early-release for county jails, local lockups, and juvenile detention centers.[5] Similarly, Chief Justice Bridget M. McCormack and Sheriff Matt Saxton encouraged judges and sheriffs to do all they can to reduce and suspend jail sentences.[6]

---

[5]   *See* Executive Order No. 2020-29 (dated Apr. 26, 2020), *available at* https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-523422--,00.html.

[6]   *See* Joint Statement (Mar. 26, 2020), *available at* https://courts.michigan.gov/News-Events/press_releases/Documents/CJ%20and%20MSA%20Joint%20Statement%20draft%202%20%28003%29.pdf.

Owing to pre-existing health conditions, Ms. Malam is particularly vulnerable to serious illness or death if infected by COVID-19 and she is currently in civil immigration detention at the Calhoun Correctional Center. By her emergency petition for writ of habeas corpus and complaint for declaratory and injunctive relief, Ms. Malam asks the Court to vindicate her constitutional rights.   *See* ECF 1.   In her complaint for declaratory and injunctive relief, Ms. Malam seeks, among other things, a declaration "that Defendants' continued detention . . . of individuals at increased risk" of COVID-19, "including all people over fifty years old and persons of any age with underlying medical conditions . . . violates the Due Process Clause." ECF 1 at 17.  As explained further below, Ms. Malam's request for declaratory relief, in which the Applicants seek to intervene, bears directly on the Applicants' legal interests.

## DESCRIPTION OF APPLICANTS FOR INTERVENTION

In keeping with the declaratory relief Ms. Malam seeks, the Applicants have underlying medical conditions that lead to a high risk of serious COVID-19 infection.[7]   If they continue to be detained at the Calhoun County

---

[7]   The underlying medical conditions that lead to a high risk of serious COVID-19 infection include, but are not limited to, blood disorders, such as sickle cell disease or taking blood thinners; chronic kidney disease; chronic liver disease, including cirrhosis and chronic hepatitis; cancer or cancer treatments; organ or bone marrow transplant; individuals taking

Correctional Center during the current outbreak of COVID-19, they face a danger that is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk" and violates their constitutional right to safety in government custody. *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Applicant Ruby Briselda Escobar is a citizen of El Salvador who has been detained by ICE at the Calhoun County Correctional Center since November 2018, for approximately a year and a half. Ms. Escobar is 30 years old and suffers from a brain aneurysm, which manifests with feelings of vertigo, brain fog, dizziness, nausea and vomiting, inability to speak, double vision, and headaches. Ms. Escobar also suffers from a congenital heart murmur, which may have developed into heart disease. She experiences loss of feeling in her fingers and face and she experiences weakness in her limbs, heavy sweating, difficulty breathing, and chest pains. Prior to detention, Ms.

---

immunosuppressant medications; HIV or AIDS; current or recent pregnancy in the last two weeks; diabetes; inherited metabolic disorders and mitochondrial disorders; heart disease, including coronary artery disease, congenital heart disease, and heart failure; lung disease, including asthma and COPD (chronic bronchitis or emphysema); neurological and neurologic development conditions such as cerebral palsy, epilepsy (seizure disorders), stroke, intellectual disability, moderate to severe developmental delay, muscular dystrophy, or spinal cord injury; severe obesity (body mass index [BMI] of 40 or higher); and any other condition or treatment that weakens the immune response.

Escobar took medication to treat symptoms of both conditions; however, while in detention Ms. Escobar is not receiving regular medical treatment from a licensed physician. Ms. Escobar shares a cell with five additional female detainees who utilize bunk-style cots. As a consequence, she is at high risk for severe illness or death if she contracts COVID-19.

Applicant Amer Toma is a citizen of Iraq who has been detained by ICE at Calhoun County Correctional Center since February 2020. He is 55 years old. For seven years following his arrival in the United States as a refugee, Mr. Toma received supplemental security income disability benefits. He suffers from hypotension. Hypotension has been linked to a higher susceptibility and mortality rate for COVID-19. Mr. Toma was hospitalized two years ago for prostate issues, he currently has blood in his stool, and his doctor has advised that he should be tested for cancer. In addition, Mr. Toma has three bullets lodged in his body. He is currently confined to a wheelchair because of pain from these bullets. The bullets have caused infection and put Mr. Toma at increased risk of infection. Mr. Toma's age and medical conditions make it likely that his immune system may be compromised, placing him at high risk of severe illness or death if he contracts COVID-19.

## **ARGUMENT**

I.   **THE APPLICANTS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2).**

A non-party has a right to intervene in an action when: (1) the application to intervene is timely; (2) the applicant has a substantial legal interest in the subject matter of the pending litigation; (3) the applicant's ability to protect that interest in the absence of intervention may be impaired by disposition of the action; and (4) the parties already before the court do not adequately represent that interest. *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997); Fed. R. Civ. Proc. 24(a)(2). The Applicants satisfy each of these elements.

A.   **The Applicants' Motion is Timely.**

The Applicants' motion is undoubtedly timely. Courts "evaluate timeliness in the context of all relevant circumstances and consider the following five factors" in determining whether a motion to intervene is timely: (1) the stage of the litigation; (2) the purpose for which intervention is sought; (3) the length of time preceding the motion during which the potential intervenors knew or should have known of their interest in the litigation; (4) the prejudice to the original parties due to the potential intervenors' failure to promptly move to intervene; and (5) the existence of unique circumstances militating against or in favor of intervention. *Kirsch v. Dean*, 733 Fed. App'x

9

268, 274-75 (6th Cir. 2018).  A motion to intervene is "timely as a matter of law" if it is filed when the case is "obviously in its initial stage." *Miller*, 103 F.3d at 1245.

First, the litigation started three days ago, on March 30, 2020, when Ms. Malam filed her emergency petition.  In the intervening time, the Court has not made any rulings.  Second, the purpose for which intervention is sought— to ensure that the Applicants, because of their continued detention in violation of their Due Process rights, are not infected, and possibly killed, by COVID-19—could not be more urgent.  Third, the Applicants have acted expeditiously to intervene in this recently commenced action.  Indeed, they filed their motion to intervene as soon as possible, and only three days after the initial complaint.  Fourth, there is no prejudice to the original parties because the Applicants promptly moved to intervene in this action.  On the contrary, the Applicants will be prejudiced if their request for intervention is denied.  Fifth, there are no unique circumstances that militate against intervention at this early stage of the proceeding.  Instead, the unusual circumstances that have given rise to this case support granting the Applicants' motion.

### B.   The Applicants Have a Substantial Legal Interest in the Case.

The Sixth Circuit "subscribe[s] to a 'rather expansive notion of the interest sufficient to invoke intervention of right.'" *Grutter v. Bollinger*, 188

F.3d 394, 398 (6th Cir. 1999) (quoting *Miller*, 103 F.3d at 1245). As a result, "this court has acknowledged that 'interest' is to be construed liberally." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).

The Applicants have a clear and substantial legal interest in the declaratory relief Ms. Malam seeks. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). Immigrant detainees are civil detainees entitled to the same Fifth and Fourteenth Amendment due process protections as any other pretrial detainee. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As a result, conditions that would violate the Eighth Amendment are more than enough to also violate a civil detainee's due process rights. See *City of Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244 (1983) (due process affords non-convicted detainees protections "'at least as great as the Eighth Amendment protections available to a convicted prisoner'"). Inmates "must be furnished with basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. at 33 (quoting *DeShaney*, 489 U.S. at 200). The Supreme Court has explicitly recognized that the risk of contracting a communicable

disease may constitute such an "unsafe, life-threatening condition" that threatens "reasonable safety." *Id.*

Ms. Malam's lawsuit, and the broad declaratory relief she seeks, clearly implicates Applicants' substantial legal interest in avoiding injury and protecting their Constitutional rights and ultimately their health and survival. *See Tarazi v. Oshry*, No. 10-cv-00793, 2011 WL 1326271, at *1, 4 (S.D. Ohio Apr. 4, 2011) (finding that proposed intervenors had a substantial interest in protecting their safety by preventing the public disclosure of their identities during discovery); *U.S. v. Griswold Inst., Inc.*, No. 85-00752, 1989 WL 165876, at *1 (N.D. Ohio Oct. 31, 1989) (listing cases showing that states have a *parens patriae* interest in the safety and well-being of their citizens); *Usery v. Brandel*, 87 F.R.D. 670, 676 (W.D. Mich. 1980) ("It is well-established that an applicant has 'a significant protectable interest' in rights which may be affected by interpretation in a pending case . . . ."); *Grutter,* 188 F.3d at 399-400 (finding that prospective minority applicants to the University of Michigan had a "direct, substantial, and compelling" legal interest to support intervention as of right where the proposed intervenors' chances of gaining admission could be impacted by plaintiffs' lawsuit).

**C.**    **The Applicants' Ability to Protect their Interests Will be Impaired Absent Intervention.**

The Applicants are "so situated that disposing of th[is] action may as a practical matter impair or impede th[eir] ability to protect [their] interest" in protecting their Due Process rights and preventing further constitutional injury. Fed. R. Civ. Proc. 24(a)(2). The Applicants meet the "minimal" burden to show that "impairment of [their] substantial legal interest is possible if intervention is denied." *Miller*, 103 F.3d at 1247; *see also Coalition to Defend Affirmative Action, Integration and Immigration Rights and Fight for Equality by any Means Necessary v. Granholm*, 240 F.R.D. 368, 375 (E.D. Mich. 2006) (noting that proof of the third element "is not an onerous task").

*First*, the Applicants have an interest in ensuring that the conditions they are forced to endure at the Calhoun County Correctional Facility are not detrimental to their health and safety. Those interests will be seriously impaired if Defendants fail to uphold their constitutional obligations to provide adequate protections from the scourge of COVID-19. Plainly, this is a sufficient impairment for purposes of Federal Rule of Civil Procedure 24(a)(2). Indeed, courts have granted intervention as of right in far less dangerous circumstances. *See e.g. Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782, 784 (6th Cir. 2004) (damage to real property interests).

13

*Second*, the Applicants' claims are time-sensitive. *See Ne. Oh. Coalition for Homeless and Servs. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006); *Ams. United for Separation of Church & State* v. *City of Grand Rapids*, 922 F.2d 303 (6th Cir. 1990); *Meriwether v. Trustees of Shawnee State Univ*., No. 18-00753, 2019 WL 2052110, at *8 (S.D. Ohio May 9, 2019). The Applicants currently face and will continue to face serious harm if their rights are not protected. If the Applicants are not permitted to intervene in this action and Defendants are able to escape their obligations (whether through litigation or a negotiated settlement), the Applicants may not be able to move quickly enough through the judicial system to guarantee their health and safety. Even a day's delay substantially increases the risk that the Applicants will contract this harmful disease, with detrimental and possibly fatal consequences.

*Third*, the Applicants' ability to protect their interests will be impaired if they are forced to file independent lawsuits, rather than being allowed to intervene. The filing of new litigation would cause unnecessary and harmful delay in a situation in which every hour counts. Concerns of judicial economy and swift resolution of disputes counsel that these related matters be addressed in this primary lawsuit. Unless the Applicants are heard, a solution to their collective problem will be meted out in a fractured, piecemeal fashion, which

14

would be unsatisfactory for the litigants and for the Court.  *See Grubbs v. Norris*, 870 F.2d 343, 347 (6th Cir. 1987) (finding that judicial economy and efficient resolution of disputes warranted intervention); *Schmid v. Bui*, No. 19-cv-01663, 2020 WL 377821, at *4 (N.D. Ohio Jan. 22, 2020) (concluding that a movant satisfied the impairment prong by showing that its potential relief might be compromised absent intervention).

*Fourth*, the Applicants stand to suffer considerable harm from the precedential effect of this case, including any adverse declaratory ruling, if Defendants are successful.  *See Ne. Oh. Coalition for Homeless*, 467 F.3d at 1008; *Linton v. Comm'r of Health & Env't*, 973 F.2d 1311, 1319 (6th Cir. 1992); *Meriwether*, 2019 WL 2052110, at *8. The Applicants, like Ms. Malam, seek to argue that Defendants have not, and cannot, provide adequate protections, commensurate with their Constitutional rights, from the risks of COVID-19.  Indeed, the Applicants seek virtually the same declaratory relief as Ms. Malam, and their ability to seek that relief would be impaired in they are not permitted to intervene.  If Defendants are successful in resisting these claims here, without the Applicants having been heard, the Applicants would be impaired in their pursuit of virtually identical relief.

**D.**    **Ms. Malam Inadequately Represents the Applicants'**
**Interest.**

Although Ms. Malam may seek the same relief as the Applicants and
may make some of the arguments that the Applicants would make, the
Applicants are differently situated from Ms. Malam, and she does not fully
represent their interests.  A proposed intervenor "is not required to show that
the representation will in fact be inadequate"; rather, it is "enough to show
that the existing party who purports to seek the same outcome will not make
all of the prospective intervenor's arguments."  *Miller*, 103 F.3d at 1247.  All
that is required is that the "representation *might* be inadequate."  *Grutter*, 188
F.3d at 400 (emphasis original).  Thus, the Sixth Circuit has clearly stated that
proposed intervenors' "burden in showing inadequacy is minimal."  *Id*. at 400.

Ms. Malam seeks declaratory relief for "all people over fifty years old
and persons of any age with underlying medical conditions."  ECF 1 at 17.
The declaration she seeks encompasses and affects the Applicants, but her
individual petition for habeas corpus and a TRO are specific to her
circumstance and situation.  The Applicants, and others similarly situated who
are also likely to seek individual relief in the coming days, have a right to
intervene and advance their arguments as to why they should be entitled to the
broad declaratory relief that Ms. Malam seeks, not least because the Court's
determination bears directly on their constitutional rights, their health, and

16

their survival. *See Grutter*, 188 F.3d at 401 (finding that the district court erred in denying a motion to intervene where the proposed intervenors made a showing that the original defendant might not raise their arguments).

In addition, the Applicants, who are represented by the American Civil Liberties Union's Immigrant Rights Project, the American Civil Liberties Union National Prison Project, the American Civil Liberties Union Fund of Michigan, and Paul, Weiss, Rifkind, Wharton & Garrison, LLP, have access to national experts on issues such as the spread of COVID-19 in congregate institutional settings. The Applicants can therefore provide the Court with a fuller record on which to decide the critical issues at stake in this case, particularly with respect to any precedent-setting declaratory relief that may impact many individuals other than just Ms. Malam.

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD PERMIT THE APPLICANTS TO INTERVENE UNDER RULE 24(b)(1)(B).

Alternatively, this Court should permit the Applicants to intervene under the permissive intervention provisions of Federal Rule of Civil Procedure 24, which provide that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1); *see also U.S. v. Mich.*, 424 F.3d 438, 445 (6th Cir. 2005). The "decision to grant

permissive intervention rests with the discretion of the court." *ACLU of Mich. v. Trinity Health Corp. et al.*, No. 15-12611, 2016 WL 922950, at *4 (E.D. Mich. Mar. 10, 2016). Even if proposed intervenors "could not intervene as of right, they may be permitted to intervene." *Id.* (citation omitted); *see also League of Women Voters of Michigan* v. *Johnson*, 902 F.3d 572, 577 (6th Cir. 2018).

As explained above, this motion is timely and there are abundant questions of law and fact that are common to the claims of the Applicants and Ms. Malam. The Applicants, who like Ms. Malam are medically frail individuals held in the Calhoun County Correctional Center, bring the same challenge on the same constitutional grounds concerning the same highly infectious disease and the same conditions in the same correctional facility as Ms. Malam. Like Ms. Malam, the Applicants seek habeas, injunctive, and declaratory relief, which raises the same legal questions. The factual questions at issue, such as questions about the spread of COVID-19 in congregate detention environments, are the same. It would be highly inefficient to litigate these same factual issues in multiple cases. An adverse decision in Ms. Malam's case would leave in place practices severely detrimental to the health and safety of the Applicants.

As a result, the interests of the Applicants are directly related to Ms. Malam's claims such that the resolution of questions concerning Defendants' conduct will directly impact the Applicants' constitutional rights, as well as their health and safety. For this reason, and because the issues that the Applicants raise are not "only peripherally relevant" to Ms. Malam's claims, the Applicants have claims that share with Ms. Malam's action common questions of law and fact. *Priorities USA v. Benson*, No. 19-13188, 2020 WL 1433852, at *7 (E.D. Mich. Mar. 24, 2020) (slip op.) (permitting intervention in part because proposed intervenors' interest was "directly related to Plaintiffs' claims").

Indeed, the Applicants and Ms. Malam seek to litigate the same overarching question: whether the Defendants' conduct violates detainees' constitutional right to safety in government custody. *See League of Women Voters of Mich.*, 902 F.3d at 583 (citing 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1911 (3d ed. 1998)); *Trinity Health Corp.*, 2016 WL 922950, at *3-4 (permitting movants to intervene because, like the plaintiffs and defendants, they sought to litigate the same question).

## CONCLUSION

For the foregoing reasons, the Court should grant the Applicants' motion.

Dated:  April 2, 2020

Respectfully submitted,

/s/ Miriam J. Aukerman
Miriam J. Aukerman (P63165)

American Civil Liberties Union
  Fund of Michigan
1514 Wealthy Street SE, Suite 260
Grand Rapids, MI 49506
Telephone: 616-301-0930
maukerman@aclumich.org

Daniel S. Korobkin (P72842)
Monica C. Andrade (P81921)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
Telephone: 313-578-6824
dkorobkin@aclumich.org

David C. Fathi*
Eunice H. Cho*
American Civil Liberties Union
  Foundation, National Prison
  Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
Telephone: 202-548-6616
dfathi@aclu.org
echo@aclu.org

Anand V. Balakrishnan*
Michael K.T. Tan*
Omar C. Jadwat*

ACLU Foundation Immigrants'
  Rights Project
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: 212-549-2660
abalakrishnan@aclu.org
mtan@aclu.org
ojadwat@aclu.org

My Khanh Ngo*
ACLU Foundation Immigrants'
  Rights Project
39 Drumm Street
San Francisco, CA 94111
Telephone: 415-343-0770
mngo@aclu.org

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

/s/ Jeannie S. Rhee_____
Jeannie S. Rhee
Mark F. Mendelsohn*
Rachel M. Fiorill*
Peter E. Jaffe
2001 K Street NW
Washington, D.C. 20006-1047
Telephone: 202-223-7300
Facsimile: 202-223-7420
jrhee@paulweiss.com
mmendelsohn@paulweiss.com
pjaffe@paulweiss.com
rfiorille@paulweiss.com

Jonathan M. Silberstein-Loeb*
1285 Avenue of the Americas
New York, N.Y. 10019-6064
Telephone: 212-373-3000
Facsimile: 212-757-3990
jsilberstein-loeb@paulweiss.com

*Attorneys for Proposed
Intervenor-Plaintiffs*

* Application for admission forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I, Jeannie S. Rhee, certify that on April 2, 2020, I caused a true and correct copy of the foregoing document to be filed and served electronically via the ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

Respectfully submitted,

/s/ Jeannie S. Rhee_____
Jeannie S. Rhee