# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Janet Malam,

                Petitioner,

and

Ruby Briselda Escobar and Amer Toma,

                Plaintiff-Intervenors,

v.

Rebecca Adducci, *et al.*,

                Respondents.

_____/

Case No. 20-10829

Judith E. Levy
United States District Judge

Mag. Judge Anthony P. Patti

## OPINION AND ORDER GRANTING IN PART PLAINTIFF-INTERVENORS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER [20]

This is a request for emergency injunctive relief in the form of Plaintiff-Intervenor Amar Toma's immediate release from immigration detention. Toma claims that his continued civil detention violates his Fifth Amendment rights by exposing him to substantial risk of illness

and death related to COVID-19. For the foregoing reasons, the Court GRANTS IN PART this emergency application for relief.

**BACKGROUND**

Plaintiff-Intervenor Amer Toma is a fifty-five-year-old Iraqi citizen. (ECF No. 17, PageID.257.) He has been civilly detained under ICE custody since September 21, 2019, first at the Monroe County Jail and subsequently, as of February 2020, at the Calhoun County Correctional Facility. (*Id.* at PageID.257-258.) On February 25, 2020, Toma was granted Withholding of Removal under the Convention Against Torture. (*Id.* at PageID.287). The government appealed and has continued Toma's detention during the pendency of its appeal. (*Id.*)

Toma alleges that he suffers from hypotension. (*Id.* at PageID.258.) He has three bullet wounds, acquired during the war between Iraq and Iran, that require him to rely on a wheelchair for mobility. (*Id.*). Toma also has a history of prostrate issues and a hernia, and a doctor has recommended that he be screened for prostate cancer. (*Id.*)

Toma brings suit against the following Respondents and Defendants: Rebecca Adducci, the Detroit District Director of U.S. Immigration and Customs Enforcement; Matthew T. Albence, Deputy

2

Director of U.S Immigration and Customs Enforcement; Chad Wolfe, Acting Secretary of the U.S. Department of Homeland Security; William P. Barr, Attorney General; and U.S. Immigrations and Customs Enforcement (ICE). (*Id.* at 259.)

**PROCEDURAL HISTORY**

On March 30, 2020, Petitioner Janet Malam filed both an Emergency Petition for Writ of Habeas Corpus (ECF No. 1) and an Application for Temporary Restraining Order (ECF No. 2). On April 2, 2020, Plaintiff-Intervenors Ruby Briselda Escobar and Amer Toma filed a Motion to Intervene. (ECF No. 8.) On April 3, 2020, the Court granted the motion from the bench, finding that Escobar and Toma were entitled to intervention as of right pursuant to Federal Rule of Civil Procedure 24(a) and noting that, in the alternative, they qualified for permissive intervention under Rule 24(b). On April 5, 2020, Escobar and Toma filed an Emergency Habeas Petition and Complaint for Injunctive Relief. (ECF No. 17.) Also on April 5, Escobar and Toma filed an Emergency Motion for Temporary Restraining Order. (ECF No. 18.) Escobar has since been released from ICE detention on an Order of Supervision. (ECF No. 26-1, PageID.595.)

3

On April 5, 2020, the Court issued an Opinion and Order granting in part Malam's Application for Temporary Restraining Order (ECF No. 22), followed by an Amended Opinion and Order on April 6, 2020 (ECF No. 23). Given the substantial overlap of legal and factual issues between Toma's and Malam's requests for emergency injunctive relief, the Court set an expedited briefing schedule and ordered the parties to focus their briefing on whether the Court's reasoning in its April 6, 2020 Opinion and Order applied to this motion. (ECF No. 24.) Respondents responded on April 7, 2020 (ECF No. 26), and Toma replied on April 8, 2020 (ECF No. 27).

For the reasons stated below, the Court GRANTS IN PART Toma's application for a temporary restraining order requiring his immediate release from detention for the duration of the COVID-19 State of Emergency in Michigan or until further Court order.

**LAW AND ANALYSIS**

**I. Jurisdiction**

In its April 6, 2020 Opinion and Order, the Court found that it had jurisdiction pursuant to 28 U.S.C. § 2441. (ECF No. 23, PageID.542.) In the alternative, the Court found that it had jurisdiction pursuant to 28

4

U.S.C. § 1331. (*Id.* at PageID.544.) The Court held that sovereign immunity did not apply (*Id.* at PageID.544-547) and that no other statute deprived the Court of jurisdiction (*Id.* at PageID.547-549). Toma's case presents the same jurisdictional questions. With respect to jurisdiction, the Court adopts its April 6, 2020 Opinion and Order in full.

## II. Legal Standard

As set forth in the Court's April 6, 2020 Opinion and Order,

> In determining whether to grant such an order, courts evaluate four factors: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury absent an injunction; 3) whether granting the injunction would cause substantial harm to others; and 4) whether the public interest would be served by granting the injunction. *Northeast Ohio Coal. for Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These four factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together. For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." *Id.* (internal quotations omitted). "[P]reliminary injunctions are extraordinary and drastic remedies [] never awarded as of right." *Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015).

(ECF No. 23, PageID.550-551.)

## III. Analysis

Each of the four factors weighs in favor of granting emergency injunctive relief. The Court grants Toma's motion in part for the reasons set forth below.

The Court found that emergency injunctive relief was warranted in Malam's case because Malam had shown: a high likelihood of irreparable injury absent an injunction, both in the form of substantial risk to her health and life from COVID-19 and due to her alleged constitutional violations (ECF No. 23, PageID.551-562); a strong likelihood of success on the merits with respect to both the objective and subjective components of a deliberate indifference claim (*Id.* at PageID.562-571); and that both the balance of equities and public interest favored her immediate release (*Id.* at PageID.571-574). Malam's increased risk of severe illness and death from COVID-19, stemming from fifteen underlying health conditions, contributed to the Court's findings of irreparable injury—"Petitioner's severe health conditions render her substantially likely to suffer irreparable harm or death as a result [of continued detention]" (ECF No. 23, PageID.553)—and likelihood of success on the merits—"even with [] precautionary measures, in light of

6

Petitioner's underlying health conditions, she is not ensured anything close to 'reasonable safety.'" (ECF No. 23, PageID.568.)

Respondents contend that because Toma is at less risk of severe complication from COVID-19 than Malam, the Court's reasoning from its earlier opinion does not apply to Toma's motion. (ECF No. 26, PageID.587.) Specifically, Respondents argue that "Toma is not in the age group identified by the CDC as being at higher risk for serious illness, nor does he set forth a medical condition that makes him particularly vulnerable to the respiratory illness COVID-19." (*Id.*)

Toma replies that Respondents' definition of "high risk" is unduly narrow, that Toma is at high risk of severe illness from COVID-19, and that therefore Toma has satisfied the standard for issuing emergency injunctive relief. (ECF No. 27.) Specifically, Toma alleges that his age (Toma is fifty-five years old), limited mobility (Toma relies at least in part on a wheelchair for mobility), hypotension, hernia, and prostrate issues and risk of cancer all place him at high risk of severe illness from COVID-19. (*Id.* at PageID.10.)

Toma is undoubtedly at less risk of severe complication from COVID-19 than Malam was at the time of her application. Malam was

fifty-six years old and presented fourteen underlying health conditions, whereas Toma is fifty-five years old and presents with four. But Toma's lesser risk does not render a temporary restraining order inappropriate or unnecessary.

The Court's April 6, 2020 Opinion and Order neither required a specific set or number of health conditions nor established a floor for the level of heightened risk of complications from COVID-19 that would justify immediate release from civil detention. Given the speed with which the virus spreads and the rate at which knowledge about the virus is developing, any such bright-line rule would be quickly rendered obsolete. By way of example: On March 23, 2020, there were two confirmed cases of COVID-19 among inmates at the Cook County Jail in Chicago, Illinois; on April 1, 2020—eight days later—167 inmates and 34 staff members had tested positive. *167 inmates at Cook County Jail confirmed positive for COVID-19*, Sun-Times Wire (Apr. 1, 2020), https://chicago.suntimes.com/coronavirus/2020/4/1/21203767/cook-county-jail-coronavirus-positive-covid-19. *Id.*

Instead, the Court found that Malam's specific set of health conditions justified immediate release in her case based upon the record

8

before the Court as of April 5, 2020. Today, the Court again declines to set a floor for the level of risk a party must show to warrant immediate release from immigration detention due to the COVID-19 pandemic. Although Toma presents a less severe case than Ms. Malam, immediate release is warranted because he is at a sufficiently heightened risk of severe illness or death from COVID-19.

### A. COVID-19 Developments as of April 8, 2020

As of April 8, 2020, there are now 20,346 confirmed cases of COVID-19 and 959 known related deaths in the state of Michigan, with 287 confirmed cases and two deaths within the Michigan Department of Corrections system specifically. See Coronavirus, Michigan.gov (Apr. 8, 2020), https://www.michigan.gov/coronavirus/0,9753,7-406-98163-520743--,00.html. Additionally, U.S. Immigration and Customs Enforcement reports thirty-two confirmed cases among ICE detainees, including one in St. Clair County, Michigan, and eleven confirmed cases among ICE employees at detention centers. *ICE Guidance on COVID-19*, U.S. Immigration and Customs Enforcement (Apr. 8, 2020), https://www.ice.gov/coronavirus.

### B. Toma's Risk of Severe Illness or Death

9

The Court's April 6 Opinion and Order explains that Toma, like Malam, is at a substantial risk of contracting COVID-19 as a result of his continued detention: "In the face of a deadly pandemic with no vaccine, no cure, limited testing capacity, and the ability to spread quickly through asymptomatic human vectors, a 'generalized risk' is a 'substantial risk' of catching the COVID-19 virus for any group of human beings in highly confined conditions." (ECF No. 23 at 29 (citing *Wooler v. Hickman Cty.*, 377 Fed. Appx. 502, 505 (6th Cir. 2010).) Toma's limited mobility, as a result of three bullet wounds requiring the use of a wheelchair, places him at even greater risk than the general population. According to the CDC, "[p]eople who have limited mobility" are among those who "might be at increased risk of becoming infected or having unrecognized illness." *People with Disabilities*, CDC (Mar. 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/peoplewith-disabilities.html.

Should he contract COVID-19, Toma's age also places him at heightened risk of severe illness and death. Respondents properly point out that the CDC recognizes "[p]eople 65 years and older" as a discrete group "at high-risk for severe illness from COVID-19." (ECF No. 26,

PageID.589 (citing *Groups at Higher Risk for Severe Illness*, CDC (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html).) While CDC guidance is an appropriate point to begin risk analysis, the Court's inquiry cannot end there. Indeed, the CDC itself acknowledges that "COVID-19 is a new disease and there is limited information regarding risk factors for severe disease." *Id.* The Declaration of Doctor Jonathan Golob, Assistant Professor at the University of Michigan School of Medicine, concludes that "people over the age of 50 . . . living in an institutional setting . . . are at grave risk of severe illness and death from COVID-19." (ECF No. 20-2, PageID.361.) The Declaration of Dr. Robert B. Greifinger concludes that "the high risk category for COVID-19" constitutes "adults over 50 years old or those with underlying disease" and that members of that group "are likely to suffer serious illness and death." (ECF No. 20-3, PageID.372.) According to a CDC report, thirty-six percent—or more than one in three—patients admitted to intensive care units because of COVID-19-related illness were between the ages of forty-five and sixty-four. *Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19)—United States, February 12–March 16, 2020*, CDC (Mar. 26.

11

2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm. Respondents neither contest nor address these medical conclusions. The Court finds the combination of Toma's age, disability, and continued detention presents a sufficient risk of severe illness or death from COVID-19 such that the analysis in the Court's April 6, 2020 order applies, warranting emergency injunctive relief.

The Court finds that Toma's other health conditions only further warrant the issuance of a temporary restraining order. Toma has hypotension, possible prostate cancer, and a hernia. (ECF No. 25, PageID.468.) The record does not include direct evidence by which the Court can conclude that Toma's hypotension, prostate issues, and hernia raise the risk of complications from COVID-19. But Toma alleges that he has, overall, received incomplete medical care: "In detention, Mr. Toma has not received any medication to control his blood pressure. He also has not been able to access the medical care that he needs to get tested for prostate cancer or to treat his hernia." (ECF No. 20-5, PageID.469.) Respondents allege that "[a]ccording to records available to ICE, [Toma] does not require treatment for hypotension. *See* Obaid Dec., Ex. 2, ¶ 8." (ECF No. 26, PageID.590.) But the cited declaration only alleges that

12

"Toma does not currently have a prescription for medication for hypotension." (ECF No. 26-2, PageID.599.) The Court does not find this sufficient evidence to show that Toma's hypotension does not require medical monitoring and possible treatment. CDC guidance notes that those at high-risk for severe illness from COVID-19 includes "[p]eople of all ages with underlying medical conditions, particularly if not well controlled." *Groups at Higher Risk for Severe Illness*, CDC (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Toma's alleged incomplete access to medical care weighs in favor of granting relief.

Accordingly, the Court adopts the reasoning of its April 6, 2020 Opinion and Order and applies it to this motion. Toma has shown: (1) a high chance of irreparable injury, both in the form of substantial risk to his health and life from COVID-19 and due to his alleged constitutional violations; (2) a strong likelihood of success on the merits with respect to both the objective and subjective components of a deliberate indifference

claim;[1] and (3) that both the balance of equities and public interest favor his immediate release.

**CONCLUSION**

For the reasons stated above, Petitioner's Application for a Temporary Restraining Order is GRANTED IN PART. Respondent Adducci is ORDERED to release Plaintiff-Intervenor Amer Toma on April 9, 2020 for the duration of the COVID-19 State of Emergency in Michigan or until further Court order. Toma will be subject to the

---

[1] Plaintiff-Intervenors suggest Toma need only show the objective component in light of the Supreme Court's ruling in *Kingsley v. Hendrickson*, which held that a pretrial detainee raising a Fourteenth Amendment excessive force claim satisfied his burden by showing "the force purposely or knowingly used against him was objectively unreasonable." 135 S. Ct. 2466, 2473 (2015). In *Richmond v. Huq*, the Sixth Circuit held that "this shift in Fourteenth Amendment deliberate indifference jurisprudence calls into serious doubt whether [a plaintiff] need even show that the individual defendant-officials were subjectively aware of [the plaintiff's] serious medical conditions and nonetheless wantonly disregarded them." 885 F.3d 928, 938 n.3 (6th Cir. 2018). But in *Martin v. Warren Cty.*, the Sixth Circuit reiterated that "[w]hether an objective standard applies to pretrial detainee claims of deliberate indifference and what the standard entails are open questions." No. 19-5132, 2020 WL 360436, at *4 n.4 (6th Cir. Jan. 22, 2020), *reh'g denied* (Feb. 4, 2020). And in at least two cases post-*Kingsley*, the Sixth Circuit has applied both objective and subjective analysis to deliberate indifference claims. *See J.H. v. Williamson Cty.*, 2020 F.3d 709, 717, 722-23 (applying an objective test for solitary confinement claim but two-part objective and subjective test for deliberate indifference claim); *Winkler v. Madison Cty*, 893 F.3d 877 (2018) (applying two-part standard for deliberate indifference claim without citing *Kingsley*). The Court need not answer the open question created by *Kingsley* because it finds that Toma satisfies both the objective and subjective components of a deliberate indifference claim.

following restrictions: he is subject to fourteen days of home quarantine; he must comply with all Michigan Executive Orders; and he must appear at all hearings pertaining to his immigration proceedings. Respondents may impose other reasonable nonconfinement terms of supervision.

Respondents are further RESTRAINED from arresting Toma for civil immigration detention purposes until the State of Emergency in Michigan (related to COVID-19) is lifted or until further Court Order stating otherwise.

The Temporary Restraining Order will expire on April 21, 2020, at 6:30 p.m. No later than April 14, 2020, at 12:00 p.m., Respondents must show cause why this Order should not be converted to a preliminary injunction. Petitioner may file a response no later than April 20, 2020, at 12:00 p.m.

IT IS SO ORDERED.

Dated: April 9, 2020  
Ann Arbor, Michigan

s/Judith E. Levy  
JUDITH E. LEVY  
United States District Judge

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 9, 2020.

             s/William Barkholz
             WILLIAM BARKHOLZ
             Case Manager