UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Janet Malam,

        Petitioner,        Case No. 20-10829

and        Judith E. Levy
        United States District Judge

Ruby Briselda Escobar and Amer Toma,        Mag. Judge Anthony P. Patti

        Plaintiff-Intervenors,

v.

Rebecca Adducci, *et al.*,

        Respondents.

_____/

## OPINION AND ORDER CONVERTING TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION [29]

On April 9, 2020, the Court issued an amended order granting a Temporary Restraining Order and requiring Plaintiff-Intervenor Amer Toma's immediate release from ICE Custody. (ECF No. 29.) The TRO was set to expire on April 21, 2020, at 6:30pm EST. (*Id.* at PageID.575.) The Court ordered Respondent Adducci to show cause why the TRO should not be converted to a preliminary injunction. (*Id.*) On April 14, 2020,

Respondent filed a response to the Court's order to show cause. (ECF No. 31.) On April 20, 2020, Petitioner filed his reply.[1] (ECF No. 37.) The Court now transforms the TRO into a preliminary injunction.

## I. Factual Background

Plaintiff-Intervenor Amer Toma is a fifty-five-year-old Iraqi citizen. (ECF No. 17, PageID.257.) He has been civilly detained under ICE custody since September 21, 2019, first at the Monroe County Jail and subsequently, as of February 2020, at the Calhoun County Correctional Facility. (*Id.* at PageID.257–258.) On February 25, 2020, Toma was granted Withholding of Removal under the Convention Against Torture. (*Id.* at PageID.287). The government appealed and, prior to the Court's

---

[1] On April 18, 2020, Plaintiff-Intervenor Toma moved both to extend the Court's temporary restraining order by fourteen days and for expedited discovery regarding the conditions of confinement at and precautionary measures taken by the Calhoun County Correctional Facility. (ECF No. 34.) He argued that "[t]o address adequately the arguments raised by Defendants, which relate to the likelihood of COVID-19 entering and spreading in the facility, and the risk that Mr. Toma faces of contracting it, Plaintiff needs discovery." (*Id.* at PageID.735.) On April 19, 2020, Respondent responded, objecting to Toma's motion. (ECF No. 35.) She argued that "[b]ased on this Court's ruling on the preliminary injunction for Petitioner Malam, this Court had all of the information about Calhoun County Correctional Center it needed to make a determination as to deliberate indifference," and thus "the only issue is whether Toma is actually at a high-risk of serious harm from COVID-19." (*Id.* at PageID.795.) Agreeing with Respondent, the Court denied Toma's motion for an extension but ordered Respondent to provide Toma with his intake and medical records no later than 5:00pm EST on April 20, 2020. (ECF No. 36, PageID.804.)

2

temporary restraining order, continued Toma's detention during the pendency of its appeal. (*Id.*)

Toma alleges that he suffers from hypotension. (*Id.* at PageID.258.) He has three bullet wounds, acquired during the war between Iraq and Iran, that he alleges require him to rely on a wheelchair for mobility. (*Id.*). Toma also has a history of prostrate issues and a hernia, and a doctor has recommended that he be screened for prostate cancer. (*Id.*)

On April 5, 2020, Toma filed a petition requesting relief in either one of two forms: a writ of habeas corpus or an injunction "ordering Defendants to immediately release [Toma], with appropriate precautionary public health measures, on the grounds that [his] continued detention violates Due Process Clause." (ECF No. 17, PageID.290.) Also, on April 5, 2020, Toma filed a Motion for Temporary Restraining Order requesting that the Court order his release during the pendency of his immigration proceedings due to the substantial risk to his health posed by COVID-19 as a result of his continued detention. (ECF No. 20.) The Court granted Toma's motion on April 9, 2020. (ECF No. 29.)

3

Because Toma continues to show that he will be subject to irreparable injury absent an injunction, a high likelihood of success on the merits, and that the balance of equities and public interest weigh in favor of granting an injunction, the Court now converts its TRO into a preliminary injunction.

**II. Legal Standard**

In determining whether to grant a preliminary injunction, courts evaluate four factors: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury absent an injunction; 3) whether granting the injunction would cause substantial harm to others; and 4) whether the public interest would be served by granting the injunction. *Northeast Ohio Coal. for Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell,* 467 F.3d 999, 1009 (6th Cir. 2006). These four factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together. For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." *Id.* (internal quotations omitted). "[P]reliminary injunctions are extraordinary and drastic

remedies [] never awarded as of right." *Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015). Nonetheless, each of the four factors weighs in Petitioner's favor, and the Court converts the temporary restraining order into a preliminary injunction.

### III. Legal Analysis

In granting Toma a temporary restraining order, the Court relied on the analysis in its April 6, 2020 Amended Order granting Petitioner Janet Malam emergency injunctive relief. (ECF No. 29, PageID.633.) The Court granted Malam a temporary restraining order because Malam had shown: a high likelihood of irreparable injury absent an injunction, both in the form of substantial risk to her health and life from COVID-19 and due to her alleged constitutional violations (ECF No. 23, PageID.551-562); a strong likelihood of success on the merits with respect to both the objective and subjective components of a deliberate indifference claim (Id. at PageID.562-571); and that both the balance of equities and public interest favored her immediate release (*Id.* at PageID.571-574). Respondent argued that Toma was at less risk than Malam of complications from a COVID-19 infection (ECF No. 26, PageID.587), but

5

the Court held that Toma's age and limited mobility place him at sufficiently high risk of severe illness and/or death such that relief was warranted. (ECF No. 29, PageID.636.) The Court emphasized that its earlier opinions neither required a specific set or number of health conditions nor established a floor for the level of heightened risk of complications from COVID-19 necessary to justify immediate release from civil detention. (*Id.* at PageID.635.)

On April 17, 2020, the Court converted Petitioner Malam's temporary restraining order into a preliminary injunction. (ECF No. 33.) The Court found that the public health evidence on the record showed that Petitioner Malam, should she return to the Calhoun County Correctional Facility, would be at substantial risk of COVID-19 infection and subsequent severe complications and/or death. (*Id.* at PageID.718–719.) The Court concluded that "any response short of authorizing release from the Calhoun County Correctional Facility for [Petitioner Malam], whose underlying health conditions expose her to a high risk of an adverse outcome if infected by COVID-19, demonstrates deliberate indifference to a substantial risk." (*Id.* at PageID.722–723.) Accordingly, the Court held that a preliminary injunction was warranted because

6

Petitioner Malam had shown a continued high risk of irreparable injury, a strong likelihood of success on the merits, and that the balance of equities and public interest favored granting the injunction. (*Id.* at PageID.726.)

Respondent now argues that a preliminary injunction is unwarranted with respect to Plaintiff-Intervenor Toma because: 1) "Toma has not shown his risk of exposure to COVID-19 at CCDC is imminent sufficient to state a cognizable constitutional claim" (ECF No. 31, PageID.669); 2) "Toma fails to establish a likelihood of success on his due process claim" because he cannot show that Respondent was deliberately indifferent to a substantial risk of harm to Toma specifically (ECF No. 31, PageID.673); and 3) "The public interest factor favors denying injunctive relief" because releasing Toma would support a finding that it is unconstitutional for ICE to detain any noncitizen during the COVID-19 pandemic (ECF No. 31, PageID.682). Because the Court finds Respondent's arguments lack merit, it will convert Toma's temporary restraining order into a preliminary injunction.

**A. Risk of Exposure to COVID-19**

7

Respondent has argued that neither Petitioner Malam nor Toma is at sufficient risk of COVID-19 infection to warrant a finding of irreparable harm. In converting Petitioner Malam's temporary restraining order into a preliminary injunction, the Court assessed the public health evidence in the record and held that "in the face of a deadly pandemic with no vaccine, no cure, limited testing capacity, and the ability to spread quickly through asymptomatic human vectors, a 'generalized risk' is a 'substantial risk' of catching the COVID-19 virus for any group of human beings in highly confined conditions, such as Petitioner within the CCCF facility." (ECF No. 33, PageID.718 (citing ECF No. 23, PageID.559).) Accordingly, the Court held that Malam, "were she to be returned to the Calhoun County Correctional Facility, would be at an unreasonable and substantial risk of COVID-19 infection; [Malam] therefore has demonstrated a high likelihood of irreparable injury." (*Id.* at PageID.718–719.) Respondent, in her April 14, 2020 response, did not raise any new arguments with respect to the likelihood of Toma experiencing irreparable injury. (ECF No. 31.) The Court adopts the irreparable injury analysis of its April 17 Opinion and Order in full. Petitioner Toma has shown a high likelihood of irreparable injury were

8

he to be returned to the Calhoun County Correctional Facility, both in the form of substantial risk to his health and life from COVID-19 and due to his alleged constitutional violations.

## B. Deliberate Indifference to a Substantial Risk

In granting Petitioner Malam a preliminary injunction, the Court held that "any response short of authorizing release from the Calhoun County Correctional Facility for this Petitioner, whose underlying health conditions expose her to a high risk of an adverse outcome if infected by COVID-19, demonstrates deliberate indifference to a substantial risk." (ECF No. 33, PageID.722–723.) Respondent concedes that considering the Court's April 17, 2020 Opinion and Order, "the only issue [for preliminary injunction analysis] is whether Toma is actually at a high-risk of serious harm from COVID-19." (ECF No. 35, PageID.795.) Respondent argues that Toma's age, disability, and health conditions do not place him at a high risk of an adverse outcome from a COVID-19 infection. (ECF No. 31, PageID.673.) Because the Court finds that Toma's age and mobility limitations place him at a high risk of severe complication and/or death from a COVID-19 infection, Toma has shown a high likelihood of success on the merits.

9

1. Age

Toma is fifty-five years old. (ECF No. 17, PageID.257.) In granting Toma emergency injunctive relief, the Court relied on the declarations of two medical professionals, both of which conclude that people over fifty are at serious risk of severe illness and death from COVID-19. (ECF No. 29, PageID.637.) Respondent argues that "the Court should give more weight to the findings of the CDC and the World Health Organization [WHO], over the two untested declarations from the physicians selected by Toma." (ECF No. 31, PageID.674.)

In its April 9, 2020 Order, the Court recognized CDC guidance but held that "the Court's inquiry cannot end there." (ECF No. 29, PageID.638.) Moreover, CDC and WHO guidance do not contradict the public health evidence on which the Court relied and continues to rely. While the CDC recognizes people over sixty-five years old as among the most vulnerable, CDC guidance also acknowledges that "the older you are, the higher your risk of serious disease." *Groups at Higher Risk of Severe Illness*, Centers for Disease Control and Prevention (last updated Apr. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Additionally, the WHO, in

addressing age as a risk factor, concludes: "The risk of severe disease gradually increases with age starting from around 40 years. It's important that adults in this age range protect themselves and in turn protect others that may be more vulnerable." *Coronavirus Disease 2019 (COVID-19) Situation Report – 51*, World Health Organization (Mar. 11, 2020), https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200311-sitrep-51-covid-19.pdf?sfvrsn=1ba62e57_10.

Accordingly, the Court again holds that Toma's age puts him at substantial risk of severe illness and/or death from a COVID-19 infection.

### 2. Disability

Toma relies on a wheelchair for mobility. (ECF No. 17, PageID.258.) In granting a temporary restraining order, the Court found that Toma's limited mobility placed him at an even greater risk of COVID-19 infection than the general detainee population. (ECF No. 29, PageID.637.) Respondent contests the Court's findings regarding Toma's mobility, claiming that Toma provided insufficient evidence of a disability and that records show that Toma can walk. (ECF No. 31, PageID.674.) Respondent includes a sick call report from February 28, 2020, which includes a note that "[Toma] does state that he uses a walker at home to get around

11

because of his 'bad' left knee. Denies any concerns today." (ECF No. 31-2, PageID.687.)

Toma responds that he does, indeed, have mobility limitations. He includes a February 26, 2020 medical report from the Monroe County Jail, prepared by Nurse Ashley Konowalski and reviewed by Doctor Nisha Chellem:

> 55 year old male who sent me a kite saying he has knee swelling and he cannot walk. I called him out for sick call to find that he, in fact, is unable to walk. He explains that it has been this way for 4 days. His assessment is negative for any signs of injury, and he denies any injury or falling. His range of motion is adequate but has less than 25% weight bearing ability. He is having trouble ambulating to the restroom and up to receive meal trays.

(ECF No. 37-3, PageID.841.) The report noted that the facility would provide Toma with a wheelchair, but that "this setting is quite difficult for someone in his condition as it requires quite a bit of mobility." *Id*. Toma also provided a March 9, 2020 health assessment, which lists "wheelchair" as a "physical aide." (ECF No. 37-3, PageID.838.) Toma also attaches as an exhibit his own declaration, in which he declares:

> I was often able to walk around using the wheelchair as a walker, but as my time at Calhoun progressed, I found myself more frequently unable to walk and instead I would sit in the

12

> chair. Due to the limitations on my mobility, I relied on my cellmate and the security to help me with some of my daily tasks. My cellmate would bring me my meals, and would help me into the shower and with getting dressed after I would shower. The security was aware of that he was helping me, and on one occasion gave him free items from the commissary as a way of thanking him for his help. Corrections officers would sometimes help use my wheelchair. I was also placed into a wheelchair accessible room on the first floor of my Pod at Calhoun, which was outfitted with a sink that was set lower than usual for ease of access.

(ECF No. 37-5, PageID.876.)

While the precise nature and scope of Toma's mobility limitations remain contested, the record supports a finding that Toma has a mobility limitation requiring the use of a wheelchair and assistance at least some of the time. The Court again holds that, were he to return to the Calhoun County Correctional Facility, this limitation would further increase his risk of COVID-19 infection. (ECF No. 29, PageID.637.)

Respondent argues that the Court's finding does not support granting a preliminary injunction because "merely increasing [Toma's] risk of exposure does not increase his risk of serious harm, where he has no other underlying condition that increases his risk of serious harm from COVID-19." (ECF No. 31, PageID.675.) Above, the Court held that

13

Toma's age places him at substantial risk of serious illness from COVID-19. A greater risk of exposure therefore indirectly increases the risk that Toma will suffer serious illness. The Court previously found that Toma's age, mobility limitations, and continued detention placed him at substantial risk of infection and ensuing complications from COVID-19, justifying his immediate release. (ECF No. 29, PageID.639.) The Court again holds that because of Toma's age and mobility limitations, "any response short of authorizing [Toma's] release from the Calhoun County Correctional Facility . . . demonstrates deliberate indifference to a substantial risk." (ECF No. 33, PageID.722–723.) Additionally, the Court notes that Toma's other medical conditions further warrant injunctive relief.

### 3. Underlying Health Issues

In granting Toma a temporary restraining order, the Court noted that Toma's hypotension, possible prostate cancer, and a hernia, along with allegedly incomplete medical care, supported the Court's order. (ECF No. 29, PageID.639.) Respondent argues that the Court erred in finding that Toma's incomplete medical care further warranted injunctive relief. Respondent properly notes that "the Court incorrectly

14

placed the burden on ICE to establish by 'sufficient evidence,' that Toma does not require medical monitoring or possible treatment for his alleged conditions." (ECF No. 31, PageID.675.) Nonetheless, Respondent summarizes and provides documentation of the medical care Toma received while in detention:

> The physician who evaluated Toma noted "no signs of a hernia." (02/28/20 Sick Call, Ex. 2). There are no notations in that visit of unresolved hypotension or prostate issues, and Toma's blood pressure was normal. *Id.* Toma was also seen at his request on April 3, 2020, with complaints of back pain. (04/03/20 Sick Call, Ex. 3). His blood pressure was normal and there are no notations of unresolved hypotension or prostate issues. *Id.*

(ECF No. 31, PageID.668.)

However, Toma has now provided the Court with additional evidence showing his need for ongoing medical treatment beyond that which was provided to him at the Calhoun County Correctional Facility. Toma provides an April 19, 2020 letter from Dr. Ramsay Dass, Medical Director of Internal Medicine & Family Practice at the Oak Park Medical Clinic in Oak Park, Michigan. (ECF No. 38-3, PageID.832.) Dr. Dass has had a doctor-patient relationship with Toma since June 19, 2012. (*Id.*) According to Dr. Dass, Toma has "chronic obstructive pulmonary disease

15

[COPD] secondary to his heavy smoking, and he is still a smoker. He has episodes of shortness of breath, chest pain, bronchitis." (*Id.*) COPD places Toma at heightened risk of severe complication and death from COVID-19. *See People Who Are at Higher Risk of Severe Illness*, Centers for Disease Control and Prevention (last updated Apr. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Dr. Dass also notes that Toma "has an inguinal hernia that requires surgical treatment." (ECF No. 38-3, PageID.832.) Regarding Toma's possible prostate cancer, Dr. Dass writes that "[Toma] was advised to follow up with urology with expectation to have surgery and other treatments for cancer of the prostate and other prostate problems." (*Id.*) Dr. Dass concludes that Toma "needs continuous medical modality treatment. He needs to follow up with urology, neurology, psychiatry, psychology, in addition to my services as an internist." (*Id.*) Toma's medical records in detention confirm that while he received some medical treatment, his full medical needs were not met. An October 18, 2019 medical progress note from the Monroe County Jail concludes: "evaluation seems he has chronic issues and this cannot be evaluated in full here." (ECF No. 37-3, PageID.834.)

16

Like Toma's mobility, the extent of Toma's medical conditions and access to care are contested. Respondent has not yet had an opportunity to respond to Toma's newly submitted evidence. The Court will address these issues in more detail when it addresses Toma's claims on the merits. For now, the Court finds that Toma has significant medical needs, likely including COPD; the Court also finds that these needs are unlikely to be met in full while in ICE custody. The combination of these needs and incomplete care increases the risk that Toma will suffer serious illness and/or death from a COVID-19 infection. While Toma's age and mobility limitations alone were sufficient for Toma to show a likelihood of success on the merits of his Fifth Amendment deliberate indifference claim, his medical needs further warrant granting injunctive relief.

**C. Public Interest**

Respondent did not address the balance of equities or public interest in her response to the Court's order to show cause as to why the temporary restraining order for Petitioner Malam should not be converted into a preliminary injunction. (*See* ECF No. 33, PageID.703.) Accordingly, in granting a preliminary injunction for Petitioner Malam, the Court adopted its reasoning from its April 6, 2020 Amended Opinion

17

and Order, in which it granted Petitioner Malam a temporary restraining order. (*Id.*).

Here, Respondent argues that the public interest favors Toma's continued detention because granting a preliminary injunction would render the detention of any person during the COVID-19 pandemic unconstitutional. Respondent claims that

> [g]ranting the relief sought by Toma, who has no high-risk factors for COVID-19, would, in effect, hold that it is unconstitutional for ICE to detain any individuals during this current health crisis. The disruptive effect of an order releasing Toma could long survive the COVID-19 pandemic, and could serve as precedent for releasing many non-citizens slated for removal, some with violent criminal backgrounds, back into the general public. This type of burden and attendant harm, and its potential impact on ICE operations nationwide, is too great to be permissible at this preliminary stage.

(ECF No. 31, PageID.682.)

Respondent's concern is unwarranted. The Court's ruling in this case is limited to a single individual, for whom the Court finds injunctive relief warranted because his age, mobility limitation, and medical conditions and needs place him at high risk for an adverse outcome, including death, if he were to contract COVID-19. Neither party has

raised or addressed the issue of whether a noncitizen's potential danger to the community is relevant to Fifth Amendment or injunctive relief analysis. Additionally, the Court's decision is not binding on any future court. *See Camreta v. Greene*, 563 U.S. 692, 709 (2011) (internal citation omitted) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

Accordingly, the Court adopts its April 6, 2020 reasoning (ECF No. 23) with respect to the balance of equities and public interest. Toma has shown that these factors weigh in favor of granting a preliminary injunction.

The Court finds that Toma continues to show that he would face a high likelihood of irreparable harm absent a preliminary injunction, a significant likelihood of success on the merits, and that the balance of equities and public interest favor his release. The Court will convert its temporary restraining order into a preliminary injunction.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS** a preliminary injunction mandating Plaintiff-Intervenor Amer Toma's continued release.

Toma remains subject to the following restrictions: he is subject to a total of fourteen days of home quarantine; he must comply with all Michigan Executive Orders; and he must appear at all hearings pertaining to his immigration proceedings. Respondent may impose other reasonable nonconfinement terms of supervision. Respondent is further **RESTRAINED** from arresting Toma for civil immigration detention purposes until the State of Emergency in Michigan (related to COVID-19) is lifted or until further Court Order stating otherwise.

IT IS SO ORDERED.

Dated: April 22, 2020       s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
     United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 22, 2020.

     s/William Barkholz
     WILLIAM BARKHOLZ
     Case Manager