# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Janet Malam,

             Petitioner-Plaintiff,

Case No. 20-10829

and

Judith E. Levy

Qaid Alhalmi, *et al.*,

United States District Judge

             Plaintiff-Intervenors,   Mag. Judge Anthony P. Patti

v.

Rebecca Adducci, *et al.*,

             Respondent-Defendants.

_____/

## OPINION AND ORDER CERTIFYING GENERAL CLASS AND HABEAS LITIGATION GROUP [112]

More than four months after the first confirmed case of COVID-19 in Michigan, the coronavirus pandemic continues to teach us about the importance and power of collective action. Many of the public health interventions—wearing masks, employing social distancing, and limiting gatherings—that are available to curb the spread of the disease succeed or fail in tandem with the degree of societal buy-in. One individual wearing a mask does little to reduce the pool of infection vectors in a

population center; an entire town's commitment to mask-wearing can help control infection rates to reduce community spread, enable contact tracing, and ensure an adequate supply of healthcare for those in need.

As infections in Michigan continue to rise—prompting Governor Whitmer to order the use of masks both indoors and outdoors[1] and warn that the state may need to "dial back" its reopening to control the pandemic[2]—Plaintiffs seek to exercise another form of collective action—the class action—to protect themselves from COVID-19. They seek to do this, in part, because they allege that they cannot deploy the other methods of collective action available to those of us in the community.

Plaintiffs are all noncitizens subject to U.S. Immigration and Customs Enforcement ("ICE") custody in detention[3] at the Calhoun County Correctional Facility. They move for the Court to certify a class

---

[1] *See Executive Order 2020-147: Masks*, Office of Governor Gretchen Whitmer (July 13, 2020), https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-534169--,00.html.

[2] *See* Craig Mauger, *Whitmer: Michigan Will 'Dial Back' Reopening If COVID-19 Cases Increase*, Detroit News (July 7, 2020), https://www.detroitnews.com/story/news/local/michigan/2020/07/07/whitmer-state-dial-back-reopening-if-covid-19-numbers-increase/5389105002/.

[3] Fourteen named Plaintiffs have received preliminary injunctive relief from this Court or voluntary relief from Defendants and are not currently detained at the Calhoun County Correctional Facility. Defendants have removed one named Plaintiff from the country.

of all noncitizens in civil immigration detention at the Calhoun County Correctional Facility and a subclass of all medically vulnerable detainees. Because Plaintiffs' proposed class satisfies Rule 23 requirements for certification and Rule 23 factors counsel in favor of aggregate resolution for the proposed subclass' habeas claims, the Court grants Plaintiffs' motion.

**BACKGROUND**

On March 30, 2020, Petitioner Janet Malam filed an Emergency Petition for Writ of Habeas Corpus challenging her continued detention at the Calhoun County Correctional Facility. (ECF No. 1.) On April 3, 2020, the Court allowed Plaintiff-Intervenors Amer Toma and Ruby Briselda Escobar to intervene. (ECF No. 21.) On April 26, fifteen named Plaintiffs filed an amended class action complaint. (ECF No. 43.) On June 5, 2020, the Court granted Plaintiffs leave to amend their complaint and to add seven additional named Plaintiffs. (ECF No. 96.)

The Court has issued five preliminary injunctions in this case granting relief to thirteen civil detainees. (*See* ECF No. 33 (ordering Petitioner Malam's immediate release); ECF No. 41 (Plaintiff Toma); ECF No. 68 (Plaintiffs Alhalmi and Cardona Ramirez); ECF No. 90

(Plaintiffs Rodriguez Salabarria and Rosales Borboa); ECF No. 127 (Plaintiffs Barash, Krcoska, Perez Pavon, Ley Santana, Johanna Whernman, and William Whernman).) Separately, the Court granted a preliminary injunction to Petitioner Fawzi Zaya, a noncitizen who similarly was detained by ICE at the Calhoun County Correctional Facility. *Zaya v. Adducci*, No. 20-10921, 2020 WL 1903172 (E.D. Mich. Apr. 18, 2020). Petitioner Zaya raises the same claims and seeks the same relief as the proposed habeas litigation group here.

Plaintiffs' second amended petition for writ of habeas corpus and complaint for declaratory and injunctive relief brings three counts. (ECF No. 97.) First, on behalf of all named Plaintiffs and the proposed class, Plaintiffs claim that "Defendants' continued detention of Plaintiffs and the proposed class members under the current conditions violates their due process rights" under the Fifth Amendment. (ECF No. 97, PageID.3345.) Plaintiffs argue that

> [t]he Fifth Amendment thus requires release of Plaintiffs and the class unless (a) the conditions of confinement are remedied to ensure their reasonable safety, including reduction of the population to bring density to a level that allows for social distancing; and (b) their detention during the pandemic is reasonably related to, and not excessive in

4

relation to, the government's interest in ensuring their availability for removal.

(*Id.* at PageID.3346.)

Second, on behalf of thirteen named Plaintiffs and the proposed subclass, Plaintiffs claim that

> [g]iven the substantial risk of serious illness or death from COVID-19, there are no conditions of confinement that would permit the safe detention (or redetention) of [thirteen named Plaintiffs] and the subclass, and their continued detention is not reasonably related to, and excessive in relation to, the government's interest in ensuring their availability for removal.

(ECF No. 97, PageID.3348.) Plaintiffs argue that "The Fifth Amendment thus requires release of [thirteen named Plaintiffs] and the subclass." (*Id.*)

Third, Plaintiffs claim that "[t]he removal of Plaintiffs Alhalmi, Baroi, Escobar, Ley Santana, Rodriguez Salabarria and Toma is not significantly likely in the reasonably foreseeable future." (*Id.* at PageID.3349.) Plaintiffs argue that "Plaintiffs' detention is therefore not authorized by statute and they are entitled to immediate release under orders of supervision." (*Id.*)

Federal Rule of Civil Procedure 23(c)(1) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Accordingly, on June 5, 2020, the Court established a case management plan in which it set deadlines for Plaintiffs' motion for class certification. (ECF No. 96.) On June 14, 2020, Plaintiffs filed this motion to certify a class and subclass of noncitizen immigration detainees at the Calhoun County Correctional Facility. (ECF No. 112.) Defendants responded on June 26, 2020 (ECF No. 126), and Plaintiffs replied on July 5, 2020. (ECF No. 144.)

## JURISDITION

Plaintiffs bring three claims: first, on behalf of the proposed class, Plaintiffs argue that current conditions of confinement at the Calhoun County Correctional Facility are unconstitutionally punitive. Second, on behalf of the proposed subclass, Plaintiffs argue that no conditions of confinement can satisfy constitutional requirements with respect to medically vulnerable detainees. Third, on behalf of six named Plaintiffs, Plaintiffs argue that continued detention is unconstitutional where removal is not reasonably foreseeable. The Court finds that it has habeas

jurisdiction over Plaintiffs' second and third claims and federal question jurisdiction over Plaintiffs' first claim.

The Court has previously addressed jurisdiction only with respect to the claim brought and relief sought by the proposed subclass. In six opinions granting release from detention through either a temporary restraining order or a preliminary injunction, the Court found that it had habeas jurisdiction over medically vulnerable detainees' claim that continued confinement at the Calhoun County Correctional Facility was unconstitutionally punitive and that no conditions of confinement could remedy the constitutional defects. The Court held that where a Plaintiff argues "that no matter what steps are taken, due to [their] underlying serious health conditions, there is no communal holding facility where [they] could be incarcerated during the Covid-19 pandemic that would be constitutional," . . . their claim "must . . . be considered as a challenge to the continued validity of confinement itself." (ECF No. 23, PageID.542.) In *Wilson v. Williams*, the Sixth Circuit upheld habeas jurisdiction where a group of medically vulnerable prisoners alleged that no conditions of confinement could guarantee their reasonable safety: "Our precedent supports the conclusion that where a petitioner claims that no set of

7

conditions would be constitutionally sufficient the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement." 961 F.3d 829, 838 (6th Cir. 2020). As the court recognized, "[t]he Supreme Court has held that release from confinement—the remedy petitioners seek here—is 'the heart of habeas corpus.'" *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973)). For the same reasons, the Court again finds that it has habeas jurisdiction over Plaintiffs' second claim.

The Court also has habeas jurisdiction to hear Plaintiffs' third claim. In *Zadvydas v. United States*, the Supreme Court held that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." 533 U.S. 688 (2001). Plaintiffs bring a prototypical *Zadvydas* claim: because six named Plaintiffs allege that they have been held in post-removal detention for more than six months and their removal is not reasonably foreseeable, they argue that the Fifth Amendment's Due Process Clause demands their immediate relief. Plaintiffs may pursue this claim through habeas.

However, Plaintiffs' first claim—which they bring on behalf of the proposed class as a whole—poses a separate jurisdictional question.

8

Plaintiffs do not allege that no conditions of confinement can adequately protect their constitutional rights. Although Plaintiffs seek conditional habeas relief on behalf of the class, their prayer for relief contemplates a set of conditions that would render continued detention constitutional: Plaintiffs request that the Court "[i]ssue a Writ of Habeas Corpus for all class members ordering their release unless . . . the Defendants have taken the steps that the Court has declared must be taken in order for individuals to be detained at Calhoun *without violating their constitutional rights*." (ECF No. 97, PageID.3351–3352 (emphasis added).) As the Sixth Circuit held in *Wilson* when addressing a similar claim, "[b]ecause petitioners outside the medically-vulnerable subclass sought improvement in the conditions at Elkton rather than release, the district court correctly concluded that the claims by these inmates were conditions of confinement claims not appropriately considered under § 2241." *Wilson*, 961 F.3d at 838. Under *Wilson*, Plaintiffs may not rely on habeas jurisdiction—and the class cannot seek habeas relief—for their conditions of confinement claim.

Instead, the Court has federal question jurisdiction to hear Plaintiffs' first claim. 28 U.S.C. § 1331 provides that "[t]he district courts

shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Fifth Amendment provides Plaintiffs with an implied cause of action. In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, the Supreme Court first upheld the proposition that the Constitution itself provided an implied cause of action for claims against federal officials. 403 U.S. 388, 388 (1971). In 2017, the Supreme Court held that federal courts should not extend a *Bivens* remedy into new contexts if there exist any "special factors counseling hesitation." *Ziglar v. Abassi*, 137 S.Ct. 1843, 1857 (2017). However, there is no corresponding limitation on the Constitution as a cause of action to seek injunctive or other equitable relief. *See id.* at 1862 (declining to extend *Bivens* to conditions of confinement claim but noting that "Respondents . . . challenge large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners. To address those kinds of decisions, detainees may seek injunctive relief."). There is a "presumed availability of federal equitable relief against threatened invasions of constitutional interests." *Hubbard v. E.P.A.*, 809 F.2d 1, 11 (D.C. Cir. 1986) (citing *Bivens*, 403 U.S. at 404 (Harlan, J., concurring)). Indeed, "the power of the federal courts

to grant equitable relief for constitutional violations has long been established." *Mitchum v. Hurt*, 73 F.3d 30, 35 (3d Cir. 1995). Here, Plaintiffs seek only injunctive and declaratory relief on their first claim. Accordingly, they may bring their claim directly under the Fifth Amendment, and the Court has jurisdiction to hear the claim under 28 U.S.C. § 1331.

This case therefore proceeds as a dual civil/habeas proceeding. While some courts have acknowledged that civil rights actions and habeas petitions have "distinct purpose[s] and contain[] unique procedural requirements that make a hybrid action difficult to manage," *see Spencer v. Barret*, Case No. 14-10823, 2015 WL 4528052, at *4 (E.D. Mich. July 27, 2015), such actions are legally permissible. *See Carney v. Sundquist*, 110 F.3d 63, 63 (6th Cir. 1997) (table decision) (concluding that prisoner's excessive detention lawsuit "is appropriately characterized as a hybrid habeas corpus/civil rights action").

## LEGAL STANDARD

### I.   General Class

Plaintiffs bear the burden of affirmatively demonstrating that their proposed class meets all four requirements of Rule 23(a) and satisfies at

least one provision of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Senter v. Gen'l Motors Corp.,* 532 F.2d 511, 522 (6th Cir.1976).

Rule 23(a) provides for class certification only if a proposed class satisfies the requirements of numerosity, commonality, typicality, and adequacy:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs maintain their proposed class falls under Rule 23(b)(1), which authorizes actions in which "prosecuting separate actions by . . . class members would create a risk of . . . varying adjudications . . . that would establish incompatible standards of conduct." In the alternative, Plaintiffs argue that their proposed class also satisfies Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Finally, Rule 23 typically includes an implicit requirement that Plaintiffs demonstrate that the defined class "is sufficiently definite so that it is administratively feasible for the court to determine whether an individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012). However, "ascertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief," *Cole v. Memphis*, 839 F.3d 530, 542 (6th Cir. 2016), and thus, to the extent the Court finds Plaintiffs' proposed classes satisfy Rule 23(b)(2), it does not apply here.

Plaintiffs' "[f]ailure to satisfy any of these requirements precludes certification." *Davis v. Cintas Corp.,* 717 F.3d 476, 484 (6th Cir.2013). "Meeting the requirements of Rule 23(a) requires something more than mere repetition of the rule's language; there must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537 (6th Cir. 2012) (internal citation and quotation omitted). To that end, the Court must perform a "rigorous analysis," including, if necessary, "prob[ing] behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350–51 (2011).

13

**Habeas Litigation Group**

Plaintiffs' proposed subclass poses a more complicated legal question with respect to certification. Plaintiffs suggest that under Federal Rule of Civil Procedure 23(d) the Court may create a subclass as a case management device that need not "independently comply with all of the requirements of Rule 23(a) [and] (b)." *See* 3 *Newberg on Class Actions* § 7:29 (5th ed.). But Plaintiffs proposed subclass—if it is to be certified—will proceed under a different jurisdictional source than its umbrella class. Specifically, the Court has habeas jurisdiction over Plaintiffs' second claim but not their first, and accordingly the subclass exists as a distinct habeas case in this hybrid action. The subclass therefore cannot piggyback off a decision to certify the full class. Instead, the Court will consider certification of Plaintiffs' proposed subclass as a distinct habeas litigation group.

The Federal Rules of Civil Procedure apply to habeas proceedings only "to the extent that the practice in those proceedings . . . is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases . . . and has previously conformed to the practice in civil actions." Fed. R. Civ. Proc. 81(a)(4). The

Supreme Court has declined to address whether Rule 23 provides a governing framework for aggregate habeas litigation. *See Schall v. Martin*, 467 U.S. 253, 261 n.10 (1984) ("We have never decided whether Federal Rule of Civil Procedure 23, providing for class actions, is applicable to petitions for habeas corpus relief."); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 858 n.7 (2018) (Thomas, J., concurring) ("This Court has never addressed whether habeas relief can be pursued in a class action.") Nonetheless, habeas class actions populate every level of the federal judiciary. The Supreme Court has reviewed several habeas classes for which the certification below was not challenged on appellate review. *See, e.g., Nielsen v. Preap*, 139 S. Ct. 954 (2019) (habeas class action challenging mandatory detention without bond); *Schall*, 467 U.S. at 261 n.10 (noting that "[a]lthough appellants contested the class certification in the District Court, they did not raise the issue on appeal"). The Sixth Circuit has similarly reviewed habeas classes without commenting on the propriety of Rule 23. *See Cameron v. Bouchard*, Case No. 20-1469, 2020 WL 3867393, at *4 n.1 (6th Cir. July 9, 2020) (upholding habeas jurisdiction in class action challenging civil detention during COVID-19 but not commenting on district court's application of

15

Rule 23); *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (same); *Hamama v. Adducci*, 912 F.3d 869, 872 (6th Cir. 2018) (reviewing preliminary injunction in habeas class action on the merits without addressing certification). The Court finds that Plaintiffs may seek certification of a habeas litigation group.

Accepting that habeas petitions may proceed on a collective basis, the question remains as to what standard for certification applies. In *Harris v. Nelson*, the Supreme Court held that under the All Writs Act, 28 U.S.C. § 1651, courts may use "appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage" in the exercise of their habeas jurisdiction so as to best "summarily hear and determine the facts, and dispose of the matter as law and justice require." 394 U.S. 286, 299 (1969); 28 U.S.C. § 2243. Plaintiffs argue that because of the latitude granted by *Harris*, the proposed habeas litigation group need not comply precisely with the provisions of Rule 23. (ECF No. 112, PageID.3786 (citing *United States ex rel. Morgan v. Sielaff*, 546 F.2d 218, 221 n.5 (7th Cir. 1976)).) Defendants counter that courts regularly apply Rule 23 directly to habeas collective litigation and that some courts contemplate more stringent standards. (ECF No. 126, PageID.4146

16

(citing *Wilson v. Williams*, Case No. 20-00794, 2020 WL 19140882, at \*6 (N.D. Ohio Apr. 22, 2020) and *Martinez-Brooks v. Easter*, No. 20-00569, 2020 WL 2405350, at \*30 (D. Conn. May 12, 2020) (recognizing that "more stringent standards" may apply to habeas class certification)).)

In *United States ex rel. Sero v. Presier*—the seminal case on representative habeas actions—the Second Circuit analyzed the history of habeas proceedings and class litigation to conclude that "although . . . the precise provisions of Rule 23 are not applicable to these proceedings, . . . an analogous procedure may be employed." 506 F.2d 1115, 1126 (2d. Cir. 1974). The court found that the satisfaction of Rule 23(a)'s prerequisites "bolstered" the implementation of an analogous representative action and proceeded through Rule 23 analysis. *Id.* In *Jennings v. Rodriguez*, the Supreme Court implicitly suggested that a Rule 23 analysis could be appropriate in adjudicating representative habeas actions. 138 S. Ct. 830 (2018). The Court considered a habeas class certified by the district court utilizing Rule 23 analysis. *Rodriguez v. Holder*, Case No. 07-03239, 2011 WL 13294658 (C.D. Cal. Mar. 8, 2011). In remanding the case, the Court instructed the Ninth Circuit to "consider on remand whether a Rule 23(b)(2) class action litigated on

common facts is an appropriate way to resolve respondents' Due Process Clause claims." *Id.* at 852 (2018).

For the reasons set forth in *Presier* and as supported by *Jennings*, the Court will look to Rule 23 requirements to determine whether certification of Plaintiffs' proposed habeas litigation group is appropriate.

## ANALYSIS

With respect to their first count, Plaintiffs seek to certify a class of "all noncitizens who are detained in Immigration and Customs Enforcement custody at [the Calhoun County Correctional Facility]." (ECF No. 112, PageID.3789.) For their second claim, they move to certify a habeas litigation group of "[a]ll noncitizens who are detained in ICE custody in the Calhoun County Correctional [Facility], and who have one or more risk factors placing them at heightened risk of severe illness or death if exposed to COVID-19."[4] (*Id.* at PageID.3789–3790.) The Court

---

[4] Plaintiffs move for neither class nor subclass certification with respect to their third claim. However, Plaintiffs appear to request aggregate relief: they seek for the Court to

> [d]eclare that for persons ordered removed to countries where removals are not currently occurring and who are held in post-order detention under 8 U.S.C. § 1231, including Plaintiffs Alhalmi, Baroi, Escobar, Ley Santana, Rodriguez Salabarria, and Toma, there is good reason to believe that, due to the COVID19 crisis, there is no significant likelihood of their removal in the reasonably foreseeable future, and that such

finds that the class satisfies Rule 23 requirements and that Rule 23 analysis favors certifying the habeas litigation group; the Court therefore grants Plaintiffs' motion.

## I. General Class

Plaintiffs' proposed class satisfies Rule 23's numerosity, commonality, typicality, and adequacy requirements and meets the standard for collective litigation set forth by Rule 23(b)(2).

### A.    Numerosity

Numerosity requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Proc. 23(a)(1). While courts do not apply "a strict numerical test for determining impracticability of joinder," *see Golden v. Columbus*, 404 F.3d 950, 965 (6th Cir. 2005), courts in the Sixth Circuit have found that "the

---

persons, including Plaintiffs Alhalmi, Escobar, Ley Santana, Rodriguez Salabarria, and Toma, must be released with appropriate precautionary public health measures unless the government can rebut that showing.

(ECF No. 97, PageID.3353.) In a more recent motion, Plaintiffs appear to bring their claim on behalf of named Plaintiffs only: "certain Plaintiffs contend that their removal is not significantly likely in the reasonably foreseeable future and that they are therefore entitled to release under *Zadvydas v. Davis*, 533 U.S. 678 (2001)." (ECF No. 147, PageID.4824.) Because Plaintiffs in this motion do not seek certification of a class of noncitizens alleging that their removal is not reasonably foreseeable, the Court will not consider Plaintiffs' third claim in its Rule 23 analysis.

numerosity requirement is fulfilled when the number of class members exceeds forty." *In re Wal-Mart ATM Fee Notice Litigation*, MDL No. 11-02234, 2015 WL 6690412, at *7 (W.D. Tenn. Nov. 3, 2015) (citing *Phillips v. Philip Morris Cos.*, 298 F.R.D. 335, 362 (N.D. Ohio 2014)). Additionally, concerns of judicial economy and the practicality with which class members could bring suit individually can inform numerosity analysis. *See Barry v. Corrigan*, 89 F. Supp. 3d 712, 731 (E.D. Mich. 2015) (citing *Crawley v. Ahmed*, Case No.  08-14040, 2009 WL 1384147, at *10 (E.D. Mich. May 14, 2009)).

Plaintiffs allege that "there were 144 noncitizens detained by ICE at Calhoun as of May 5, 2020." (ECF No. 112, PageID.3791.) Additionally, Plaintiffs argue that many putative class members lack counsel, have limited English proficiency, and, given the logistical challenges posed by COVID-19, would have difficulty filing individual claims. (*Id.* at PageID.3792.) Defendants do not contest that the putative class satisfies Rule 23's numerosity requirement. (ECF No. 126, PageID.4145.)

The Court finds that Plaintiffs' proposed class satisfies numerosity because of the number of putative class members alone. The Court notes that the current situation of many class members only further

20

demonstrates that joinder of all putative class members would be impractical, and that judicial economy would be well-served by certification.

### B.  Commonality

Commonality requires the existence of "questions of law or fact common to the class." Fed. R. Civ. Proc. 23(a)(2). As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, the statute requires class members to "have suffered the same injury"—meaning "their claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution." 564 U.S. 338, 350 (2011) (hereinafter "*Wal-Mart*"). Put another way, "determination of [the contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Plaintiffs must show that a class-wide proceeding will "generate common answers apt to drive the resolution of the litigation." *Id.* (citing Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009)). Plaintiffs need only show a single common question of law or fact to satisfy the commonality requirement. *Id.* at 359.

Plaintiffs propose multiple questions of law and fact that pertain to all class members and that will drive the resolution of the litigation on a class-wide basis. (ECF No. 112, PageID.3793.) To Plaintiffs, whether "detention at Calhoun violates [class members'] due process rights" and whether under the Fifth Amendment, "Defendants must modify the conditions of confinement such that social distancing will be possible" are common questions of law; "what measures are being taken to protect detainees from COVID-19" and "whether and how social distancing can be accomplished in Calhoun" are common questions of fact. (*Id.* at PageID.3797–3794.) Plaintiffs argue that "each of these questions can be determined 'in one stroke' for all class . . . members," yielding "common answers" that will help resolve Plaintiffs' Fifth Amendment claims. (*Id.* at PageID.3794.)

Defendants argue that commonality is not satisfied by Plaintiffs' factual or legal questions because putative class members have individualized risk profiles, experience variation in conditions at the Calhoun County Correctional Facility, and pose varying degrees of flight risk and danger. (ECF No. 126.)

22

First, Defendants argue that an individual's risk of dire outcome from COVID-19 is central to the class claim and that the Court "has affirmed the need for individual assessments of risk throughout this litigation." (ECF No. 126, PageID.4151–4152.) With respect to the proposed class here, this argument fails. The Court has previously adjudicated only claims brought by putative habeas litigation group members; it has never suggested that individual risk assessments are necessary for resolution of Plaintiffs' first claim. As Plaintiffs properly note, "to the extent any such differences [in risk profiles] are relevant, they would only be relevant to the Subclass, not to the Class, which is defined as all ICE detainees at Calhoun." (ECF No. 144, PageID.4779.) In seeking certification of a class of all noncitizen detainees, Plaintiffs look to adjudicate the claim that COVID-19 poses an unconstitutional risk to *any* civil immigration detainee held under current conditions at the Calhoun County Correctional Facility, regardless of underlying medical conditions or other risk factors. (*Id.* (articulating "claim [as being] that detention puts all detainees at risk, not just those with severe medical conditions, and that detention is punitive absent population reduction").) Accordingly, for purposes of the class claim, the Court need

23

not consider the extent to which underlying medical conditions or other factors may put an individual class member at heightened risk. Plaintiffs' argument may be unsuccessful because the Court may find that the pandemic does not render detention under current conditions unconstitutionally punitive for civil detainees without COVID-19 risk factors, but the proposed class can rise or fall together.

Second, Defendants point to factual variations in detention conditions—"different detainees are held in different units with different capacity and occupancy levels," while "some detainees are held in individual cells while others are not"—to argue that it is "impossible for the Court to decide Plaintiffs' claims 'in one stroke.'" (ECF No. 126, PageID.4152.) But in *Wal-Mart,* the Supreme Court did not require that each of the class *claims* be resolvable "in one stroke," but only that an "issue . . . central to the validity of each one of the claims" may be so resolved. *Wal-Mart*, 564 U.S. at 360. Overall conditions of confinement at the Calhoun County Correctional Facility are a factual issue common to all putative class members' claims. Whether an individual noncitizen is held in Pod A or Pod B, questions regarding the availability of personal protective equipment, the implementation of COVID-19 testing, the

24

feasibility of social distancing in common spaces, the frequency of population turnover, and the extent to which correctional officers enforce precautionary measures are shared with all other detainees at the facility. universal. (*See* ECF No. 98-3, PageID.3414–3419 (expert declaration reviewing declarations of named Plaintiffs and identifying facility-wide failures regarding implementation and enforcement of precautionary measures, ability of detainees to practice social distancing, and availability of hygiene products and protective equipment).) Determination of the precise state of current conditions is easily resolvable "in one stroke" and "is apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 360.

Moreover, if varied individual experiences in a detention setting were sufficient to defeat commonality, putative prisoner classes would never successfully receive certification. Prisoners are always in slightly different circumstances, given that they cannot all be in the same cell at the same time, and yet litigation challenging the safety of prisons, jails, and detention centers regularly proceeds on a class basis. *See Brown v. Plata,* 563 U.S. 493 (2011); *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 374 (1992). Additionally, as Plaintiffs allege, "[d]etainees are

regularly moved between units, . . . [and] Defendants have conceded that social distancing is impossible throughout the facility." (ECF No. 144, PageID.4780.) Accordingly, the Court finds that the overall nature of current conditions at the Calhoun County Correctional Facility presents a common question of fact central to the validity of class members' claims.

Third, Defendants argue that adjudication of the merits of a due process claim under *Bell v. Wolfish*, 414 U.S. 520, 535 (1979), requires individualized evaluation of risk of flight and dangerousness.[5] But this is not a habeas class; for general class members who are not seeking release, risk of flight and dangerousness are not applicable to the Court's analysis.

In *Wal-Mart*, the Supreme Court acknowledged that "rigorous [Rule 23] analysis" will entail some overlap with the merits of the

---

[5] On June 28, 2020, the Court held that the *Bell* punishment standard governed Plaintiffs' conditions of confinement claims. (ECF No. 127.) On July 27, 2020, Defendants filed a motion to amend the judgment, arguing that a deliberate indifference standard applies to Plaintiffs' claims and that the Court's decision otherwise is legal error. (ECF No. 158.) For purposes of Plaintiffs' motion for class certification, the Court will treat the *Bell* punishment test as the governing standard. Should the Court's adjudication of Defendant's motion to amend the judgment or a subsequent Sixth Circuit decision require the Court to change its analysis, the Court will issue an amended certification order pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), which provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment."

plaintiff's underlying claim." 564 U.S. at 352. *Bell v. Wolfish* holds that "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell*, 414 U.S. at 539. Plaintiffs' class claim concedes that there exists a set of conditions at the Calhoun County Correctional Facility that would be nonpunitive. (ECF No. 97, PageID.3351.) Because the proposed class exists under federal question jurisdiction, it can receive relief beyond release (to which relief under habeas jurisdiction is limited). *See Wilson*, 961 F.3d at 833. Plaintiffs seek a declaration identifying what steps "must be taken in order for individuals to be detained at Calhoun without violating their constitutional rights, including a determination of a detainee population level consistent with social distancing and other COVID-19 prevention requirements." (*Id.*) Accordingly, Plaintiffs' claim involves identifying the minimum conditions necessary to protect detainees' Fifth Amendment rights.

This analysis need not entail assessment of individualized risk of flight and dangerousness. As Defendants properly note, the Supreme

Court has held that "detention during [removal] proceedings is a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). But here, the class challenges the *conditions* of their detention—not the fact of detention itself. *Bell* mandates assessing Defendant's legitimate goals in imposing those conditions (for example, the alleged lack of widespread COVID-19 testing), not in detaining Plaintiffs in the first instance. Because Defendants' legitimate goals in determining the current set of conditions at the Calhoun County Correctional Facility is universal to all putative class members, Fifth Amendment analysis under *Bell* provides a common question of law, the answer to which will drive the resolution the litigation.

*Wal-Mart* demands only a single common question of law or fact to satisfy commonality; Plaintiffs' proposed class poses several. Accordingly, the Court finds that the proposed class satisfies Rule 23(a)(3).

## C.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class

members, and if [their] claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.* 511, F.3d 554, 561 (6th Cir. 2007). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. at 349 n.5.

Plaintiffs argue that typicality is satisfied because "each named putative class . . . representative is being harmed or threatened with harm by the same course of conduct as the rest of the class[,] . . . namely ICE's decision to continue to detain them in a setting that makes social distancing impossible." (ECF No. 112, PageID.3796.) Defendants raise the same arguments with respect to typicality that they relied on to argue against commonality. (ECF No. 126, PageID.4155 ("Plaintiffs cannot satisfy typicality for the same reasons that they cannot satisfy commonality.").) They argue that "distinct factual questions among class members . . . go to the heart of the claim, making class certification inappropriate." (*Id.* at PageID.4156.) But as set forth above, these factual differences either do not pertain to the class or do not impede class-wide resolution of issues or claims.

Because the alleged harm faced by the class—continued detention at the Calhoun County Correctional Facility in the face of the COVID-19

pandemic—is identical to the harm alleged by the named Plaintiffs, and the claim raised by the named Plaintiffs—a Fifth Amendment due process claim challenging current conditions of confinement as punitive—is the same as the claims of other class members, the proposed class satisfies Rule 23(a)(3).

### D.   Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria for adequate representation: class representatives must (1) have common interests with unnamed members of the class, and (2) vigorously prosecute the interests of the case through qualified counsel. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)

Plaintiffs argue that the proposed class satisfies these requirements because, "[l]ike the unnamed class members, Plaintiffs are in danger of infection, injury and death from COVID-19 as result of being detained at Calhoun. They have a life-or-death incentive to litigate their claims vigorously." (ECF No. 112, PageID.3796.) Plaintiffs explain that there are no known conflicts with other class members, (*id.*), and that Plaintiffs' counsel is both well-resourced and has extensive experience

conducting federal class action litigation. (*See* ECF No. 112-2, PageID.3822.) Defendants do not contest that Plaintiffs' proposed class representatives satisfy the adequacy requirement. (ECF No. 126, PageID.4145.)

The Court finds that Plaintiffs have common interests with putative class members because they allege the same injury—risk from COVID-19 due to unconstitutional detention conditions—and their counsel is both qualified and well-positioned to vigorously prosecute their case. Accordingly, the Rule 23(a)(4) requirement is satisfied.

### E.    Rule 23(b)

Plaintiffs argue that the proposed class satisfies either Rule 23(b)(1) or 23(b)(2) or, in the alternative, 23(c)(4). (ECF No. 112, PageID.3783.) Because the Court finds that Plaintiffs proposed class satisfies the requirements of 23(b)(2), it will not address certification under 23(b)(1) or 23(c)(4).

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Proc. 23(b)(2). As the

Supreme Court explained in *Wal-Mart*, "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" 564 U.S. at 360 (citing *Nagareda*, 84 N.Y.U L. Rev. at 132).

Plaintiffs contend that the proposed class satisfies this standard because Defendants have "detain[ed] and fail[ed] to protect class members during the COVID-19 pandemic." (ECF No. 112, PageID.3802.) Plaintiffs argue that "[a]ll class members seek the same declaration as to what steps must be taken so that immigration detention at Calhoun during the COVID-19 crisis is non-punitive." (ECF No. 112, PageID.3803.)

Defendants repeat the fact-specific arguments they raised to argue against a finding of commonality and typicality. They argue that "unitary habeas relief" inherently requires "individualized analysis of flight risk, danger, *and* the risk of severe illness for each class member." (ECF No. 126, PageID.4164.) Defendants' argument is again not relevant to the putative class, which is proceeding under federal question jurisdiction, not habeas jurisdiction, and which is therefore entitled to non-habeas

relief. As Plaintiffs note, "Defendants "focus[] on just one of the forms of relief sought. . . . Plaintiffs also seek declaratory . . . relief." (ECF No. 144, PageID.4782.)

The relief sought by the proposed class does not require any individualized analysis; rather, the class seeks both a determination of whether Defendants' actions or failures to act in response to COVID-19 amount to violations of civil detainees' constitutional rights in the aggregate and declaratory relief setting forth the minimum constitutional conditions of confinement. Such a declaration would be universally applicable; an injunction ordering Defendants to reduce the detainee population at the Calhoun County Correctional Facility, if necessary, would also apply to "all class members or . . . to none." *See Brown v. Plata,* 563 U.S. 493, 502, (2011) (affirming class-wide injunction of 'court-mandated population limit' in state prisons to remedy Eighth Amendment violations due to "severe and pervasive overcrowding"). The same injunction or declaratory relief can therefore provide relief to all class members or to none, and the putative class satisfies Rule 23(b)(2).

The requirements of Rule 23 are met, and the Court certifies a class of all noncitizens who are detained in Immigration and Customs Enforcement custody at the Calhoun County Correctional Facility.

## II. Habeas Litigation Group

Plaintiffs also seek certification of a subclass of "all noncitizens who are detained in ICE custody in the Calhoun County Correctional Center, and who have one or more risk factors placing them at heightened risk of severe illness or death if exposed to COVID-19."[6] (ECF No. 112, PageID.3813.) Because the proposed subclass proceeds under a different jurisdictional source than the certified class, the Court will treat Plaintiffs' motion for subclass certification as one for certification of a habeas litigation group. The Court looks to the Rule 23 requirements to determine whether an analogous procedure would help achieve the Court's mandate to "summarily hear and determine the facts, and

---

[6] Plaintiffs propose a set of underlying conditions that place an individual at heightened risk of severe illness or death from COVID-19. (ECF No. 112, PageID.3813.) At the certification stage, the Court declines to enumerate a comprehensive list of risk factors. As the Court's earlier opinions granting preliminary injunctive relief demonstrate, whether an individual is at heightened risk of a dire outcome requires individualized analysis. Accordingly, upon certification of the habeas class, the Court will require briefing to determine habeas litigation group membership.

dispose of the matter as law and justice require." *See Harris*, 394, U.S. at 299; 28 U.S.C. § 2243.

## A. Numerosity

Rule 23(a)'s numerosity requirement counsels in favor of aggregate resolution of the proposed habeas class' claim. As of May 5, 2020, Defendants identified fifty-one noncitizens with chronic medical conditions likely sufficient to show membership in the putative habeas class. (ECF No. 112, PageID.3791.) Plaintiffs argue that this list is "underinclusive, as it excludes individuals with risk factors identified in the subclass definition." (*Id.*) Defendants do not contest that the putative habeas litigation group satisfies numerosity. (ECF No. 126, PageID.4145). The Court finds that joinder of all putative habeas litigation group members would be impractical for the same reasons that joinder of all class members would be impractical.

## B. Commonality

Commonality also counsels in favor of employing an analogous class procedure to resolve Plaintiffs' second claim.

Plaintiffs argue that the same set of common questions apply to the putative habeas litigation group as to the class. (ECF No. 112,

PageID.3794.) Defendants again argue that factual differences between putative habeas litigation group members and the individualized analysis required to resolve their claims renders a showing of commonality impossible. (ECF No. 126, PageID.4149 –4155.) Defendants' objections, however, do not defeat a finding of commonality.

First, differences in individual civil detainees' risk profiles are relevant only to membership in the habeas litigation group, not to eligibility for relief. Defendants argue that this Court has repeatedly evaluated individual risk profiles to determine whether habeas relief was warranted. (*See* ECF No. 29, PageID.635–36 (declining to identify a "specific set or number of health conditions" or "a floor for the level of heightened risk of complications from COVID-19 that would justify immediate release from civil detention"); ECF No. 41, PageID.908 (recognizing that habeas relief depending on Petitioner Malam's "specific set of health conditions" and concluding that Plaintiff Toma's individual risk profile justified similar relief); ECF No. 90, PageID.2717 (granting Plaintiff Salabarria relief because of the combination of "hypertension together with her other underlying medical conditions").)

36

But the Court's earlier individualized analysis does not preclude aggregate resolution of questions central to Plaintiffs' second claim. The Court's reasoning with respect to COVID-19 risk factors has developed as the case has moved forward. In its two most recent opinions, the Court summarized its body of rulings as,

> in concert, . . . hold[ing] that the presence of a risk factor for severe illness and/or death translates a high risk of infection into a high risk of irreparable injury and a substantial risk of serious harm such that no conditions of confinement at the Calhoun County Correctional Facility can ensure a civil detainee's reasonable safety.

(ECF No. 127, PageID.4181.) While the Court has consistently assessed the individual risk profile of each Plaintiff, the key question for the Court's adjudications has been not the precise level of risk, which exists along a spectrum, but instead whether a given Plaintiff had heightened risk, which is a binary determination. Plaintiffs frame the proposed habeas class such that both membership and relief will hinge only on whether an individual detainee has an increased risk of a dire outcome from COVID-19. *See Alcantara v. Archambeault*, 2020 WL 2315777, at *5 (S.D. Cal. May 1, 2020) (finding the fact that each subclass member "has

a different risk profile . . . does not detract from the undisputed common feature of the subclass, which is that each member is at high risk").

Nor does the Court's recent determination that the *Bell v. Wolfish* punishment standard, rather than the *Farmer v. Brennan* deliberate indifference standard, applies to Plaintiffs' claims change this calculation.[7] The *Bell* standard sets forth that "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." 441 U.S. 520, 539 (1979). *Youngberg v. Romero*, applying *Bell* to a conditions of confinement claim, mandates that Plaintiffs are entitled to "conditions of reasonable care and safety." 457 U.S. 307, 324 (1982). The heart of Plaintiffs' claim is that there are no conditions of confinement that can guarantee reasonable care and safety to noncitizen civil detainees at heightened risk of a dire outcome from COVID-19. The Court can adjudicate that claim without

---

[7]  As noted above, should the Court's adjudication of Defendant's motion to amend the judgment or a subsequent Sixth Circuit decision require the Court to apply a deliberate indifference standard to Plaintiffs' claims, the Court will issue an amended certification order pursuant to Federal Rule of Civil Procedure 23(c)(1)(C).

reference to individual variations in medical risk. Accordingly, as Plaintiffs argue, "[d]ifferences in medical history and age will determine whether someone is in the Subclass, but they do not undermine typicality/commonality." (ECF No. 144, PageID.4780)

Second, the issues of individual flight risk and dangerousness can be managed through conditional relief and do not override the common questions posed by the class. Defendants argue that the adjudication of Plaintiffs' *Bell* punishment claim—specifically, determining whether continued detention is rationally related or excessive in relation to the dual government objectives of "preventing flight" and "protecting the community," *Zadvydas*, 533 U.S. 690— requires individualized analysis of flight risk and dangerousness, undermining commonality. But *Wal-Mart* does not mandate that putative class members fit an identical mold. The Court recognized that, so long as there exists "even a single common question," dissimilarities among class members do not defeat commonality. *Wal-Mart*, 564 U.S. at 359. Although putative habeas litigation group members may present different degrees of flight risk and dangerousness, they also present common underlying questions of law: can any conditions of confinement provide medically vulnerable

39

detainees reasonable care and safety at the Calhoun County Correctional Facility? Would conditions that fail to guarantee reasonable care and safety be punitive even if a noncitizen posed a risk of flight or danger to the community? Should the Court find that a risk of flight or danger to the community could support continued detention in individual cases, it can issue a conditional writ. In such cases, the putative habeas litigation group presents another common question of law: What legal standard applies to this flight risk and dangerousness evaluation?[8] Accordingly, the Court finds that Rule 23(a)(2) counsels for an analogous procedure here in spite of dissimilarities among putative habeas litigation group members.

Finally, Defendants argue that "there [is no] guarantee that a constitutional violation would be redressable through release." (ECF No. 126, PageID.4152.) They express concern that "[s]ome detainees may lack a release destination where they can ensure social distancing" and "[t]here is also the possibility that some may have nowhere to go beyond

---

[8] The United States criminal code imposes a clear and convincing evidence standard for dangerousness and a preponderance of the evidence standard for risk of flight. *U.S. v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004); 18 U.S.C. § 3142. Plaintiffs' claim arises in a non-criminal context and may or may not warrant the same standards.

a shelter or some other form of transitional housing." (*Id.* at PageID.4152–4153.) But this is not the applicable analysis. Absent narrow exceptions, it is clear that constitutional violations require government action. Plaintiffs' second claim ties the alleged constitutional violation—punitive conditions of confinement—to Defendants' actions—the decision to continue civil detention during the pandemic. Release would, by definition, redress the alleged constitutional violation because it removes the government from the equation. Even though civil detainees would face a risk of COVID-19 infection outside of the Calhoun County Correctional Facility, the magnitude of that risk would not be a direct result of government-generated conditions of confinement. Accordingly, such risk would not constitute punishment under the Fifth Amendment.

The habeas litigation group presents common questions of fact: what is the range of feasible conditions of confinement at the Calhoun County Correctional Facility? What is the nature and extent of the risk posed by COVID-19? On the basis of these questions alone, Rule 23(a)(2) counsels in favor of applying an analogous proceeding to the putative habeas litigation group. But the putative group also presents common

41

questions of law: can any conditions of confinement provide medically vulnerable detainees reasonable care and safety at the Calhoun County Correctional Facility? Would conditions that fail to guarantee reasonable care and safety be punitive even if a noncitizen posed a risk of flight or danger to the community?

The common answers to each of these questions are "apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350.

### C. Typicality

Rule 23(a)(3) also weighs in favor of aggregate resolution here. As above, Defendants argue that "Plaintiffs cannot satisfy typicality for the same reasons that they cannot satisfy commonality." (ECF No. 126, PageID.4155.) But as above, the alleged harm faced by the habeas litigation group—continued detention at the Calhoun County Correctional Facility in the face of the COVID-19 pandemic—is identical to the harm alleged by the named Plaintiffs. Further, the claim raised by the named Plaintiffs—a Fifth Amendment due process claim alleging that no set of conditions is constitutional during the pendency of the pandemic—is the same as the claims of other habeas litigation group

members. Accordingly, the typicality analysis favors aggregate resolution of the habeas litigation groups' claim.

### C. Adequacy

Defendants do not contest that the habeas litigation group satisfies the adequacy requirement. (ECF No. 126, PageID.4145). The Court finds that Plaintiffs have common interests with putative habeas litigation group members because they allege the same injury—risk from COVID-19 due to unconstitutional detention conditions—and their counsel is both qualified and well-positioned to vigorously prosecute their case. Rule 23(a)(4) supports using a class action analog to facilitate civil detainees' habeas claims.

### D. Rule 23(b)(2)

Although Rule 23(b)(2) contemplates common "final injunctive relief or corresponding declaratory relief" unavailable in habeas litigation, the existence of a universally applicable conditional writ leads Rule 23(b)(2) analysis to support the use of an analogous proceeding for the habeas litigation group.

District courts have broad power to shape the writ of habeas corpus in accordance with the circumstances of a given case. In *Jones v.*

*Cunningham*, the Court recognized that the writ of habeas corpus is not "a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose." 37 U.S. 236, 243 (1963). Forty-five years later, the Court reiterated the writ's flexibility: "[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained— though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008). As the Court explained, "common-law habeas corpus was, above all, an adaptable remedy." *Id.* *See also Pucha Quituizaca v. Barr*, No. 20-cv-403, 2020 WL 3166732, at *8 (W.D.N.Y. June 15, 2020) (granting writ unless government could show that, "even with conditions, [petitioner] present[ed] an identified and articulable risk of flight or a threat to an individual or the community"). Plaintiffs anticipate seeking conditional relief. (ECF No. 144, PageID.4787 (requesting "a conditional writ ordering release on the grounds that the risk of severe illness or death makes continued detention of the Subclass unreasonable unless Defendants prove by clear and convincing evidence that a Subclass member presents such a risk of

flight or danger to the community that continued detention is warranted").)

Defendants challenge such a conditional writ as "anything but unitary," asserting that it transforms the litigation into "a series of individual adjudications where the burden has been impermissibly shifted to the government to prove . . . that the detainee's constitutional rights have not been violated." (ECF No. 126, PageID.4163–4164.) But while a conditional writ would involve some individualized adjudication, that process would not undermine the "indivisible nature" of the remedy, *Wal-Mart*, 564 U.S. at 360, as the writ would be applicable to all habeas litigation group members. Moreover, it need not shift the burden of proof to the government. The Court may frame the writ as conditioning release on a showing by Plaintiffs that a particular class member does not pose a risk of flight or danger to the community.

The Court finds a Rule 23(b)(2) class action to be an appropriate framework from which it can analogize proceedings to govern the habeas litigation group so as to best "summarily hear and determine the facts, and dispose of the matter as law and justice require." *Harris*, 394 U.S. at 299; 28 U.S.C. § 2243. Accordingly, the Court certifies a habeas litigation

group of all noncitizens who are detained in ICE custody in the Calhoun County Correctional Center, and who have one or more medical risk factors placing them at heightened risk of severe illness or death if exposed to COVID-19.

### III.   Class Counsel

Pursuant to Rule 23(c), "an order that certifies a class action must . . . appoint class counsel under Rule 23(g)." Fed. R. Civ. Proc. 23(c)(1)(B). Rule 23(g) directs the Court to consider

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

The Court must also ensure that class counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. Proc. 23(g)(4).

On the basis of both parties' vigorous advocacy to date and the information provided by Plaintiffs regarding counsel's qualifications, the Court finds that Plaintiffs' counsel has done a great deal of work in identifying and investigating potential claims, has significant experience in handling class actions, has a deep knowledge of the applicable law, will

commit sufficient resources to representing the class, and will fairly and adequately represent the interests of the class. Accordingly, the Court appoints the American Civil Liberties Union Fund of Michigan, the American Civil Liberties Union Foundation, the ACLU Foundation Immigrants' Rights Project, and Paul, Weiss, Rifkind, Wharton & Garrison LLP to be class and habeas litigation group counsel.

## IV.   Limiting Class Membership

Defendants argue in a footnote that the Court should amend the class and habeas litigation group definitions "to exclude Calhoun detainees who brought individual habeas petitions that were denied. These detainees get the chance to appeal their denials. Having been denied on their individual claims, they should not be granted yet another chance by joining a class action." (ECF No. 126, PageID.4166.) Defendants neither develop nor offer legal support for this argument; the Court declines to limit the class definitions at this time. While Defendants' argument is likely inapplicable to the class, which proceeds under federal question jurisdiction, Defendants may formally move to limit the class or habeas litigation group definition. *See* Fed. R. Civ. Proc.

23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.")

**CONCLUSION**

For the reasons stated above, Plaintiffs have shown that both the general class and habeas litigation group may proceed on a collective basis. With respect to Plaintiffs' first claim, the Court certifies a class of all noncitizens who are detained in ICE custody at the Calhoun County Correctional Facility. With respect to Plaintiffs' second claim, the Court certifies a habeas litigation group of all noncitizens who are detained in ICE custody in the Calhoun County Correctional Center, and who have one or more medical risk factors placing them at heightened risk of severe illness or death if exposed to COVID-19.

IT IS SO ORDERED.

Dated: July 31, 2020                    s/Judith E. Levy
Ann Arbor, Michigan                  JUDITH E. LEVY
                                                   United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2020.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager