UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Janet Malam,
         Petitioner-Plaintiff,

and
         Case No. 20-10829

Qaid Alhalmi, *et al.*,
         Judith E. Levy
         United States District Judge

         Plaintiff-Intervenors,  Mag. Judge Anthony P. Patti

v.

Rebecca Adducci, *et al.*,

         Respondent-Defendants.

_____/

## **SEALED FIRST ORDER ON BAIL [181–185]**

On August 14, 2020, Plaintiffs submitted bail applications for habeas litigation group members Ahammad Ali, Ziggy Marcus Garvie, Juan Guerrero Bernardez, Gan Jin, and Taquir Niazi. (ECF Nos. 181–185.) On August 18, 2020, Defendants filed responses. (ECF Nos 186–190.) On August 20, 2020, Plaintiffs filed replies. (ECF Nos. 194–199.) After reviewing the applications and briefing, the Court grants bail for group members Ali, Guerrero Bernardez, Jin, and Niazi.

I. **Eligibility for Bail**

The Sixth Circuit has recognized the district court's "inherent authority" to grant a habeas petitioner release on bail pending adjudication of the petition's merits. *Nash v. Eberlin*, 437 F.3d 519, 526 n.10 (6th Cir. 2006). "The district court may release petitioners on bail if there is a 'substantial claim of law' and the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Id.* (citing *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993)).

On August 4, 2020, the Court found that "[t]he habeas litigation group makes a substantial claim of law" because group members have consistently shown a likelihood of success on the merits. (ECF No. 168, PageID.5294.) Additionally, the Court found that "the COVID-19 pandemic constitutes an exceptional circumstance deserving special treatment in the interests of justice." (*Id.* at PageID.5295.)

Despite these rulings, Defendants argue that there is neither a "substantial claim of law" nor circumstances "making the motion for bail exceptional and deserving of special treatment in the interests of justice." (ECF No. 186, PageID.5418.) They argue that "[t]here is no substantial

claim for release where the Sixth Circuit has already held that conditions of confinement similar to those at issue in this case do not give rise to a Fifth Amendment violation." (*Id.* (citing *Cameron v. Bouchard*, No. 20-1469, 2020 WL 3867393 (6th Cir. July 9, 2020).) But *Cameron* applied a deliberate indifference standard to the plaintiffs' claims, whereas this Court applies the *Bell* punishment standard and does not require a subjective showing of deliberate indifference. (ECF No. 127, PageID.4222.)

Regarding the threat of COVID-19, Defendants claim "the current conditions at Calhoun, in light of the precautions taken, do not present such an extraordinary risk of exposure as to justify immediate release on bail." (ECF No. 186, PageID.5419.) Defendants continue to minimize the threat of COVID-19. Inside of the Calhoun County Correctional Facility and out, COVID-19 continues to spread. On August 17, 2020, counsel for Defendants informed the Court that three additional asymptomatic detainees had tested positive in the previous three weeks; ICE's website currently cites a total of 12 confirmed cases among Calhoun detainees. *See* U.S. Immigration and Customs Enforcement, *ICE Guidance on COVID-19: ICE Detainee Statistics* (updated Aug. 23, 2020),

3

https://www.ice.gov/coronavirus. And in Michigan, there have been a staggering 96,792 confirmed cases and 6,393 deaths from COVID-19. *See Coronavirus: Michigan Data*, Michigan.gov (updated Aug. 23, 2020), https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html. For medically vulnerable detainees, COVID-19 continues to pose a serious threat to their health and life. The Court can imagine no circumstance more exceptional or deserving of special treatment in the interests of justice.

Finally, Defendants continue to raise variations of the argument that habeas litigation group members will not be safer upon release. (*See* ECF No. 188, PageID.5441 (comparing cases at the Calhoun County Correctional facility with those in Manassas, Virginia to argue that group member "has not shown that his release into the community during a pandemic will decrease his risk of exposure to COVID-19"); ECF No. 189, PageID.5547 (same with respect to Jackson, Michigan); ECF No. 190, PageID.5552 (same with respect to Trenton, Michigan).) By focusing on absolute infection numbers instead of infection rates, Defendants mischaracterize the extent of the crisis at the Calhoun County Correctional Facility. (*See* ECF No. 127, PageID.4191 (explaining that

4

analysis of infection rates demonstrates that "the Calhoun County Correctional Facility faces a similar, if not greater, state of emergency" as compared to the state of Michigan).) Additionally, release would remove detainees from communal confinement—a condition public health experts and this Court have repeatedly found to be a significant COVID-19 risk factor. Defendants should rest assured that they have preserved what this Court considers to be an illogical, bad-faith argument for appeal. The Court will no longer consider or address this argument at this stage of the litigation.

The Court continues to find that group members raise substantial claims of law and that COVID-19 presents special circumstances making the bail applications exceptional.

## II. Individual Bail Applications

The Court makes the following findings with respect to the individual bail applications:

### *Ahammad Ali* (ECF No. 181)

Plaintiffs write that Ali has no criminal history in the United States or in Bangladesh and will stay with a family friend upon release. (ECF No. 181, PageID.5335.) Defendants argue that Ali is a flight risk because

5

an Immigration Judge found he had few ties to the United States. (ECF No. 186, PageID.5420.) Defendants do not argue that Ali would be a danger to the community, but they note that an Immigration Judge found he provided material support to the Bangladesh Nationalist Party (BNP), which the Immigration Judge labeled an undesignated terrorist organization. (*Id.*) Plaintiffs reply that Ali will have the support of a family friend and multiple Michigan community organizations. (ECF No.195, PageID.5673.) Additionally, Plaintiffs explain that the Bangladesh National Party is the second largest political party in Bangladesh, with over 11 million constituents. The Third Circuit has found that absent a finding that BNP party leaders authorized terrorist activity, the BNP cannot be deemed an undesignated terrorist organization. *Uddin v. Att'y Gen.*, 870 F.3d 282, 292 (3d Cir. 2017).

After thoroughly reviewing the parties' submissions, the Court finds that Ali's strengthened community ties show that he will be neither a flight risk nor a danger to the community upon release. Ali's application for bail is granted.

*Ziggy Marcus Garvie* (ECF No. 182)

6

Defendants explain in their response that Garvie was transported to Alexandria, Louisiana on August 18, 2020 in preparation for his imminent removal. (ECF No. 187, PageID.5432.) Accordingly, Garvie's application for bail is denied as moot. Defendants are ordered to inform the Court by no later than August 31, 2020 as to the status of Garvie's removal.

*Juan Guerrero Bernardez* (ECF No. 183)

Plaintiffs write that Guerrero Bernardez, who has lived in the United States for 45 years, has no violent criminal history and will stay with his wife and two sons upon his release. (ECF No. 183, PageID5367.) Defendants argue that Guerrero Bernardez should be presumed to be a danger because he is subject to mandatory detention. (ECF No. 183, PageID.5546.) Additionally, Defendants note that Guerrero Bernardez has previously separated from his wife, causing him to become homeless. (*Id.* at PageID.5547.) Plaintiffs reply that Guerrero Bernardez has reconciled with his wife. (ECF No. 197, PageID.5706.)

The Court concludes that although Guerrero Bernardez is subject to mandatory detention, his criminal history is all nonviolent and he will not be a danger to the community upon release. Additionally, his strong

ties to the community and to his family demonstrate that he will not be a flight risk. Accordingly, Guerrero Bernardez' application for bail is granted. Plaintiffs are ordered to inform the Court if Guerrero Bernardez' personal circumstances change such that alternative custodial arrangements would be needed.

### *Gan Jin* (ECF No. 184)

Plaintiffs write that Jin has lived in the United States for over 30 years and has no violent criminal history. (ECF No. 184, PageID.5386.) If released, he will live with his family in Manassas, Virginia. (*Id.*) He has close ties to the community through his employment and church. (*Id.*) Defendants argue that Jin is a threat to national security and a flight risk because of his ties to the Chinese government. (ECF No. 188, PageID.5439.) They allege that Jin has lied to the United States about his involvement with Chinese intelligence agencies. (*Id.*) Plaintiffs note that an Immigration Judge rejected Defendants' arguments, finding that Jin had "adequately and credibly addressed the allegations against him by the government who essentially allege[d] that he has acted as a spy for the Chinese government." (ECF No. 198, PageID.5711.)

Absent new evidence, the Immigration Judge's opinion, based on a review of hours of testimony from Jin and letters from his wife and daughter, is dispositive here. The Court concludes that Jin will neither be a flight risk nor a danger to the community upon release. Jin's application for bail is granted.

### *Tauqir Niazi* (ECF No. 185)

Plaintiffs write that Niazi, who has lived in the United States for over two decades, would live with his fiancé, her two children, and his youngest daughter in Trenton, Michigan. (ECF No. 185, PageID.5403.) They note that while Niazi has a history of domestic violence against his ex-wife, he has never served jail time for these offenses. (*Id*. at PageID.5401.) Additionally, 2019 charges of domestic violence against his middle daughter have been dismissed. (*Id*.) Defendants respond that Niazi's history of domestic violence makes him a danger to the community. (ECF No. 190, PageID.5551.) Plaintiffs reply that Niazi would not live with either his ex-wife or the daughter involved in the 2019 incident. (ECF No. 199) Plaintiffs support this allegation with declarations from both Niazi and his fiancé. (ECF Nos. 185, 199-3.)

The Court takes incidents and allegations of domestic violence very seriously. Although the Court finds Niazi is neither a flight risk nor a danger to the community given his proposed release plan, the Court will release Niazi on bail only with the condition that he have no contact with his middle daughter and his ex-wife for the pendency of this case, absent approval from ICE to do so should either his ex-wife or middle daughter request contact with Niazi. Accordingly, Niazi's application for bail is granted with this additional condition.

### III. Conclusion

For the reasons stated above, the Court grants bail for habeas litigation group members Ali, Guerrero Bernardez, Jin, and Niazi. Each habeas litigation group member is subject to the conditions outlined in this Court's August 12, 2020 order. (ECF No. 179.) Additionally, habeas litigation group member Niazi is subject to the additional condition that he must have no contact with his middle daughter and his ex-wife for the pendency of this case, absent approval from ICE to do so should either his ex-wife or middle daughter request contact with Niazi. The Court denies habeas litigation group member Garvie's bail application as moot.

**IT IS SO ORDERED.**

Dated: August 25, 2020        s/Judith E. Levy
    Ann Arbor, Michigan        JUDITH E. LEVY
                                          United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 25, 2020.

                                            s/William Barkholz
                                            WILLIAM BARKHOLZ
                                            Case Manager