## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Janet Malam,

           Petitioner-Plaintiff,

and

Qaid Alhalmi, *et al.*,

           Plaintiff-Intervenors,

v.

Rebecca Adducci, *et al.*,

           Respondent-Defendants.

_____/

Case No. 20-10829

Judith E. Levy
United States District Judge

Mag. Judge Anthony P. Patti

## Opinion and Order Denying Defendants' Motion to Amend Judgment [158]

On June 28, 2020, the Court entered an opinion and order granting a preliminary injunction requiring the release of six medically vulnerable detainees at the Calhoun County Correctional Facility. (ECF No. 127.) After considering extensive briefing from both sides and an amicus brief, the Court held that the *Bell v. Wolfish* punishment standard applied to Plaintiffs' conditions of confinement Fifth Amendment Due Process Claim, (*id.* at PageID.4222), and that the six detainees had shown a

likelihood of success on the merits. (*Id.* at PageID.4249.) On July 27, 2020, Defendants filed this motion to amend the Court's judgment pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 158.) Defendants challenge the Court's determination that *Bell v. Wolfish* governs Plaintiffs' claim, arguing that a recent Sixth Circuit decision constitutes an intervening change in controlling law and that Sixth Circuit Fifth Amendment precedent renders the Court's decision a clear error of law. Because the Sixth Circuit's recent decision in *Cameron v. Bouchard* is neither at odds with the Court's opinion nor binding precedent and Sixth Circuit caselaw does not preclude the Court's holding, Defendants' motion is denied.

## I. Background

The Fifth Amendment protects civil detainees from punishment, *see Bell v. Wolfish*, 441 U.S. 520, 535 (1979), whereas the Eighth Amendment protects prisoners from cruel and unusual punishment, which can take the form of deliberate indifference by prison officials. *See Estelle v. Gamble*, 429 U.S. 94 (1976). Because of the similarities between Fifth and Eighth Amendment protections, the Sixth Circuit has imported much of the Supreme Court's deliberate indifference analysis into its

adjudication of Fifth and Fourteenth Amendment claims by civil and pretrial detainees. *See, e.g, Thompson v. Cty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) (stating that pretrial "detainees are . . . entitled to the same Eighth Amendment rights as other inmates"). Since issuing its first opinion in this case, the Court wrestled with the proper framing of Plaintiffs' conditions of confinement claim: do Plaintiffs challenge Defendants' deliberate indifference to their wellbeing, to be analyzed under the Supreme Court precedent of *Estelle* and the cases that built upon it, or is their claim more properly considered a punishment claim governed by *Bell* and its line of cases? On May 12, 2020, the Court ordered supplemental briefing on which standard applies. (ECF No. 68, PageID.1932.) On July 28, 2020, the Court held that Supreme Court precedent mandates adjudicating Plaintiffs' claim through a punishment lens. (ECF No. 127, PageID.4222.)

The Court recognized the complicated legal landscape—one described by the Fifth Circuit as traveling a "peripatetic route" from case to case, *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996)—relating to due process protections for civil detainees. (*Id.* at PageID.4210.) The Court found that Sixth Circuit opinions oscillate between applying

3

punishment and deliberate indifference standards: the Sixth Circuit has applied *Bell*'s punishment standard, without reference to deliberate indifference, to Fifth and Fourteenth Amendment claims involving excessive force, *see U.S. v. Budd*, 496 F.3d 517, 529 (6th Cir .2007), use of solitary confinement, *see J.H. v. Williamson Cty.*, 951 F.3d 709, 717 (6th Cir. 2020), and the transfer of psychiatric detainees, *see Turner v. Stumbo*, 701 F.2d 567, 571 (6th Cir. 1983); elsewhere, the court has employed a deliberate indifference framework to due process claims involving denial of medical care, *see J.H.*, 951 F.3d at 722-23, and the failure to promulgate suicide prevention procedures, *see Roberts v. City of Troy*, 773 F.2d 720, 722 (6th Cir. 1985). Surveying the caselaw, this Court found that "[u]ltimately, Sixth Circuit precedent supports finding that the Fifth and Eighth Amendment protections are coextensive— justifying the application of a deliberate indifference test—and distinct— requiring a punishment standard." (ECF No. 127, PageID.4208.)

The Court concluded that Supreme Court precedent resolves this ambiguity and mandates adjudicating Plaintiffs' claims through a punishment lens. In *Youngberg v. Romeo*, the Supreme Court held that civil detainees "are entitled to more considerate treatment and conditions

of confinement than criminals whose conditions of confinement are designed to punish. *Cf. Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)." 457 U.S. 307, 322 (1982). This Court found that "[b]y recognizing an Eighth Amendment jury instruction as legally erroneous and contrasting its holding with *Estelle*, *Youngberg* stands for the proposition that a deliberate indifference framework does not apply to conditions of confinement claims brought by civil detainees." (ECF No. 127, PageID.4214–15.) The Court noted that "[m]ore recent Supreme Court precedent affirms this conclusion." (*Id.* at PageID.4215.) The Court found the following:

> In *Kingsley v. Hendrickson*, the Supreme Court addressed the legal standard that applied to a pretrial detainees' excessive force claim under the Fourteenth Amendment's Due Process Clause. 135 S. Ct. 2466 (2015). The Court applied *Bell* to hold that the plaintiff need only show that the use of force was objectively unreasonable. *Id.* at 2470. Although Kingsley did not address a conditions of confinement claim, it affirmed the application of *Bell* to such claims: "The *Bell* Court applied this latter objective standard to evaluate a variety of prison conditions, including a prison's practice of double-bunking." *Id.* at 2474. *Kingsley* also explicitly rejected the use of Eighth Amendment precedent in evaluating Due Process claims. Respondents in *Kingsley* cited to *Whitley v. Albers*, 475 U.S. 312 (1986), and *Hudson v. McMillian*, 503 U.S. 1 (1992), for the proposition that pretrial detainees must show a subjective element for excessive force claims. *Id.* But the Court was

5

quick to point out that "these cases, however, concern excessive force claims brought by convicted prisoners under the Eighth Amendment's Cruel and Unusual Punishment Clause, not claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause." *Id.* As the Court explained, "The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Id.*

(ECF No. 127, PageID.4215–16.) Drawing on this analysis, the Court held that "*Bell*, *Youngberg*, and *Kingsley* lead to the conclusion that *Bell*'s punishment standard applies to Plaintiffs' claims in this case." (*Id.* at PageID.4216.) The Court then applied *Bell* to find that Plaintiffs were likely to succeed on the merits of their Fifth Amendment claim. (*Id.* at PageID.4222–30.)

On July 27, 2020, Defendants moved to amend the Court's judgment. (ECF No. 158.) They do not challenge the Court's *Bell* analysis; they challenge only the Court's decision to apply *Bell* in the first instance.[1] On July 28, 2020, the Court ordered Plaintiffs to respond. (ECF

---

[1] On August 25, 2020, Defendants filed a notice of supplemental authority, alerting the Court to a recent Third Circuit decision, *Hope, et al. v. Warden York Cty. Prison, et al.*, Case No. 20-1784 (3d Cir. Aug. 25, 2020). (ECF No. 211.) Defendants explain that the Third Circuit found that "under both the *Bell v. Wolfish* punishment

No. 159.) On August 3, 2020, Plaintiffs filed a response. (ECF No. 163.) The Court now denies Defendants' motion.

## II. Legal Standard

Federal Rule of Civil Procedure 59(e) provides that a party may move "to alter or amend a judgment" within "28 days after the entry of the judgment." An order granting a preliminary injunction is a judgment for purposes of Rule 59(e) because it is an order from which an appeal lies. *See* Fed. R. Civ. P. 54(a); 28 U.S.C. § 1292(a)(1); *see also Wong-Opasi v. Haynes*, 8 Fed. App'x 340, 342 (6th Cir. 2001). A district court may grant a motion under Federal Rule of Civil Procedure 59(e) if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

## III.   Analysis:

---

standard and the deliberate indifference standard, immigration detainees failed to establish a likelihood of success on a due process claim based on failure to adequately protect them from COVID-19." (*Id.* at PageID.6083.) But critically, *Hope* held that a punishment standard applies to claims brought by medically vulnerable civil detainees challenging the conditions of their confinement during COVID-19. (ECF No. 211-1, PageID.6106.) Defendants' motion to amend the Court's judgment does not argue that the Court erred in its *Bell* analysis; it only argues that the Court erred in applying *Bell* in the first instance. Defendants' supplemental authority therefore only supports denying their motion to amend.

Defendants argue that the Sixth Circuit's decision in *Cameron v. Bouchard*, No. 20-1469, 2020 WL 3867393 (6th Cir. July 9, 2020), constitutes an intervening change in controlling law requiring the application of a deliberate indifference test to Plaintiffs' claims. (ECF No. 158, PageID.5083.) In the alternative, Defendants claim that when considering the full body of Sixth Circuit precedent, the Court made a clear error of law in holding that Plaintiffs' conditions of confinement habeas claim is governed by the *Bell v. Wolfish* punishment standard. (*Id.* at PageID.5087.) Neither argument warrants amending the Court's June 28, 2020 order.

## A. Intervening Change in Controlling Law

In *Cameron*, the Sixth Circuit held that pretrial detainees' "[c]onditions-of-confinement claims are assessed under the 'deliberate indifference' framework." 2020 WL 3867393, at *4. According to Defendants, *Cameron* governs this case because "immigration detainees are analogous to criminal pretrial detainees" where Due Process analysis is concerned. (ECF No. 158, PageID.5084.)

But as Plaintiffs argue, and as Defendants concede, *Cameron* is an unpublished decision.[2] (ECF No. 163, PageID.5157; ECF No. 158, PageID.5083.) The Sixth Circuit "permits citation of any unpublished opinion, order, judgment, or other written disposition," *see* 6 Cir. R. 32.1(a), but "[u]npublished opinions in the Sixth Circuit are, of course, not binding precedent." *Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011). *Cameron* alone cannot constitute an "intervening change in controlling law." *See Gabe v. Terris,* No. 17-11385, 2018 WL 10230039, at *1 (E.D. Mich. Apr. 6, 2018) (denying motion to amend judgment where party relied only on a single, unpublished Sixth Circuit case).

While the Court could nonetheless consider *Cameron* persuasive authority for applying a deliberate indifference standard, it declines to do so for the following reason. In applying a deliberate indifference framework to pretrial detainees' claims, *Cameron* relied exclusively on *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563 (6th Cir. 2013). *Villegas* held that "[p]retrial detainee claims, though they sound in the Due Process Clause of the Fourteenth Amendment rather than the Eighth

---

[2] The opinion was not recommended for publication. *See Cameron v. Bouchard*, Case No. 20-1469 (6th Cir. July 9, 2020), at https://www.opn.ca6.uscourts.gov/opinions.pdf/20a0394n-06.pdf.

Amendment, are analyzed under the same rubric as Eighth Amendment claims brought by prisoners" because "the concept underlying the Eighth Amendment . . . is nothing less than the dignity of [hu]man[kind]." 709 F.3d at 568 (internal citations omitted). But as the Court recognized in its opinion and order applying the *Bell* punishment standard, the Fifth Amendment provides *greater* protections to civil detainees than the Eighth Amendment affords prisoners. (ECF No. 127, PageID.4219 (citing *Youngberg*, 457 U.S. at 322 ((civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish")).) As the Third Circuit has recognized, "the Eighth Amendment [is] relevant to conditions of pretrial detainees only because it establishe[s] a floor." *Hubbard v. Taylor*, 399 F.3d 150, 165–66 (3d Cir. 2005) While *Cameron* and *Villegas* employ a constitutional shorthand by equating Fifth and Eighth Amendment protection, this is not constitutionally required. Application of the *Bell* punishment standard—requiring only an objective showing that government action is excessive in relation to a legitimate governmental objective—recognizes the difference between these constitutional rights.

Accordingly, *Cameron v. Bouchard* does not constitute an intervening change in controlling law that would require the Court to amend its June 28, 2020 order.

## B. Clear Error of Law

Defendants also argue that Sixth Circuit precedent both demonstrates that the Court's interpretation of *Bell*, *Youngberg*, and *Kingsley* is a clear error of law and mandates the application of a deliberate indifference standard. (ECF No. 158, PageID.5087.) Plaintiffs see Defendants' argument as "an attempt to relitigate issues this Court already decided," such that their motion is "an abuse of Rule 59" and a "violation of the doctrine of the law of the case." (ECF No. 163, PageID.5166 (citing *Christian v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–816 (1988).) While Defendants' argument raises many of the same issues on which the Court has already ruled, they rely on precedent cited by neither party in earlier briefing. Given the importance of both the case as a whole and the proper legal standard to its resolution, the Court will address Defendants' arguments on the merits.

Defendants again attempt to establish a general framework for determining which legal standards apply to civil detainees' claims. First,

they cite to *Whitley v. Albers* for the proposition that "[t]he constitutional standard that applies to prove a due process violation varies with the 'differences in the kind of conduct' alleged to be a violation, not whether it involves a condition of confinement." (ECF No. 158, PageID.5087 (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Defendants also cite to *J.H. v. Williamson Cty.*, 951 F.3d 709 (6th Cir. 2020), for the proposition that courts apply different standards to pretrial detainee claims based on conduct. (ECF No. 158, PageID.5097.) But a close reading of *Whitley* and *J.H.* demonstrates that even if a deliberate indifference standard is sometimes applicable to claims brought by civil detainees, the punishment standard is more appropriate here.

As an initial matter, *Whitley* addressed when deliberate indifference was appropriate in the Eighth Amendment context; the Court held that "[t]he general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should also be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." 475 U.S. at 320. But the Fifth Amendment prohibits all punishment, not just punishment that constitutes "unnecessary and wanton infliction of pain."

12

*Compare Estelle*, 429 U.S. at 103 (subjective component of deliberate indifference claims is derived from Eighth Amendment's prohibition against "unnecessary and wanton infliction of pain") *with Bell*, 441, U.S. at 535 (holding that Fifth amendment prohibits all punishment of civil and pretrial detainees). Because *Whitley*'s legal reasoning rests on the meaning of the phrase "unnecessary and wanton", the case does not apply outside of the Eighth Amendment context. *See Kingsley*, 135 S. Ct. at 2474 (recognizing that *Whitley* does not apply to due process claims). Indeed, the *Whitley* Court *contrasts* its holding with the pretrial detainee Fifth Amendment cases of *Block v. Rutherford*, 468 U.S. 576 (1984) and *Bell v. Wolfish*¸441 U.S. at 539. *Id.* at 321. *Whitley* thus supports the application of a punishment standard to Plaintiffs' claims.

While the Sixth Circuit in *J.H.* applied a deliberate indifference to a pretrial detainee's claim that juvenile detention facility officials failed to meet his serious medical needs, the court applied *Bell* to the plaintiff's claims related to his conditions of confinement. *See J.H.*, 951 F.3d at 719 ("[W]e are mindful of the nature and duration of J.H.'s segregation. . . . [T]he *Bell* Court expressly considered . . . the duration of the punitive conditions.") (citing *Williamson v. Stirling*, 912 F.3d 154, 180 (4th Cir.

2018)).  Like *Whitley*, *J.H.* supports applying the *Bell* punishment test to conditions of confinement claims.

Second, Defendants argue that Sixth Circuit precedent supports the general rule that "[w]here a claim involves the alleged failure to provide for a pretrial detainees' reasonable 'health and safety,' the deliberate indifference standard applies." (ECF No. 158, PageID.5088.) But to support this proposition, Defendants offer a host of Sixth Circuit caselaw addressing the legal standard only in cases where a plaintiff displayed or expressed immediate medical needs; they offer no precedent comparable to this case.

In *Brown v. Chapman*, the Sixth Circuit applied the deliberate indifference standard where a decedent informed arresting officers that he was having difficulty breathing. 814 F.3d 436, 444 (6th Cir. 2016). *Brown* recognized that "[t]he deliberate-indifference standard is typically applied when a pretrial detainee alleges he was denied access to adequate medical care." *Id.* (citing *Estate of Owensby v. Cincinnati*, 414 F.3d 596, 602 (6th Cir. 2005)). *Watkins v. City of Battle Creek* involved a pretrial detainee who died as a result of a cocaine overdose after allegedly refusing medical treatment. 273 F.3d 682, 686 (2001). The Sixth Circuit

14

construed the plaintiff's claim as "a cause of action under § 1983 for failure to provide medical treatment" requiring the plaintiff to show that "defendants acted with deliberate indifference to serious medical needs." *Id.* (citing *Estelle*, 429 U.S. at 104). In *Winkler v. Madison Cty.*, the court addressed a claim brought by the family of a pretrial detainee who died in detention of a perforated duodenal ulcer. 273 F.3d 682, 686 (6th Cir. 2001). The decedent's family argued that the defendants had been "deliberately indifferent to [the individual's] serious medical needs." *Id.* at 690. The court categorized the claim as "a § 1983 claim of deliberate indifference to serious medical needs." *Id.* *Rouster v. Cty. of Saginaw* addressed the case of another pretrial detainee who died as a result of a perforated duodenal ulcer. 749 F.3d 437, 446 (6th Cir. 2014). The Sixth Circuit again applied *Estelle* to determine the appropriate legal standard: "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.*

Each of the above cases addressed claims alleging a failure to provide medical care for immediate medical needs of a decedent. But those circumstances do not describe this case, both in substance and in

15

posture. Although the COVID-19 threat is epidemiological in nature and can create serious medical needs, the majority of detainees at the Calhoun County Correctional Facility have not yet been infected—a fact for which the Court is grateful. The need for sufficient precautionary measures—including adequate personal protective equipment, proper social distancing, and vigilant hygiene practices—are not "serous medical needs" as imagined by the precedent Defendants cite. Indeed, a claim that the conditions of confinement do not allow for social distancing is more akin to a claim challenging a policy of double-bunking, *see Bell*, 441 U.S. at 561 (analyzing double-bunking practice under punishment lens), or solitary confinement, *see J.H.*, 951 F.3d at 717, than to an allegation that prison officials failed to provide medical care. Defendants do not cite to any legal authority that the deliberate indifference standard applies to all cases involving an alleged failure to provide for a pre-trial plaintiff's ongoing reasonable health and safety, as opposed to a subset of those cases in which a plaintiff raises allegations of a serious medical need that defendants failed to treat in the past.

Additionally, this case exists in a different procedural posture than the above precedent: each of the detainees in the above cases had died,

with their estates challenging the discrete failure to provide medical care that led to their death. Here, Plaintiffs are alive, and challenge the sufficiency of the ongoing conditions to which they are still subject. Their claims are more systemic in nature: Defendants are not detention center officers or medical care providers who addressed (or failed to address) a current medical need; instead, they are Plaintiffs' legal custodians, responsible for establishing the conditions of confinement in which Plaintiffs are detained but who neither party alleges interact with Plaintiffs or have even set foot inside the Calhoun County Correctional Facility. The precedent on which Defendants rely is therefore inapplicable and does not warrant amending the Court's judgment.

Third, Defendants repeat their argument that regardless of how a claim is labeled, Sixth Circuit precedent equates Fifth and Eighth Amendment protections, making the deliberate indifference test with both subjective and objective elements the appropriate standard. They cite to three Sixth Circuit cases for this proposition: *Villegas v. Metropolitan Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2017) ("Pretrial detainee claims, though they sound in the Due Process Clause . . . rather than the Eighth Amendment, are analyzed under the same

rubric as Eighth Amendment claims brought by prisoners."); *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citing *Villegas*) ("This Court has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric,'" that a constitutional right is violated when prison officials "are deliberately indifferent to the prisoner's serious medical needs."); and *Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) ("The [deliberate indifference analysis], although rooted in the Eighth Amendment, therefore applies with equal force to a pretrial detainee's Fourteenth Amendment claims."). But as noted above, this precedent only supports the contention that the Eighth Amendment provides a floor for Fifth Amendment protections, justifying but not mandating the use of Eighth Amendment analysis to adjudicate Fifth Amendment claims. *Bell*, as this Court applies it, recognizes that civil detainees are afforded greater constitutional protections than their criminal counterparts. *See Youngberg*, 457 U.S. at 322.

Fourth, Defendants renew their argument that Sixth Circuit precedent categorizes claims along an action/inaction binary. Defendants again cite to *Roberts v. City of Troy*, which declared that *Bell* "deals with

actions rather than the failure to act." 773 F.2d 720, 724–25 (6th Cir. 1985). Defendants claim that "[b]ecause this case involves an alleged failure to act, i.e. an alleged failure to implement sufficient measures at Calhoun to protect detainees from COVID-19, under *Roberts*, deliberate indifference should apply." (ECF No. 158, PageID.5091.) In its June 28, 2020 Opinion and Order, the Court relied on Supreme Court precedent to find that *Roberts* did not mandate a deliberate indifference standard in this case. (ECF No. 127, PageID.4211.) Defendants argue that "[t]his Court is bound to follow *Roberts*, despite its disagreement with the court's construction of *Bell*." (ECF No. 158, PageID.5091 (citing *Timmreck v. United States*, 577 F.2d 372, 374, n.6 (6th Cir. 1978) ("The district courts in this circuit are, of course, bound by pertinent decisions of this Court.")).)

Setting aside the Court's disagreement with *Roberts'* interpretation of *Bell*, *Roberts* supports applying a punishment standard here. First, the *Roberts* court itself applied *Bell*: "The seminal case with respect to the constitutional due process right of pretrial detainees is *Bell v. Wolfish*, 441 U.S. 520." *Roberts*, 773 F.2d at 723. The court then applied a

deliberate indifference test, not because it was constitutionally required
but because the

> [p]laintiff [did] not claim that in failing to have in place
> procedures to reduce the likelihood of Roberts' accomplishing
> the suicide defendants intended to punish him. Rather, in
> accordance with the holding in *Bell v. Wolfish* that "pretrial
> detainees, who have not been convicted of any crimes, retain
> at least those constitutional rights that we have held are
> enjoyed by convicted prisoners," *id.* at 545, 99 S.Ct. at 1877,
> plaintiff claims that his decedent's rights under the eighth
> amendment were violated by "deliberate indifference to
> serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104,
> 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

*Id.* Like in *Villegas*, *Richmond*, and *Richko*, the court used an Eighth

Amendment shorthand, but in this instance, it did so based upon the way

in which the plaintiff framed the claim. Here, Plaintiffs *do* allege

punishment. They style their second count "Violation of Fifth

Amendment Right to Substantive Due Process: Impermissible

Punishment and Inability to Ensure Reasonable Safety For the Medically

Vulnerable." (ECF No. 97, PageID.3346.) Further, Defendants'

characterization of Plaintiffs' claim is incomplete. Defendants write that

Plaintiffs challenge "an alleged failure to implement sufficient measures

at Calhoun to protect detainees from COVID-19." (ECF No. 158,

PageID.5091.) But like in *Bell*, Plaintiffs challenge Defendants' actions. Properly framed, Plaintiffs argue that given the failure to implement sufficient measures at Calhoun to protect detainees from COVID-19, Defendants' continuation of Plaintiffs' detention is unconstitutional. This critical distinction is made clear by the realization that *Roberts* dealt with a pretrial detainee who died by suicide; the failure to implement precautionary policies was the sole object of the litigation in *Roberts* because Defendants could not take any actions with respect to the decedent after his death. As a consequence, the plaintiff in *Roberts* sought only damages. Here, unlike in *Roberts*, Plaintiffs are thankfully very much alive, and the failure to implement precautionary policies thus serves as a backdrop for Defendants' continued actions to keep Plaintiffs detained. Accordingly, Plaintiffs seek a combination of declaratory, injunctive, and habeas relief—any of which would serve to stop Defendants from acting. Thus, contrary to Defendants' claim, the application of a punishment standard in this case is consistent with *Roberts*' framing of *Bell*.

Finally, Defendants argue that the Court failed to follow Sixth Circuit precedent in applying *Youngberg* and *Kingsley*. Defendants state

that "*Youngberg* did not hold that due process claims by pretrial detainees cannot be judged by the deliberate indifference standard." (ECF No. 158, PageID.5092.) The Court agrees, which is why the Court wrote in its June 28, 2020 Opinion and Order that "the Court cannot discern a universal rule to govern all Fifth Amendment claims. . . . [T]he Court makes the limited decision that claims challenging the conditions of confinement in civil detention are governed by the *Bell* punishment test." (ECF No. 127, PageID.4210.) *Youngberg* may very well support the application of a deliberate indifference standard to other due process claims—such as those alleging the deprivation of needed medical care. Still, Defendants claim that the Sixth Circuit precedent *Danese v. Asman* weakens *Youngberg*'s applicability to this case. (ECF No. 158, PageID.5092 (citing *Danese v. Asman*, 875 F.2d 1239, 1244 (6th Cir. 1989).) In *Danese*, the Sixth Circuit held that "[a]ll *Youngberg* says is that involuntarily committed individuals have a right to safe confinement. Beyond this general statement, it offers no guidance as to the duty of an officer concerning suicide detection and prevention." 875 F.2d at 1244. But at issue in *Danese* was whether *Youngberg* clearly established an officer's duty to "detect suicidal prisoners and put them into suicide-proof

22

facilities" for purposes of a qualified immunity defense. *Id.* The language Defendants quote simply does not apply here, nor does it offer any insight into the Court's determination of whether a deliberate indifference or punishment standard applies to Plaintiffs' claims.

With respect to *Kingsley*, Defendants argue that "[n]either the Sixth Circuit, nor any other circuit, has made the broad finding that *Kingsley* implicitly eliminated the deliberate indifference standard for pretrial detainee claims altogether. Instead, contrary to this Court's interpretation, the Sixth Circuit has applied deliberate indifference to pretrial detainee claims post-Kingsley." (ECF No. 158, PageID.5094.) The Court did not conclude that *Kingsley* mandates application of a punishment standard to all due process claims brought by civil detainees. Instead, it held that "*Bell*, *Youngberg*, and *Kingsley* lead to the conclusion that *Bell*'s punishment standard applies to Plaintiffs' claims in *this* case." (ECF No. 127, PageID.4216 (emphasis added).) The proper legal standard for other claims was not and is not before the Court.

Though this is a complicated legal question, none of the precedent to which Defendants cite demonstrates that the Court's prior decision

was clear legal error. Finding no reason to amend its earlier judgment,

the Court denies Defendants' motion.

## IV.    Conclusion

For the reasons stated above, Defendants' motion is **DENIED.**

**IT IS SO ORDERED.**

Dated: August 25, 2020          s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 25, 2020.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager