# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Janet Malam,

                Petitioner-Plaintiff,

                                Case No. 20-10829

and

                                Judith E. Levy

Qaid Alhalmi, *et al.*,              United States District Judge

             Plaintiff-Intervenors,  Mag. Judge Anthony P. Patti

v.

Rebecca Adducci, *et al.*,

             Respondent-Defendants.

_____/

## ORDER REGARDING PLAINTIFFS' MOTION FOR EMERGENCY RELIEF TO RESPOND TO COVID-19 OUTBREAK [373]

On October 26, 2020, an emergency hearing was held by video conference and testimony was heard relating to the active COVID-19 outbreak at Calhoun County Correctional Facility ("CCCF"). (ECF No. 365.)

On October 27, 2020, the Court entered an order requiring Defendants to submit a response indicating the proposed plan to address

the current risks posed to the individuals presently detained at CCCF that the parties agree are at heightened risk for severe illness or death from COVID-19. (ECF No. 359, PageID.8844.) The order additionally permitted Plaintiffs to submit a motion outlining their proposed amendments to the bail application process in light of the increase in COVID-19 cases at CCCF. (*Id.*, PageID.8844-8845.) That same day, at the Court's request, Defendants submitted a memorandum indicating that several additional precautions had been, and would be, implemented to specifically address the potential for harm to the agreed-upon group of detainees at high risk. (ECF No. 360.)

On October 28, 2020, Plaintiffs filed this motion seeking emergency relief to respond to the COVID-19 outbreak at CCCF. (ECF No. 373.) On October 31, 2020, Defendants filed a response. (ECF No. 381.) On November 2, 2020, Plaintiffs were granted leave to file a reply. (ECF No. 384.)

For the reasons set forth below, the Court requires further briefing from Plaintiffs regarding whether Plaintiffs' requested additional relief, as set forth in their reply brief, would be justified under the *Bell v. Wolfish* punishment standard or under the deliberate indifference

2

standard in light of the new precautionary measures outlined in Defendants' response brief. Plaintiffs' briefing should address whether this case can be distinguished from *Cameron v. Bouchard*, 815 F. App'x 978 (6th Cir. 2020) and *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). Defendants will be permitted to respond to this supplemental briefing.

## I.   Background

The Court was alarmed by testimony provided at the October 26, 2020 hearing regarding the extent of the COVID-19 outbreak at CCCF, facility conditions, and then current precautionary measures implemented in response. Defendants reported that, over the course of a few days, CCCF had either 22 or 23 new positive cases of COVID-19 among its detainee population. (ECF No. 365, PageID.9026.) As of the date of the emergency hearing, CCCF procedures did not require or provide for detainees to wear face masks when inside the general housing units. (*Id.* at PageID.9039.) Testimony offered by Plaintiffs' correctional expert, Dr. Homer Venters, indicated that this approach is contrary to standard correctional practice, as evidenced by Dr. Venters' own

3

experience in conducting 14 inspections of state prisons and U.S. Bureau of Prison's COVID-19 response practices.[1] (ECF No. 365, PageID.9087.)

Furthermore, all detainees at CCCF were previously provided only two surgical masks upon intake that were replaced solely if the masks were "damage[d]" or "soil[ed]…with moisture." (ECF No. 365, PageID.9038.) According to Dr. Venter's testimony, the Centers for Disease Control and Prevention ("CDC") makes "a strong recommendation for people to have access [to] adequate face coverings[.]" (ECF No. 365, PageID.9087.) Dr. Venters testified that the issuance of two surgical masks at intake was not the standard of care for face coverings as set forth by the CDC, because surgical masks do not maintain their efficacy for a long period of time. (*Id*. at PageID.9087-9088.) Dr. Venters further indicated that the current correctional standard involves the issuance of "three cloth masks when [an individual] come[s] into the facility" with access to "open resupply when they need it in the housing areas." (*Id*. at PageID.9088.)

---

[1] In Dr. Venter's supplemental declaration, attached as Exhibit 8 to Plaintiffs' motion, Dr. Venters further submits that this practice is contrary to Centers for Disease Control and Prevention ("CDC") guidance which recommends detained individuals and staff alike to wear masks inside and outside housing areas. (ECF No. 373-9, PageID.9627.)

Additional areas of CCCF's COVID-19 response revealed at the emergency hearing caused serious concern. CCCF's contact-tracing practices had solely involved investigating individuals exposed to a symptomatic carrier for more than 15 minutes of constant contact. (ECF No. 365, PageID.9065, 9067-9068.) This is contrary to current CDC guidelines[2] which indicate that close contact involves 15 minutes of *cumulative* exposure. (ECF No. 373-9, PageID.9628.) As of the date of the emergency hearing, CCCF had not yet identified the source of the outbreak.[3] (ECF No. 365, PageID.9036.) In the interim since the outbreak began at CCCF, its employees who had "communicable contact" with an infected individual with pending COVID-19 tests continued to work as scheduled. (*Id.* at PageID.9042-9043.) Symptomatic detainees were only checked by medical staff once daily, although security checks were

---

[2] Specifically, the CDC guidelines define someone in close contact as "[s]omeone who was within 6 feet of an infected person for a cumulative total of 15 minutes or more over a 24-hour period[] starting from 2 days before illness onset (or, for asymptomatic patients, 2 days prior to test specimen collection) until the time the patient is isolated." *Contact Tracing for COVID-19 Appendices*, Ctrs for Disease Control & Prevention (Oct. 21, 2020), *https://www.cdc.gov/coronavirus/2019-ncov/php/contact-tracing/contact-tracing-plan/appendix.html#contact* [https://perma.cc/3ZKM-FY5F]. The guidelines further indicate that "15 cumulative minutes of exposure at a distance of 6 feet or less can be used as an operational definition for contact investigation." *Id.*

[3] Indeed, based on the information presented to the Court thus far, CCCF has still not identified the source of the outbreak.

5

conducted every 30 minutes. (*Id.* at PageID.9045-9046.) Chief Deputy and Jail Administrator for Calhoun County, Randy Hazel, admitted that despite the CCCF administration's efforts to engage in video surveillance spot checks, job counseling, and verbal warnings, it had been a "struggle" to manage consistent enforcement of proper mask wearing among CCCF staff. (*Id.* at PageID.9039.)

Testimony illustrating the discrepancy between CCCF and Defendant regarding the identification of medically vulnerable detainees during the pendency of this case was particularly distressing. The Court certified a habeas litigation group consisting of "all noncitizens who are detained in ICE custody in the [CCCF], and who have one or more medical risk factors placing them at heightened risk of severe illness or death if exposed to COVID-19." (ECF No. 162, PageID.5146-5147.) Since certification of the habeas litigation group, Defendants have identified dozens of individuals with medical risk factors that they have ultimately conceded to be habeas litigation group members and identified as such to the Court. (ECF Nos. 203, 310.)

As of October 21, 2020, Defendants provided a list of 15 individuals currently detained at Calhoun who were conceded to be members of the

habeas litigation group. (ECF No. 365, PageID.9078-9079.) Yet, when questioned on October 26, 2020 regarding the existence of current detainees known to be at high risk from COVID-19 at CCCF, Dr. Paul Troost testified that there was merely *one* detainee identified as being medically vulnerable by CCCF's medical team (ECF No. 365, PageID.9064, 9068.) It appears that the discrepancy resulted from a policy put forth by CCCF's medical staff in which detainees were only classified as high-risk if: (1) the detainee had an underlying medical condition identified by the CDC as a risk factor for severe illness from COVID-19; *and* (2) that underlying medical condition was "uncontrolled." (*Id.* at PageID.9080-9081.) Under that rationale, individuals with underlying conditions recognized as risk factors by the CDC (e.g.., diabetes, hypertension) that were well-controlled at CCCF were considered to have a risk "not higher than other people" without those conditions. (*Id.*) Based on Dr. Venters' testimony and the CDC guidelines outlining high risk conditions,[4] an individual is at an increased risk of severe illness from COVID-19 if they *have* a certain medical condition.

---

[4] *People with Certain Medical Conditions*, Ctrs for Disease Control & Prevention (October 16, 2020), *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* [https://perma.cc/J6QF-GAKF].

(*Id.* at PageID.9086.) As Dr. Venters explained, "[T]he CDC is quite clear in saying that having these conditions puts you at increased risk as compared to the other people who don't have them." (*Id.*) As a result, at least 14 medically vulnerable individuals who Defendants previously acknowledged as being high-risk were not given the additional precautions to protect them from exposure to COVID-19 during the crucial early days of this outbreak.

Following the testimony presented at the October 26, 2020 emergency hearing, the Court required Defendants to consider the adoption of new protocols to address the risks posed by the recent outbreak, and particularly with regard to the detainees whom the parties agreed are at heightened risk for severe illness or death from COVID-19. (ECF No. 359, PageID.8844; ECF No. 365, PageID.9090, 9092.) In their October 27, 2020 memorandum, Defendants conveyed that CCCF would immediately make additional changes to their overall COVID-19 management strategy and to the protocols for high-risk detainees in response to the outbreak. CCCF staff committed to recognizing the members of the habeas litigation group (including both those Defendants have conceded as members of the habeas litigation group and those that

8

the Court has determined to be members) as high risk, and consequently, to provide these individuals the same precautionary measures given to the narrower cohort of individuals that CCCF internally identify as high risk through their facility policy. (ECF No. 360, PageID.8847.) Defendants pledged to include CCCF staff in the future weekly reporting to Plaintiffs of detainees ICE has identified as high risk. (*Id*.)

Defendants have also committed to making changes to CCCF's practices on-the-ground with regard to high-risk detainees. To the extent possible, high-risk detainees will be detained in a separate designated housing unit that provides each detainee their own cell, or alternatively, in a single cell in another unit. (*Id*.) All high-risk detainees will be tested every two weeks, given two new surgical masks immediately, and offered new masks daily. (*Id*.) Additionally, in an October 28, 2020 e-mail, Defendants indicated that CCCF would undergo mass testing of the entire facility. E-mail from Jennifer L. Newby, Assistant U.S. Att'y, to Cassandra J. Thomson, Law Clerk to Judge Judith E. Levy (October 28, 2020, 16:25 EST) (on file with the Court).

Defendants' October 31, 2020 response to Plaintiffs' emergency motion outlines their commitment to implementing more public-health

minded changes to their COVID-19 management plan. Defendants allege that they will voluntarily institute the following practices:

1. All new intakes will be issued a surgical mask before entering quarantine and will have their mask replaced daily. Both ICE detainees and criminal inmates will be issued three new surgical masks at the end of quarantine and will be provided a new mask daily. Additionally, all current inmates and detainees will be issued a surgical mask daily until cloth masks are obtained. Once cloth masks are available, they will be given to both inmates and detainees. These cloth masks will be laundered twice a week, in the evenings. (ECF No. 381, PageID.10192);

2. New inmates and detainees will be tested at entry and at the end of quarantine (*Id.*);

3. CCCF staff will be tested every 14 days using a rapid test, and those testing positive for COVID-19 will remain off duty until confirmation of a negative result using a polymerase chain reaction ("PCR") test (*Id.*);

4. CCCF will provide detainees and inmates a new bar of soap that will be replenished upon request (*Id.* at PageID.10193);

5. CCCF will attempt to obtain hand sanitizer stations for the larger housing units (*Id.*);

6. CCCF will implement social distancing measures during meals by setting up a staggering meal service, in which one half of the population will eat at the socially-distanced tables in the common areas while the other half eats in their cells. The two groups will alternate at each meal service. (*Id.*);

7. In addition to the precautionary measures identified in Defendants' October 27, 2020 memorandum, high-risk detainees will be monitored for symptoms daily by medical staff and provided two new surgical masks daily. (*Id.*)

As of November 2, 2020, CCCF has had a total of 53 positive cases of COVID-19 among detainees and inmates, and 5 positive cases among staff and vendors. E-mail from Jennifer L. Newby, Assistant U.S. Att'y, to Cassandra J. Thomson, Law Clerk to Judge Judith E. Levy (November 2, 2020, 16:27 EST) (on file with the Court).

## II. Legal Standard

The Court's earlier decisions in this case relied on application of the deliberate indifference standard. (*See* ECF No. 23, PageID.563 (applying

11

deliberate indifference standard); ECF No. 29, PageID.641 (applying deliberate indifference standard but questioning need for Plaintiffs to show subjective component); ECF No. 68, PageID.1932 (applying deliberate indifference standard but ordering supplemental briefing on whether punishment standard applies).)

On June 28, 2020, the Court held that the *Bell v. Wolfish* punishment standard, and not the deliberate indifference standard, applied to Plaintiffs' conditions of confinement Fifth Amendment Due Process Claim. (ECF No. 127, PageID.4211, 4216, 4222.) In an August 25, 2020 order, the Court rejected Defendants' motion to amend the Court's June 28, 2020 judgment pursuant to Federal Rules of Civil Procedure 59(e), finding that "the Sixth Circuit's recent decision in *Cameron v. Bouchard* is neither at odds with the Court's opinion nor binding precedent and Sixth Circuit caselaw does not preclude the Court's holding[.]" (ECF No. 212, PageID.6126.) This August 25, 2020 order is now on appeal. (*See* ECF Nos. 212, 308.) Defendants have not appealed the Court's application of the deliberate indifference standard of review. Accordingly, the Court will evaluate Plaintiffs' motion for

emergency relief under both the *Bell v. Wolfish* punishment standard and the deliberate indifference framework.

Defendants committed to instituting a significant number of voluntary precautionary measures since submission of Plaintiffs' motion for emergency relief. These are the very measures that Plaintiffs have been seeking since the beginning of this litigation. Accordingly, the Court will order Plaintiffs to submit supplemental briefing regarding whether, in light of the new precautionary measures outlined in Defendants' response brief, Plaintiffs' requested additional relief would be justified under the *Bell v. Wolfish* punishment standard or under the deliberate indifference standard.

Furthermore, the bail process set forth in this case is premised on the Court's "inherent authority" to grant a habeas petitioner release on bail pending adjudication of the petition's merits. *Nash v. Eberlin*, 437 F.3d 519, 526 n.10 (6th Cir. 2006). "The district court may release petitioners on bail if there is a 'substantial claim of law' and 'the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Id.* (citing *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993)).

13

On August 4, 2020, the Court found that "[t]he habeas litigation group makes a substantial claim of law" because group members have consistently shown a likelihood of success on the merits. (ECF No. 168, PageID.5294.) Additionally, the Court found that "the COVID-19 pandemic constitutes an exceptional circumstance deserving special treatment in the interests of justice." (*Id.* at PageID.5295.)

The Court continues to find that COVID-19 presents special circumstances making the bail applications exceptional. However, the Court recognizes that its initial August 4, 2020 finding that habeas litigation group members raised substantial claims of law was based on the determination that habeas litigation group members "remain[ed] in the same conditions that the Court has repeatedly found are likely to violate these members' Fifth Amendment rights." (*Id.*) The Court continued to make the finding that group members raised substantial claims of law in each of the subsequent bail orders entered thus far in the proceedings based upon the known conditions at CCCF at the time each order was entered. (*See* ECF Nos. 210, 242, 276, 290, 300, 305, 330, 346.) Yet the combination of circumstances now present before the Court— namely, an outbreak at CCCF, and Defendants' stated intention to

proceed with the adoption of additional precautionary measures as set forth above—suggests that the habeas litigation group members are presently subject to different conditions than those preceding October 31, 2020. Accordingly, there remains an open question of whether the habeas litigation group continues to raise substantial claims of law in light of the new precautionary measures and conditions at CCCF, including the presently-active COVID-19 outbreak.

### III.   Emergency Relief

As indicated previously, Defendants have voluntarily committed to taking additional precautions in light of the current COVID-19 outbreak at CCCF. (ECF No. 360, PageID.8847; ECF No. 381, PageID.10192-10193.) If Plaintiffs can demonstrate that Defendants are deliberately indifferent even after implementation of these additional precautions at CCCF, the Court is inclined to grant additional relief set forth in Plaintiffs' emergency motion, including but not limited to: (1) expediting the bail process; (2) permitting Dr. Venters' review of detainees' medical records and sick call records from October 2020; (3) an order barring retaliation;

and (4) setting up a system by which Defendants proactively identify medically vulnerable individuals.

Crucially, the Court's determination regarding Plaintiffs' emergency motion will be predicated on the assumption that Defendants will indeed start and continue implementing the additional precautions set forth in their October 27, 2020 memorandum and October 31, 2020 response. Additional emergency relief may be warranted under either the deliberate indifference or *Bell v. Wolfish* unconstitutional punishment standard in the event Defendants fail to maintain these additional precautions in the coming weeks.

## IV.   Conclusion

For the reasons stated above, Plaintiffs are ordered to submit a response regarding whether, in light of the new precautionary measures outlined in Defendants' response brief, Plaintiffs' requested additional relief would be justified under the *Bell v. Wolfish* punishment standard or any version of the deliberate indifference standard. Plaintiffs' briefing will address whether this case can be distinguished from *Cameron v. Bouchard* 815 F. App'x

978 (6th Cir. 2020) and *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). Defendants will be permitted to respond to this supplemental briefing. Plaintiffs' supplemental briefing is to be submitted by no later than 11:59pm on Thursday, November 5, 2020. Defendants' response is to be submitted by no later than 11:59pm on Monday, November 9, 2020.

**IT IS SO ORDERED.**

Dated: November 2, 2020               s/Judith E. Levy
Ann Arbor, Michigan                   JUDITH E. LEVY
                                      United States District Judge

17