## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Janet Malam,

        Petitioner-Plaintiff,

and

Qaid Alhalmi, *et al.*,

        Plaintiff-Intervenors,

v.

Rebecca Adducci, *et al.*,

        Respondent-Defendants.

Case No. 20-10829

Judith E. Levy
United States District Judge

Mag. Judge Anthony P. Patti

_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR INCLUSION OF GISLASON IN THE HABEAS LITIGATION GROUP [255] AND REQUIRING SUPPLEMENTAL BRIEFING REGARDING PLAINTIFFS' MOTION FOR INCLUSION OF SKRIPKOV IN THE HABEAS LITIGATION GROUP [233]**

On September 3, 2020 and September 9, 2020, Plaintiffs filed motions for inclusion of Andrei Skripkov and Gisli Gislason in the habeas litigation group. (ECF Nos. 233, 255.) On September 15, 2020, Defendants submitted responses. (ECF Nos. 270, 275.) On September 22,

2020 and November 13, 2020, Plaintiffs were granted leave to file replies. (ECF Nos. 289, 294, 296, 411.)

Additionally, on October 2, 2020, Defendants filed a notice of appeal regarding several orders entered during the pendency of this case, including one of the Court's orders outlining the process in place for determining habeas litigation group membership (i.e., ECF No. 177). (ECF No. 308.) On October 6, 2020, the Court requested briefing from the parties regarding, in part, whether the Court retained jurisdiction over the pending motions for inclusion in the habeas litigation group following Defendants' notice of appeal. E-mail from William Barkholz, Case Manager to Judge Judith E. Levy, to Jennifer L. Newby, Assistant U.S. Att'y (October 6, 2020, 15:13 EST) (on file with the Court). The parties submitted briefing on October 9, 2020. (ECF Nos. 323, 324.)

Upon consideration of the supplemental briefing, the Court has determined that it retains jurisdiction over the pending motions for inclusion and any future motions for inclusion filed pursuant to the process set forth by the Court in ECF Nos. 167, 177, and 299. Additionally, after reviewing the motions and briefing, the Court grants Plaintiffs' motion for inclusion of Gislason in the habeas litigation group.

2

The Court requests supplemental briefing regarding the motion for inclusion of Skripkov in the habeas litigation group.

## I. Jurisdiction Following the Notice of Appeal

On July 31, 2020, the Court certified "a habeas litigation group of all noncitizens who are detained in ICE custody in the Calhoun County Correctional Center ["CCCF"], and who have one or more medical risk factors placing them at heightened risk of severe illness or death if exposed to COVID-19." (ECF No. 162, PageID.5146–5147.) The Court's order clarified that it would not limit the risk factors to be used to determine an individual's eligibility in the habeas litigation group:

> Plaintiffs propose a set of underlying conditions that place an individual at heightened risk of severe illness or death from COVID-19. (ECF No. 112, PageID.3813.) At the certification stage, the Court declines to enumerate a comprehensive list of risk factors. As the Court's earlier opinions granting preliminary injunctive relief demonstrate, whether an individual is at heightened risk of a dire outcome requires individualized analysis. Accordingly, upon certification of the habeas class, the Court will require briefing to determine habeas litigation group membership.

(*Id.* at PageID.5135.) The group definition was subsequently amended on August 19, 2020, to be "defined as of all noncitizens who are detained in ICE custody in the [CCCF] or who have been released pursuant to a preliminary injunction or bail order issued by the undersigned, and who

3

have one or more medical risk factors placing them at heightened risk of severe illness or death if exposed to COVID-19." (ECF No. 191, PageID.5576.) The Court also established a process for determining habeas litigation group membership in ECF No. 167, the mechanics of which were later revised in ECF Nos. 177 and 299. In setting forth the process, the Court declined to appoint a Rule 706 expert and outlined a briefing procedure, noting that "[a]lthough the undersigned is neither a mathematician nor a medical expert, the Court has been able to determine whether fourteen named Plaintiffs are at heightened risk of a dire outcome from COVID-19 with the assistance of the parties' briefing." (ECF No. 167, PageID.5288.)

ECF no. 177—one of the orders on interlocutory appeal—amended ECF No. 167 and outlined the process now in place for determining habeas litigation group membership. Defendants were to file a list of conditions they agreed were sufficient to demonstrate that an individual was at increased risk for severe illness from COVID-19. (ECF No. 177, PageID.5315.) For individuals with conditions not on the list created by Defendants, the process is as set forth below:

> For Plaintiffs without conditions on Defendants' August 11, 2020 list, Plaintiffs must email Defendants prior to submitting a bail

4

application. If Defendants stipulate to a Plaintiff's heightened risk, Plaintiffs may submit a bail application for that Plaintiff. If Defendants do not so stipulate, Defendants must produce [CCCF] medical records for that Plaintiff within three business days of Plaintiffs' email and make reasonable efforts to obtain other ICE medical records, which they must produce upon procurement. For Plaintiffs for whom criminal history has not yet been produced, Defendants must also produce criminal history records within three days. Plaintiffs may then move at any point for membership in the habeas litigation group. Defendants may respond within no more than five business days. In individual cases, Defendants may move for an extension of the deadline to file a response. The Court will issue an order for reply briefing if necessary. If the Court finds a Plaintiff to be a member of a habeas litigation group, that Plaintiff may submit a bail application.

(*Id.* at PageID.5316–5317.) The question now before the Court is whether Defendants' filing of a notice of appeal divested the Court of jurisdiction over the motions for inclusion pending at the time Defendants' notice of appeal was filed, as well as jurisdiction over potential future motions for inclusion in the habeas litigation group.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). "This transfer of power, however, does not effect a total divestiture of jurisdiction from the district court: it retains jurisdiction to

enforce its judgment, to proceed with matters that will aid the appellate process, and to adjudicate matters unrelated to the issues on appeal." *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 626 (6th Cir. 2013).

Plaintiffs argue that the Court retains jurisdiction over the motions for inclusion because these motions "concern matters unrelated to those on appeal" and thus "fall squarely within these well-established exceptions" to the Court's divesture of jurisdiction on appeal. (ECF No. 324, PageID.8178.) Plaintiffs acknowledge that one of the orders on appeal (i.e., ECF No. 177) is "one of the orders that set out the mechanics for determining membership in the habeas litigation group." (*Id.*) Nevertheless, Plaintiffs characterize the orders on appeal as limited to those involving bail, including "orders establishing the bail process, granting bail to specific individuals, and denying a motion to amend an order granting a preliminary injunction ordering release of specific individuals." (*Id.* at PageID.8177.) Plaintiffs correctly note that "any determination regarding a class member's heightened risk does not implicate the orders granting bail or injunctive relief to other class members. Nor does such a determination implicate the propriety of the bail process." *Id.* at PageID.8179. However, although the orders on

6

appeal *primarily* involve the bail process and individual determinations of bail or injunctive relief, they do not *exclusively* relate to these issues. Because ECF No. 177 sets forth the procedure by which the Court adjudicates whether a particular class member is also a member of the habeas litigation group, the motions for inclusion are not completely unrelated to the issues on appeal.

In contrast, Defendants argue that resolution of motions seeking inclusion in the habeas litigation group would expand the scope of the orders on appeal and, thus, the Court is divested of jurisdiction to adjudicate these motions. (ECF No. 323, PageID.8170–8171.) Specifically, Defendants contend that motions for inclusion "require the Court to rule on whether additional medical conditions not on Defendants' list place the detainee in the subclass," and therefore "expand the scope of those permitted to file bail applications under the orders on appeal[.]" (*Id.* at PageID.8171.) Defendants analogize to the Sixth Circuit's decision in *City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 394 (6th Cir. 2007), for their contention that adjudication of the motions for inclusion would result in the Court similarly "decid[ing]…legal issues that it had not decided

7

previously, and expand[ing] significantly the scope of its previous order on appeal." *Cookeville*, 484 F.3d at 394. (*Id.* at PageID.8171–8172.)

But *Cookeville* is quite different from what we have here. The original two orders entered by the district court in *Cookeville* "merely decided the amount Cookeville was required to pay [the electric company] in reintegration costs for annexing areas where [the electric company] provided electric service" and declined to determine the means and timing of Cookeville's payment to the electric company. *Cookeville*, 484 F.3d at 394–95. These two orders were appealed. *Id.* While the appeal was pending, the electric company sought an injunction to prevent Cookeville from continuing to construct facilities in the annexed areas at issue. *Id.* In finding the district court in *Cookeville* exceeded its jurisdiction by issuing this injunction, the Sixth Circuit determined that the injunction constituted expansion of scope because it decided two *legal issues* not part of the previous orders on appeal. *Id.* at 394. Specifically, the district court had issued the injunction on the basis of its determination regarding: (1) whether the electric company enjoyed exclusive service rights in the annexed areas, which was not at issue in the two orders on appeal and thus could not serve as a basis for granting

8

relief under the injunction; and (2) the timing of Cookeville's payments to the electric company under the judgment, which the district court had "left open" by explicitly declining to determine the issue in its earlier orders. *Id.* at 394–95.

Here, adjudication of the pending motions for inclusion constitutes enforcement, and not expansion, of the Court's order on appeal. Defendants' argument that the legal issue of what conditions place a detainee in the habeas litigation group was left open is without merit. *Cookeville* clearly indicated that a legal issue is left open in an order on appeal when the district court declined or failed to address that legal issue in that appealed order. *Id.* The Court did not decline to address the issue of what conditions were sufficient to establish habeas litigation group membership or reserve this question for a future order. Throughout the pendency of this case, the Court has repeatedly and expressly declined to enumerate a comprehensive list of risk factors for determining whether an individual is at heightened risk of a dire outcome in favor of instead undergoing individualized analysis. (ECF No. 162, PageID.5135.) Furthermore, in setting forth the process for adjudicating habeas litigation group membership, the Court explicitly

9

found that it was able to determine whether individuals seeking group membership were "at heightened risk of a dire outcome from COVID-19 with the assistance of the parties' briefing." (ECF No. 167, PageID.5288.) While ECF No. 177 amended the procedure established in ECF No. 167, this order did not alter the basic underlying legal determination of how to establish group membership—adjudication by the Court based on a holistic, individualized determination of the detainees' medical records and the parties' briefing—and instead solely altered the guiding procedural mechanisms in place.

Accordingly, the Court's previous orders did not leave open the legal question of which conditions are necessary to establish membership in the habeas litigation group; rather, the Court rejected this method of adjudication and chose to proceed through adjudicating by holistic analysis. Defendants are correct that the Court does implicitly "rule on which additional medical conditions are sufficient to permit a detainee to file a bail application under the order on appeal" when it undergoes the individualized analysis contemplated in ECF No. 177. (ECF No. 323, PageID.8173.) However, these individualized adjudications do not expand or alter the scope of the legal determinations made by the Court

10

in ECF No. 177. And, unlike the district court's injunction issued in *Cookeville*, the relief granted with regard to the motions for inclusion (i.e., determination of membership within the habeas litigation group by the Court) was expressly contemplated by ECF No. 177.

Defendants also contend that the Court is divested of jurisdiction to adjudicate motions for inclusion in the habeas litigation group "because it would have the effect of expanding the scope of detainees who can seek bail under the orders on appeal." (ECF No. 323, PageID.8173.) This argument is similarly without merit. A district court expands the scope of its order on appeal when it determines previously-undecided *legal issues*; while adjudicating the habeas litigation group membership by extension expands the set of detainees eligible for bail, this is not the improper expansion of legal issues contemplated by *Cookeville* which would deprive the Court of jurisdiction here.

The Court "has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (quoting *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 299 n.2 (5th Cir. 1984)). Resolution of motions for inclusion in the habeas litigation group constitutes

11

enforcement of the Court's prior orders certifying the class, defining the habeas litigation group, and outlining the individualized process for determination of membership, and does not expand the scope of the orders on appeal. Accordingly, the Court retains jurisdiction over the pending motions for inclusion and any future motions for inclusion filed pursuant to the process set forth in ECF Nos. 167, 177, and 299. Unless Defendants obtain a stay of the order establishing the process for adjudicating the motions for inclusion, the Court retains jurisdiction to enforce its judgment.

## II.  Individual Motions for Inclusion

The Court makes the following findings with respect to the individual motions for inclusion in the habeas litigation group:

*Gisli Gislason* (ECF No. 255)

Plaintiffs argue that Gislason[1] is at heightened risk for serious illness or death from COVID-19 because of his age (i.e., 51 years old), possible liver disease resulting from alcohol use disorder, and body mass index of 27. (ECF No. 255, PageID.7017.) While Defendants initially

---

[1] The Court recognizes that Gislason was diagnosed with COVID-19 on October 20, 2020, after the submission of the briefing related to his motion for inclusion in the habeas litigation group. (ECF No. 401-1, PageID.10741-10742.)

12

challenged the lack of medical records evidencing Gislason's elevated liver enzymes and the suggestion of liver disease (ECF No. 275, PageID.7178-7179), Plaintiffs reply includes medical records which identified: (1) multiple elevated liver enzyme readings over several years demonstrating that Gislason has suffered from transaminitis; as well as (2) recent readings that were emblematic of alcoholic hepatitis, a precursor to cirrhosis. (ECF No. 296-1, PageID.7515.) Defendants also allege that Gislason is healthier in detention because he is no longer able to drink alcohol while detained. (ECF No. 275, PageID.7179.) Plaintiffs reply that alcohol's immunosuppressing qualities endure for lengthy periods of time following an individual's cessation of drinking, such that Gislason's immune system likely remains compromised while detained. (ECF No. 296-1, PageID.7516.)

Defendants also challenge Plaintiffs' contention that Gislason is at heightened risk as a result of his age, contending age should be deemed a proxy for health rather than an independent medical condition illustrating heightened risk. (*Id.* at PageID.7182.) Plaintiffs reply that their expert, Dr. Charlotte Roy, has concluded that Gislason is at higher

13

risk on the basis of his combination of medical conditions, including his age. (ECF No. 296-1, PageID.7513.)

The Court notes that in the interim since Gislason's motion for inclusion was filed, the Centers for Disease Control and Prevention ("CDC") identified having a BMI greater than 25 as a risk factor that might put an individual at an increased risk for severe illness resulting from COVID-19. *People with Certain Medical Conditions*, Ctrs for Disease Control & Prevention (November 2, 2020), *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* [https://perma.cc/A4L7-Q5WU]. The CDC further indicates that liver disease, including alcohol-related liver disease, might increase the risk of severe illness from COVID-19. *Id.*

After reviewing the motion and briefing, the Court finds Gislason is at heightened risk of severe illness or death if exposed to COVID-19. Accordingly, Gislason's motion for inclusion in the habeas litigation group is granted.

*Andrei Skripkov* (ECF No. 233)

Plaintiffs argue that Skripkov is at heightened risk for serious illness or death from COVID-19 because of his alleged hypertension, coronary atherosclerosis, and age (i.e., 49 years old). (ECF No. 233, PageID.6613-6615.)

The parties dispute whether Skripkov currently has hypertension and, if so, what severity. Plaintiffs rely on the findings of Dr. Katherine McKenzie, a medical expert and faculty member at Yale School of Medicine, that Skripkov can be classified as having Stage II hypertension. (*Id.* at PageID.6614.) Plaintiffs note that Skripkov was diagnosed with hypertension while he lived in Russia and was taking medication for this condition before his detention. (*Id.*) Plaintiffs further highlight a blood pressure reading from August 17, 2020, as evidence that Skripkov continues to suffer from hypertension that is untreated at CCCF. (*Id.*)

In support of their contention that Skripkov does not have hypertension, Defendants note he has been monitored in ICE custody over two separate periods (in December 2019 and August 2020) as well as during his criminal confinement before ICE detainment, and was found by medical staff during all of these periods not to require treatment

15

for hypertension. (ECF No. 270, PageID.7150.) Based on the blood pressure readings taken during the past year at CCCF as of the time Defendants' response was submitted, Skripkov's blood pressure averaged below the cutoff for Stage II hypertension. (*Id.* at PageID.7150-7151.) Defendants claim Plaintiffs' expert is relying on only one blood pressure reading for the diagnosis of hypertension, rather than consistently elevated readings. (*Id.* at PageID.7149.)

Plaintiffs reply that blood pressure readings from Skripkov's medical records at CCCF indicate allegedly consistent elevated readings with systolic blood pressure above 130 (which support a minimum finding of Stage I hypertension) from February 2020, March 2020, and May 2020. (ECF No. 294, PageID.7487.) Plaintiffs note that Skripkov's three most recent systolic blood pressure readings at the time of filing—from May 2020, June 2020, and August 2020—average out to a systolic blood pressure reading of 140, which meets the threshold for Stage II hypertension. (*Id.*) Plaintiffs also highlight the lack of evidence regarding Skripkov's blood pressure readings from May 2020 until August 2020, as well as the absence of blood pressure readings taken during the fourteen

16

days in August 2020 in which Skripkov was allegedly being monitored for high blood pressure while at CCCF. (*Id.*)

Additionally, Defendants note that Plaintiffs' expert, Dr. McKenzie, admits that Skripkov's degree of atherosclerosis does not result in a significant obstruction of blood flow. (ECF No. 270, PageID.7152.) As a result, Defendants argue, Skripkov does not have a serious heart condition, and there is no evidence that his level of atherosclerosis puts him at a high-risk of harm from COVID-19. (*Id.*) Defendants also again challenge Plaintiffs' contention that age is an independent medical condition illustrating heightened risk as opposed to a proxy. (*Id.* at PageID.7153.) Plaintiffs reply that Skripkov's coronary atherosclerosis contributes to his overall risk of cardiac disease, a known risk factor for severe risk of illness or death from COVID-19. (ECF No. 294, PageID.7489.) Plaintiffs additionally urge the Court to consider Skripkov's alleged hypertension, coronary atherosclerosis, and advancing age when considering whether he is medically vulnerable to serious illness or death from COVID-19. (*Id.* at PageID.7490.)

The Court will require additional information regarding Skripkov's blood pressure. Accordingly, Plaintiffs are to submit medical records which identify Skripkov's three most recent blood pressure readings.

### III. Conclusion

For the reasons stated above, the Court grants Plaintiffs' motion for inclusion of Gislason in the habeas litigation group. The Court will require supplemental documentation from Defendants indicating Skripkov's three most recent blood pressure readings. Documentation is due by November 20, 2020.

**IT IS SO ORDERED.**

Dated: November 18, 2020　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 18, 2020.

　　　　　　　　　　　　　　　s/William Barkholz
　　　　　　　　　　　　　　　WILLIAM BARKHOLZ
　　　　　　　　　　　　　　　Case Manager