## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Janet Malam,

              Petitioner-Plaintiff,

                                 Case No. 20-10829

and

                                 Judith E. Levy

Qaid Alhalmi, *et al.*,             United States District Judge

             Plaintiff-Intervenors,  Mag. Judge Anthony P. Patti

v.

Rebecca Adducci, *et al.*,

              Respondent-Defendants.

_____/

## ELEVENTH ORDER ON BAIL
## [420, 421, 428]

Between November 20, 2020 and November 25, 2020, Plaintiffs submitted bail applications for habeas litigation group members Oscar Xirum Sanchez, Andrés Tomas Álvarez Hernandez, and Ariel Pineda-Rivera. (ECF Nos. 420, 421, 428.) Between November 24, 2020 and December 1, 2020, Defendants filed responses. (ECF Nos. 423, 424, 436.) Between November 30, 2020 and December 3, 2020, Plaintiffs filed replies. (ECF Nos. 433, 434, 441.) Additionally, Plaintiffs submitted

supplemental briefing regarding Hernandez' bail application on December 7, 2020. (ECF No. 448.)

After reviewing the application and briefing, the Court grants bail for group members Xirum Sanchez, Hernandez, and Pineda-Rivera.

## I.    Eligibility for Bail

The Sixth Circuit has recognized the district court's "inherent authority" to grant a habeas petitioner release on bail pending adjudication of the petition's merits. *Nash v. Eberlin*, 437 F.3d 519, 526 n.10 (6th Cir. 2006). "The district court may release petitioners on bail if there is a 'substantial claim of law' and the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Id.* (citing *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993)).

On November 30, 2020, the Court found that "[t]he habeas litigation group members continue to raise substantial claims of law" because group members "continue to show a likelihood of success on the merits of their due process claim challenging their continued detention at CCCF during the COVID-19 pandemic." (ECF No. 430, PageID.11345, 11348.) Additionally, the Court found that "COVID-19 presents special

2

circumstances making the bail applications exceptional." (*Id.* at PageID.5295.) Over approximately the last month, Calhoun County Correctional Facility ("CCCF") has been in a COVID-19 outbreak. (*See* ECF Nos. 365, 388.) As of December 4, 2020, a total of 64 detainees and inmates, as well as six staff members, have tested positive for COVID-19. (*See* ECF No. 450, PageID.11576 (outlining the progression of additional positive cases at CCCF reported since November 2, 2020).)[1]

---

[1] Although the Court repeatedly stated that it would no longer address Defendants' argument that habeas litigation group members will be safer in CCCF than upon release (ECF No. 210, PageID.6076–6076; ECF No. 276, PageID.7186–7189; ECF No. 346, PageID.8622–8630), Defendants continue to raise variations of this argument. (*See* ECF No. 436, PageID.11415 (arguing that the release plan proposed does not reduce the risk of a habeas litigation group member's exposure to COVID-19 as compared to the risk at CCCF because the positivity rate is higher in Miami-Dade County, Florida than in Calhoun County, Michigan); ECF No. 423, PageID.11125 (same with respect to the rates in Jefferson County, Kentucky).) As set forth previously, comparisons of the positivity rates between CCCF and the county in which a group member seeks to be released "obscure the unique risks posed to group members in mandatory congregate living." (ECF No. 346, PageID.8623.) Comparisons between Calhoun County, Michigan (i.e., the county in which CCCF resides) and the county of proposed release is even more unavailing for the same reason. "Detained group members . . . do not share the same risk of being infected with COVID-19 as that of a member of the general population." (*Id.* at PageID.8629); (*see also id.*) ("The likelihood of exposure to COVID-19 depends on much more than the number of individuals in the surrounding environment who are infected: one's ability to isolate from infected persons and one's capacity to employ precautionary measures are crucial variables that affect the probability of contracting COVID-19.").) While Calhoun County's positivity rate may shed light on the likelihood that CCCF staff—who may be Calhoun County residents themselves or otherwise are in close proximity to individuals who are Calhoun County residents—will serve as a source for COVID-19 spread within CCCF (*Id.* at PageID.8628–8629), that rate does not reflect the degree of spread in the distinct circumstances of CCCF as a congregate living environment.

The Court continues to find that these group members raise substantial claims of law and that COVID-19 presents special circumstances making the bail applications exceptional. The Court will continue to evaluate individual bail applications conditionally while awaiting the completion of an expert inspection of CCCF.

## II.   Individual Bail Applications

The Court makes the following findings with respect to individual bail applications:

*Oscar Xirum Sanchez* (ECF No. 420)

Plaintiffs allege that Xirum Sanchez[2] has lived in the United States for approximately 18 years and has no violent criminal history. (ECF No. 420, PageID.11129.) Plaintiffs recognize that Xirum Sanchez has had two convictions for operating while intoxicated ("OWI") from September of 2007 and November of 2020, in addition to misdemeanor convictions for driving with a suspended license and no proof of insurance from

---

[2] Xirum Sanchez contracted COVID-19 while detained at CCCF, which allegedly had "an aggressive impact on his lungs." (ECF No. 420, PageID.11123.) According to the Centers for Disease Control and Prevention ("CDC"), individuals who have recovered from COVID-19 do not have absolute immunity to a reinfection. *See Reinfection with COVID-19*, Ctrs for Disease Control and Prevention (Oct. 27, 2020), *https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html* [https://perma.cc/Z8CH-T28T]. ("Cases of reinfection with COVID-19 have been reported, but remain rare.")

September of 2008. (*Id.* at PageID.11126–11127.) Additionally, Plaintiffs allege that Xirum Sanchez is seeking cancellation of removal or voluntary departure through the assistance of counsel in his immigration proceedings. (*Id.* at PageID.11125.) Plaintiffs further note that Xirum Sanchez may be eligible to apply for an immigrant visa as a result of his approved application for provisional waiver of inadmissibility. (*Id.*) Xirum Sanchez will reside with his wife, his children, and his parent-in-laws in Wyoming, Michigan. (*Id.* at PageID.11128.)

Defendants argue that Xirum Sanchez poses a danger to the community because an Immigration Judge denied bond to Xirum Sanchez after finding him to be a danger based on his high blood alcohol content at the time of his 2020 arrest for OWI. (ECF No. 424, PageID.11236.) Defendants note that Xirum Sanchez has not undergone any substance abuse treatment since his recent OWI conviction. (*Id.*) Defendants also contend that Xirum Sanchez is a flight risk, highlighting Xirum Sanchez' conduct in earlier legal proceedings (i.e., his failure to appear for probation visits on three occasions, failure to pay required fines, failure to complete mandated community service and counseling). (*Id.*)

5

Plaintiffs reply that Xirum Sanchez has since recognized his alcohol addiction and has created a structured plan in response, including arrangements to begin counseling and substance abuse treatment as well as to abstain from driving or alcohol. (ECF No. 434, PageID.11394.) Additionally, Plaintiffs argue that the register of actions cited by Defendants pertain to his 2007 conviction and occurred before Xirum Sanchez met his wife and starting his family. (*Id.*) Plaintiffs further note that there are no outstanding requirements from that 2007 case. (*Id.*)

The Court finds that Xirum Sanchez does not pose a flight risk in light of the fact that his family resides in Michigan and he has motivation to stay in the jurisdiction to continue to pursue relief from removal. The Court also finds that Xirum Sanchez is not a danger to the community given his proposed release plan. However, the Court will release Xirum Sanchez on bail only with the condition that he abstain from consuming alcohol during the pendency of his release. Accordingly, Xirum Sanchez' application for bail is granted.

### *Andrés Tomas Álvarez Hernandez* (ECF No. 421)

Plaintiffs allege that Hernandez has resided in the United States for approximately 19 years. (ECF No. 421, PageID.11161, 11168.)

Although Plaintiffs indicate that Hernandez has not been charged with or convicted of a violent crime, they acknowledge that he has a criminal history involving: (1) a conviction of felony receiving of stolen property[3]; (2) two citations for intoxication in a public place; and (3) convictions of conspiracy to commit mail and bank fraud as well as aggravated identity theft arising out of a credit card skimming operation at Louisville, Kentucky gas stations. (*Id.* at PageID.11162, 11164–11165.) While Plaintiffs acknowledge that Hernandez is subject to an August 29, 2020 final removal order, they argue that Hernandez' removal is unlikely in the near future as a result of Cuba's current and demonstrated resistance to removals from the United States. (*Id.* at PageID.11162.) If released, Hernandez will initially stay with his brother in Louisville, Kentucky, for a 14-day isolation period before moving to reside with his wife, their children, and his parents. (*Id.*)

Defendants argue that Hernandez should be presumed to be a danger because he is subject to mandatory detention. (ECF No. 423, PageID.11215.) Noting that Hernandez claims to have engaged in the

---

[3] Plaintiffs' supplement indicates that this conviction has been dismissed, and the record has been expunged, following his completion of a three-year pretrial diversion program. (ECF No. 448, PageID.11532.)

credit card skimming operation as a result of financial pressure, Defendants argue that Hernandez is likely subject to continued financial pressure as a result of his inability to work while in custody and his family circumstances; Defendants' argument implies that Hernandez may be motivated to engage in similar fraudulent conduct if he were released. (*Id.*) Defendants do not argue that Hernandez is a flight risk. (*Id.*)

Plaintiffs reply that there is no statutory presumption of danger for individuals held under mandatory detention. (ECF No. 433, PageID.11381.) Plaintiffs further argue that Defendants have failed to substantiate their argument that Hernandez may reoffend were he to be released; Plaintiffs allege that Hernandez has not associated with his co-defendant since January of 2018 and note that Hernandez will remain under the supervision of the federal probation office upon release. (*Id.*) Additionally, Plaintiffs argue that the family's financial circumstances have changed since Hernandez engaged in the credit card skimming operation (e.g., Hernandez' wife now has a source of income). (*Id.*)

The Court finds Hernandez is neither a flight risk nor a danger to the community given his proposed release plan. The Court recognizes

8

that Hernandez' release plan involves his release into the custody of an individual who is not the custodian listed in the bail request, and approves the alternative arrangements as set forth in Hernandez' bail application. Accordingly, Hernandez' application for bail is granted.

### *Ariel Pineda-Rivera* (ECF No. 428)

Plaintiffs allege that Pineda-Rivera has lived in the United States for approximately eight years and has no violent criminal history. (ECF No. 428, PageID.11293.) According to Plaintiffs, Pineda-Rivera was arrested in 1995 for attempted theft of government-owned cows in Cuba and was convicted in 2019 of conspiracy to possess with intent to distribute a detectable amount of cocaine in the United States. (*Id.* at PageID.11295.) Plaintiffs further allege that Pineda-Rivera voluntarily cooperated with law enforcement after his recent arrest. (*Id.* at PageID.11295–11296.) While Plaintiffs acknowledge that Pineda-Rivera appears to be subject to a November 23, 2020 final removal order, they argue that—similar to Hernandez—Pineda-Rivera's removal is unlikely in the near future as a result of Cuba's current and demonstrated resistance to removals from the United States. (*Id.* at PageID.11296.)

Additionally, Plaintiffs note that Pineda-Rivera filed a motion for compassionate release on August 17, 2020, which was granted by U.S. District Court Judge Marcia G. Cooke of the Southern District of Florida. (*Id.* at PageID.11291.) The Department of Justice ("DOJ") did not oppose Pineda-Rivera's motion. (*Id.*) Plaintiffs note that Pineda-Rivera will be on supervised release for a four-year term and report to a probation officer in the Southern District of Florida. (*Id.* at PageID.11296.) If released, Pineda-Rivera will live with his former long-term partner, his step-daughter, and his step-grandchildren in Hialeah, Florida. (*Id.* at PageID.11297.)

Defendants argue that Pineda-Rivera should be presumed to be a danger because he is subject to mandatory detention. (ECF No. 436, PageID.11415.) Defendants also imply that Pineda-Rivera poses a danger because he is at risk of reoffending. (*Id.*) Specifically, Defendants argue that the same circumstances allegedly leading Pineda-Rivera to participate in the conduct leading to the conspiracy conviction—his financial hardship—likely remain as a result of his inability to work while incarcerated. (*Id.*) Defendants do not argue that Pineda-Rivera is a flight risk. (*Id.*)

Plaintiffs reply that there is no statutory presumption of danger for individuals held under mandatory detention. (ECF No. 441, PageID.11454.) Plaintiffs further argue that Defendants have failed to substantiate their argument that Pineda-Rivera may reoffend were he to be released as a result of his possible financial hardship. (*Id.*) Plaintiffs further note that Pineda-Rivera's release plan was already approved by the DOJ and Judge Cooke in the context of Judge Cooke's order granting compassionate release. (*Id.*)

The Court finds Pineda-Rivera is neither a flight risk nor a danger to the community given his proposed release plan. The Court recognizes that Pineda-Rivera's release plan involves his release into the custody of an individual who is not the custodian listed in the bail request, and approves the alternative arrangements as set forth in Pineda-Rivera's bail application. Accordingly, Pineda-Rivera's application for bail is granted.

## III.  Conclusion

For the reasons stated above, the Court grants bail for habeas litigation group members Xirum Sanchez, Hernandez, and Pineda-Rivera. Each habeas litigation group member set for release is subject to

11

the conditions outlined in this Court's August 12, 2020 order. (ECF No. 179.) Additionally, habeas litigation group member Xirum Sanchez is subject to the additional condition that he abstain from consuming any alcohol during his release. Release under the bail process is to follow the bail process and standard Conditions of Release previously set forth. (*See* ECF Nos. 166, 177, 179, 243.)

Additionally, in light of Defendants' repeated arguments that habeas litigation group members are safer in congregate living in custody at CCCF than upon release, the Court orders Defendants to submit documentation indicating (1) how many unique individuals among detainees, inmates, and staff have tested positive for COVID-19 at CCCF over the course of the pandemic; as well as (2) the total number of staff, detainees, and inmates who have been in CCCF since the first positive COVID-19 case was found at CCCF. Documentation is to be filed by December 16, 2020.

**IT IS SO ORDERED.**

Dated: December 11, 2020          s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                  United States District Judge

12

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 11, 2020.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager