# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Janet Malam,

        Petitioner-Plaintiff,

and

Qaid Alhalmi, *et al.*,

        Plaintiff-Intervenors,

v.

Rebecca Adducci, *et al.*,

        Respondent-Defendants.

_____/

Case No. 20-10829

Judith E. Levy
United States District Judge

Mag. Judge Anthony P. Patti

## FOURTEENTH ORDER ON BAIL
## [458, 461, 463]

Between December 11, 2020 and December 15, 2020, Plaintiffs submitted bail applications for habeas litigation group members Andrei Skripkov, Manuel Castillo-Torres, and Nicholas Yearsley. (ECF Nos. 458, 461, 463.) Between December 16, 2020 and December 18, 2020, Defendants filed responses. (ECF Nos. 464, 466, 467.) Between December 18, 2020 and December 21, 2020, Plaintiffs filed replies. (ECF Nos. 469–471.)

After reviewing the application and briefing, the Court grants bail for group members Skripkov, Castillo-Torres, and Yearsley.

## I. Eligibility for Bail

The Sixth Circuit has recognized the district court's "inherent authority" to grant a habeas petitioner release on bail pending adjudication of the petition's merits. *Nash v. Eberlin*, 437 F.3d 519, 526 n.10 (6th Cir. 2006). "The district court may release petitioners on bail if there is a 'substantial claim of law' and the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Id.* (citing *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993)).

On November 30, 2020, the Court found that "[t]he habeas litigation group members continue to raise substantial claims of law" because group members "continue to show a likelihood of success on the merits of their due process claim challenging their continued detention at CCCF during the COVID-19 pandemic." (ECF No. 430, PageID.11345, 11348.) Additionally, the Court found that "COVID-19 presents special circumstances making the bail applications exceptional." (*Id.* at PageID.5295.) Over approximately the last month, Calhoun County

Correctional Facility ("CCCF") has been in a COVID-19 outbreak. (*See* ECF Nos. 365, 388.) As of December 15, 2020, a total of 67 detainees and inmates, as well as six staff members, have tested positive for COVID-19. (*See* ECF No. 450, PageID.11576 (outlining the progression of additional positive cases at CCCF reported between November 2, 2020 and December 4, 2020); ECF No. 463, PageID.11871 (indicating new positive cases at CCCF as of December 15, 2020).)

The Court continues to find that these group members raise substantial claims of law and that COVID-19 presents special circumstances making the bail applications exceptional. The Court will continue to evaluate individual bail applications conditionally while awaiting the reports from the expert inspections of CCCF that took place on December 17, 2020.

## II.   Individual Bail Applications

The Court makes the following findings with respect to individual bail applications:

*Andrei Skripkov* (ECF No. 458)

Plaintiffs allege that Skripkov has lived in the United States for approximately two years and has no criminal history in the United States

3

since his arrival from Russia. (ECF No. 458, PageID.11724, 11726.) Plaintiffs acknowledge that after Skripkov left Russia, the Russian government issued an indictment against Skripkov under Article 212.1 of the Russian Federation Criminal Code. (*Id.* at PageID.11725.) When considering Skripkov's appeal of the denial of his asylum application by an Immigration Judge and the dismissal of his appeal by the Board of Immigration Appeals ("BIA"), the Sixth Circuit Court of Appeals found that Article 212.1 "penalizes protest activity that is not approved through government channels." *Skripkov v. Barr*, 966 F.3d 480, 489 (6th Cir. 2020). Furthermore, the Sixth Circuit found that "both the context and substance of Skripkov's threatened prosecution under Article 212.1 appear to be pretextual, thus crossing the line from prosecution to persecution" with reference to Skripkov's anticorruption political opinion and his public role in peaceful anticorruption activities. *Id.* at 489–491. According to Plaintiffs, Skripkov's asylum application is now pending before the immigration court and he has no final order of removal. (ECF No. 458, PageID.11722, 11725.) Plaintiffs argue that Skripkov is not a flight risk due to his fear of "retaliation and harassment from corrupt Russian authorities" in response to Skripkov's anticorruption activism,

4

as well as his family's own strong incentive to remain in the United States based on their derivative applications for asylum. (*Id.* at PageID.11722–11723.) If released, Skripkov will reside with his wife and son in Saint Petersburg, Florida. (*Id.* at PageID.11725.)

Defendants argue that Skripkov poses a flight risk. (ECF No. 464, PageID.11935.) Specifically, Defendants contend that Skripkov does not have any ties to the United States and they claim that he previously used a driver's license obtained using fraudulent means to work as a truck driver. (*Id.*) Defendants do not argue that Skripkov would be a danger to the community. (*Id.*)

Plaintiffs reply to challenge Defendants' assertion that Skripkov lacks a connection to the United States. (ECF No. 469, PageID.11973.) Plaintiffs note that Skripkov's wife and son have lived in Florida since the family arrived in the United States in 2018 and that the family is represented by counsel through their immigration proceedings; Plaintiffs claim both factors provide a strong incentive for Skripkov not to abscond. (*Id.* at PageID.11973–11974.) Additionally, while Plaintiffs acknowledge that Skripkov worked as a truck driver without authorization for approximately one-and-a-half months in 2018, they allege that he

5

lawfully obtained a Florida driver's license to cover the initial length of his stay. (*Id.* at PageID.11974.)

The Court finds that Skripkov does not pose a flight risk and is not a danger to the community given his proposed release plan. The Court recognizes that Skripkov's release plan involves his release into the custody of an individual who is not the custodian listed in the bail request, and approves the alternative arrangements as set forth in Skripkov's bail application. Accordingly, Skripkov's application for bail is granted.

### *Manuel Castillo-Torres* (ECF No. 461)

Plaintiffs allege that Castillo-Torres has lived in the United States for approximately 30 years and has not been charged with, or convicted of, any violent crime. (ECF No. 461, PageID.11774.) Plaintiffs acknowledge that Castillo-Torres was convicted of misdemeanor driving with a blood alcohol content over 0.08 in addition to conspiracy with intent to distribute 5 kilograms or more of cocaine. (*Id.* at PageID.11777.) However, Plaintiffs also indicate that Castillo-Torres cooperated with the government following his arrest for the conspiracy conviction, ultimately providing substantial assistance to law enforcement in their

investigation of the greater drug trafficking operation in which Castillo-Torres was a participant. (*Id.* at PageID.11774, 11777.) Plaintiffs further allege that Castillo-Torres is in the process of seeking relief from removal under the Convention Against Torture ("CAT") based on his fear of torture or persecution if returned to Mexico as a result of this cooperation with law enforcement. (*Id.* at PageID.11775–11776.) Additionally, Plaintiffs highlight Castillo-Torres' participation in years of rehabilitative classes and programs during his incarceration, his employment in the prison kitchen, and his active engagement in prison religious life. (*Id.* at PageID.11774.) Castillo-Torres will reside with his wife and his son in Phoenix, Arizona, if released. (*Id.* at PageID.11778–11779.)

Defendants argue that Castillo-Torres is a danger to the community because of his involvement in the drug trafficking operation leading to his conspiracy conviction. (ECF No. 466, PageID.11942.) Defendants note that Castillo-Torres' assistance in law enforcement's investigation of the drug trafficking scheme following Castillo-Torres' arrest benefited Castillo-Torres in the form of a reduced sentence; Defendants allege there is "no indication [Castillo-Torres] had any intention of withdrawing from

7

the operation prior to his arrest." (*Id.*) Defendants' argument implies that Castillo-Torres may be inclined to engage in similar conduct as that underlying his conspiracy conviction were he to be released. (*Id.*) Additionally, Defendants argue that "supporting the drug trafficking industry contributes to the well-known atmosphere of violence associated with the illegal drug trade that decimates communities." (*Id.* at PageID.11942–11943.) Defendants claim that the atmosphere of violence associated with drug trafficking serves as the rationale behind Congress' determination that individuals with convictions such as Castillo-Torres' should be subject to mandatory detention. (*Id.*) Defendants do not contend that Castillo-Torres is a flight risk. (*Id.*)

Plaintiffs reply that there is no statutory presumption of danger for individuals held under mandatory detention. (ECF No. 471, PageID.11981.) Plaintiffs also argue that Defendants do not designate how Castillo-Torres' role in the drug trafficking operation—provision of a venue for drug distribution—implicates him in any individual acts of violence. (*Id.* at PageID.11981–11982.) Additionally, Plaintiffs argue that there is significant evidence suggesting that Castillo-Torres will not reoffend if released: (1) he has not had any contact with anyone involved

8

in the trafficking operation since his arrest; (2) he provided information to law enforcement regarding the operation despite his own personal risk; and (3) reoffending would jeopardize his efforts to obtain immigration relief under the CAT. (*Id.* at PageID.11982.)

The Court finds that Castillo-Torres does not pose a flight risk and is not a danger to the community given the incentives set forth in Plaintiffs' reply brief and his proposed release plan. However, Castillo-Torres will be released solely with the conditions that he (1) immediately report to the United States Probation Office for the District of Arizona and follow all the terms of his federal supervised release; and (2) abstain from consuming any alcohol during his release. Accordingly, Castillo-Torres' application for bail is granted.

### *Nicholas Mark Yearsley* (ECF No. 463)

Plaintiffs write that Yearsley has lived in the United States for approximately 34 years. (ECF No. 463, PageID.11870.) Plaintiffs recognize Yearsley has a criminal history predominantly involving drug offenses (i.e., convictions of possession of marijuana, possession with intent to deliver marijuana, possession of cocaine, and conspiracy to distribute controlled substances [i.e., oxycodone]) as well as a 1997

conviction involving criminal assault. (*Id.* at PageID.11874.) Plaintiffs contend that Yearsley's criminal history reflects his struggles with addiction and further explain that Yearsley began selling controlled substances to support his addiction after suffering an injury from a 2003 work accident. (*Id.* at PageID.11872.) Additionally, Plaintiffs highlight Yearsley's successful completion of a year-long federal pretrial supervision before reporting to serve his prison sentence (including wearing an ankle monitor, taking random drug tests, and reporting monthly to his probation officer) as evidence of Yearsley's ability to live safely in the community. (*Id.*) Plaintiffs allege that Yearsley is actively pursuing immigration relief with counsel, seeking a U Visa. (*Id.* at PageID.11873.) Yearsley will live with his sister in Kent, Washington, if released. (*Id.* at PageID.11876.)

Defendants argue that Yearsley is a danger to the community based on his history of increasingly serious drug offenses. (ECF No. 467, PageID.11959.) As with Castillo-Torres' bail application, Defendants contend that, even though Yearsley has not been individually convicted of a violent offense with the exception of his 1997 assault conviction, "drug trafficking contributes to a well-known atmosphere of violence that

10

decimates communities." (*Id.* at PageID.11959.) Defendants again claim that the atmosphere of violence associated with drug trafficking serves as the rationale behind Congress' determination that individuals with convictions such as Yearsley's should be subject to mandatory detention. (*Id.*) Furthermore, Defendants assert that Yearsley likely also sold drugs for financial support, because he claims to have not been employed between the years 2003 and 2017 but nevertheless also served as the primary caretaker for his daughter. (*Id.*) Defendants argue that Yearsley's drug dealing "exposed his daughter to the attendant danger." (*Id.* at PageID.11959–11960.) Defendants do not contend that Yearsley is a flight risk. (*Id.*)

Plaintiffs reply that there is no statutory presumption of danger for individuals held under mandatory detention. (ECF No. 471, PageID.11987.) Plaintiffs argue that Defendants' assertions regarding Yearsley's past conduct are "unsupported speculation" and fail to elucidate whether Yearsley would be likely to reoffend were he released. (*Id.* at PageID.11988.) Instead, Plaintiffs contend that Yearsley's 2017 conviction "led him to face his addiction to prescription painkillers for the first time" and note that Yearsley completed a three-month drug and

11

alcohol treatment program while incarcerated before being released early based on his earned good time credits. (*Id.*) According to Plaintiffs, the conditions of Yearsley's supervised release are designed to reduce any risk of recidivism (e.g., participation in substance abuse treatment programming, engaging in cognitive behavioral therapy, a requirement to comply with regular drug testing and to meet regularly with his probation officer). (*Id.*)

Although the Court finds that Yearsley does not pose a flight risk or a danger to the community given his proposed release plan, the Court will release Yearsley on bail only with the conditions that he (1) have a transportation plan for getting back to the Seattle area; (2) immediately report to the United States Probation Office for the Western District of Washington and follow all the terms of his federal supervised release; and (3) enroll in a substance abuse program, such as Narcotics Anonymous ("NA"), Alcoholics Anonymous ("AA"), or another program of his choice. Accordingly, Yearsley's application for bail is granted.

### III. Conclusion

For the reasons stated above, the Court grants bail for habeas litigation group members Skripkov, Castillo-Torres, and Yearsley. Each

12

habeas litigation group member's release is subject to the conditions outlined in this Court's August 12, 2020 order. (ECF No. 179.) Additionally, habeas litigation group member Castillo-Torres is subject to the additional conditions that he (1) immediately report to the United States Probation Office for the District of Arizona and follow all the terms of his federal supervised release; and (2) abstain from consuming any alcohol during his release. Habeas litigation group member Yearsley is subject to the additional conditions that he (1) have a transportation plan for getting back to the Seattle area; (2) immediately report to the United States Probation Office for the Western District of Washington and follow all the terms of his federal supervised release; and (3) enroll in a substance abuse program, such as NA, AA, or another program of his choice.

Release under the bail process is to follow the bail process and standard Conditions of Release previously set forth. (*See* ECF Nos. 166, 177, 179, 243.)

**IT IS SO ORDERED.**

Dated: December 23, 2020  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
  United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 23, 2020.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager
