UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JANET MALAM,<br><br>                              Petitioner-Plaintiff,<br><br>and<br><br>QAID ALHALMI, et al.,<br><br>                              Plaintiff-Intervenors,<br><br>- against -<br><br>REBECCA ADDUCCI, et al.,<br><br>                              Respondent-Defendants. | No. 5:20-cv-10829-JEL-APP |

**PLAINTIFF-INTERVENORS'**
**<u>MOTION FOR EXPEDITED DISCOVERY</u>**

Plaintiffs, by and through their undersigned attorneys, respectfully move this Court for an Order for expedited discovery pursuant to the Federal Rules of Civil Procedure 26(d) and (f) and Local Rule 26.2. Specifically, Plaintiffs ask that this Court order Defendants within seven (7) days of the Court's Order to:

1. Produce all documents responsive to Plaintiffs' Second Set of Requests for Expedited Production of Documents, appended as Ex. 1; and

2. Produce a privilege log for any responsive document being withheld pursuant to a claim of privilege.

Plaintiffs also move this Court under Section (3)(d)(vi) of the Second Amended Stipulated Protective Order to authorize disclosure to the next-of-kin of Mr. Jesse Jerome Dean Jr. of:

1. Mr. Dean's medical records provided by Defendants to Plaintiffs on February 11, 2021; and

2. Any documents produced to Plaintiffs under an Order on this Motion.

ECF No. 221, PageID.6317.

In support of this Motion, Plaintiffs rely on the facts, law, and argument set forth in the accompanying Memorandum in Support.

In accordance with Local Rule 7.1(a), Plaintiffs' counsel contacted counsel for the parties to seek their consent on this motion.  Counsel for Defendants agreed to provide medical records, including COVID-19 tests, but have not agreed to provide the other documents requested. Defendants also do not agree that the documents can be shared with Mr. Dean's next of kin.

Dated: February 11, 2021

Respectfully submitted,

/s/ Miriam J. Aukerman
Miriam J. Aukerman (P63165)
Rohit Rajan
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy Street SE, Suite 260
Grand Rapids, MI 49506
Telephone: (616) 301-0930
maukerman@aclumich.org

Daniel S. Korobkin (P72842)
Monica C. Andrade (P81921)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
Telephone: (313) 578-6824
dkorobkin@aclumich.org
mandrade@aclumich.org

David C. Fathi
Eunice H. Cho
American Civil Liberties Union
  Foundation, National Prison
  Project
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6616
dfathi@aclu.org
echo@aclu.org

Anand V. Balakrishnan
Michael K.T. Tan
Omar C. Jadwat*
ACLU Foundation Immigrants'
  Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2660
abalakrishnan@aclu.org
mtan@aclu.org
ojadwat@aclu.org

My Khanh Ngo
ACLU Foundation Immigrants'
  Rights Project
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0770
mngo@aclu.org

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP

/s/ Jeannie S. Rhee
Jeannie S. Rhee
Mark F. Mendelsohn
Rachel M. Fiorill
Peter E. Jaffe
Darren S. Gardner
2001 K Street NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
jrhee@paulweiss.com
mmendelsohn@paulweiss.com
rfiorill@paulweiss.com
pjaffe@paulweiss.com
dgardner@paulweiss.com

Jonathan M. Silberstein-Loeb
Oleg M. Shik
Katharine W. Gadsden
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
jsilberstein-loeb@paulweiss.com
oshik@paulweiss.com
kgadsden@paulweiss.com

*Attorneys for Plaintiffs*

*Application for admission forthcoming

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JANET MALAM,

                              Petitioner-Plaintiff,

and

QAID ALHALMI, et al.,                           No. 5:20-cv-10829-JEL-APP

                              Plaintiff-Intervenors,

- against -

REBECCA ADDUCCI, et al.,

                              Respondent-Defendants.

**BRIEF IN SUPPORT OF PLAINTIFF-INTERVENORS'
MOTION FOR EXPEDITED DISCOVERY**

## **<u>TABLE OF CONTENTS</u>**

<u>**Page**</u>

I.    There Is Once Again Good Cause for Expedited Discovery. ........................4

II.   Plaintiffs' Discovery Requests Are Narrowly Tailored to Answer
      Open Questions About the Circumstances of Mr. Dean's Death...................8

III.  The Court Should Permit Plaintiffs to Disclose the Requested Records
      to Mr. Dean's Next of Kin............................................................................10

Conclusion ...................................................................................................12

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Bracy v. Gramley*,
    520 U.S. 899 (1997).............................................................................................4

*Hoxie v. Livingston Cty.*,
    No. 09-CV-10725, 2010 WL 457104 (E.D. Mich. Feb. 3, 2010) .......................8

*Lynott v. Story*,
    929 F.2d 228 (6th Cir. 1991) ...............................................................................4

*N. Atl. Operating Co., Inc. v. Ebay Seller Dealz_For_You*,
    No. 2:17-10964, 2017 WL 6059505 (E.D. Mich. Dec. 7, 2017).....................4, 9

*Rockwell Med., Inc. v. Richmond Bros., Inc.*,
    No. 17-10757, 2017 WL 1361129 (E.D. Mich. Apr. 14, 2017) ..........................9

**RULES AND REGULATIONS**

Fed. R. Civ. P. 26(d)(1)..............................................................................................4

Habeas Rule 6(a) .......................................................................................................4

45 C.F.R. § 164.524(a) ............................................................................................11

45 C.F.R. § 164.502(g) ......................................................................................11, 12

**OTHER AUTHORITIES**

Felipe De La Hoz, *Cuban Man Died of Coronavirus in Private Prison
    Plagued by Medical Neglect*, The Intercept (Aug. 14, 2020),
    https://theintercept.com/2020/08/14/coronavirus-immigrant-prison-
    taft-north-lake-death/ ..........................................................................................9

## **INTRODUCTION**

Since the onset of this litigation, both parties and the Court have come to understand the life-and-death consequences of COVID-19 as the pandemic has swept through Calhoun and our broader communities. We do not yet know whether the tragic death of Jessie Jerome Dean, Jr. while in ICE custody was connected to COVID-19. However, we do know that Mr. Dean was not only a class member, but a member of the Habeas Litigation Group—the population of high-risk detainees that Dr. Homer Venters explicitly singled out to express particular concern over, based in part on his findings about structural issues with the medical care system at the Calhoun County Correctional Facility ("Calhoun"). *See, e.g.*, ECF No. 483-1, PageID.12565 ("The facility also appears to have an inadequate chronic care and medication system that likely causes chronic health problems to be poorly controlled, which directly increases the risk of serious illness or death from COVID-19 infection."); ECF No. 517-1, PageID.13372 (noting failure by Defendants' expert to address "serious issue of how detainees . . . became ill, and were forced to continue working and denied care and COVID-19 testing").[1]

---

[1] *See also, e.g.*, ECF No. 483-1, PageID.12571 ("[T]here are structural issues, including the inherent dangers of congregate settings, the facility design, and the inadequacy of the health services infrastructure, that are either very expensive or effectively impossible for Defendants to address, but that create a significant risk of COVID-19 infection and of poor outcomes from infection.").

If Mr. Dean's death is the result of this deficient medical care system or Calhoun's overall COVID-19 response, it would underscore Plaintiffs' arguments that the continued detention of medically vulnerable detainees like Mr. Dean violates their constitutional rights by exposing them to an unacceptably high risk of severe illness or death from COVID-19. It would also raise further questions about the adequacy of the precautionary measures in place at Calhoun and could inform, to the extent relevant, any settlement discussions between parties.

Plaintiffs' discovery requests, appended as Ex. 1, are tailored and do not impose a substantial burden on Defendants. Plaintiffs seek only documents relating to Mr. Dean's medical circumstances and death that are already in existence or would otherwise be created in the ordinary course, and that are relevant to determining whether COVID-19 played a role in his death. Given the weighty questions at issue and the stakes of this litigation, these requests are proportionate and reasonable.

Ultimately, neither Plaintiffs nor this Court currently have enough information to answer the questions that Mr. Dean's death raises. Plaintiffs respectfully seek only that information necessary to determine the circumstances of his death, so that such information can be used to help resolve the factual issues in this litigation.

## **FACTS**

Mr. Dean died while in ICE custody on February 5, 2021, reportedly after suffering a cardiac event. Ex. 2, Emails Between J. Newby and M. Aukerman (Feb. 5–10, 2021) at 3–4. Mr. Dean, a 58-year-old Bahaman national diagnosed with hypertension, was a conceded member of the high-risk Habeas Litigation Group. *See* ECF No. 524-2 at 3 (Email from J. Newby to M. Aukerman, Jan. 6, 2021); Ex. 3, J. Dean, Medical Summary of Prisoner in Transit.

Defendants reported Mr. Dean's death to the Court on the afternoon of February 5, 2021. Ex. 2, at 3–4. The next day, Plaintiffs provided Defendants with a list of questions and document production requests related to Mr. Dean for the purpose of determining the circumstances of his death and whether it was related in any way to COVID-19. *Id.* at 2–3. On February 7, Defendants confirmed that Mr. Dean's next of kin had been notified, but declined to provide the requested information or documents, asserting that "there is no reasonable basis to believe Mr. Dean had COVID-19" and that Defendants consider Plaintiffs' request as "beyond the scope of this lawsuit." *Id.* at 2. On February 11, Plaintiffs approached Defendants once again, this time with the attached requests for production, to which Defendants only agreed to a limited part. Defendants also did not agree that the documents can be shared with Mr. Dean's next of kin. Ex. 7, Emails Between J. Newby and M. Aukerman (Feb. 11, 2021), at 1. Because Defendants refuse to produce discovery

that is directly relevant to the claims at issue in this proceeding on the basis of a premature factual determination, Plaintiffs respectfully request that this Court order the production of documents related to Mr. Dean's death.

## ARGUMENT

### I.    There Is Once Again Good Cause for Expedited Discovery.

Time and again, Plaintiffs have shown and this Court has found that there is good cause for discovery in this action. ECF No. 53, PageID.1646; ECF No. 142, PageID.4767–68; ECF No. 166, PageID.5271. As this Court has noted, this case is "a hybrid civil/habeas action."  ECF No. 166, PageID.5269.  In habeas cases, Habeas Rule 6(a) allows discovery for "good cause," which is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that [they are] entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). And in civil cases, the Rule 26(d)(1) of the Federal Rules of Civil Procedure provides that a court may order discovery "upon a showing of good cause."  ECF No. 166, PageID.5269, citing *N. Atl. Operating Co., Inc. v. JingJing Huang*, 194 F. Supp. 3d 634, 637 (E.D. Mich. 2016).

As a result of its findings of good cause, this Court has ordered rolling productions of Class Members' medical records, COVID-19 test results, depositions

of ICE officials, and an inspection of the Calhoun facility, recognizing that such discovery is squarely aimed at resolving the issues in this case. ECF No. 53, PageID.1649; ECF No. 142, PageID.4767–68; ECF No. 166, PageID.5284; ECF No. 439, PageID.11435.

Plaintiffs now request further discovery from Defendants directly relevant to Claims I and II of this lawsuit. ECF No. 97, PageID.3344–3348. Those claims are that *first*, their detention during the pandemic is not reasonably related to, and excessive in relation to, the government's regulatory purpose of removal; and *second*, that continued detention of the medically vulnerable subclass, of which Mr. Dean was a member, presents such a high risk of severe illness or death from COVID-19 that it is not reasonably related to, and excessive in relation to, the government's above-stated purpose.

Understanding the circumstances of and whether COVID-19 or Calhoun's deficient medical care system contributed to Mr. Dean's death is relevant to the question of whether Defendants' reliance on a limited set of screening measures— while disregarding on-going monitoring, social distancing, and the reduction of detainee population levels—is reasonable under the circumstances. For example, Mr. Dean's medical and sick call records may indicate that, as observed in Dr. Homer Venter's recent expert report, Calhoun "appears to disregard or respond slowly to reports of COVID-19 symptoms among detained people, which is likely

to worsen their individual clinical course and also increase the spread of the virus."
ECF No. 483-1, PageID.12554. If Mr. Dean experienced delinquent responses to his
sick calls in the final weeks of his life, despite being identified as a medically
vulnerable detainee and in need of chronic care, that tends to show that the risks
facing Habeas Group Members are such that their continued detention is
unconstitutional.

As recently shown in Dr. Venter's inspection of Calhoun, Defendants
"continue[] to over-rely on their new admission quarantine and testing policies even
through there have been repeated violations of such policies and the fact that such
policies were not enough to prevent previous outbreaks and will not be enough to
prevent future outbreaks[.]" ECF No. 482-1, PageID.12519. Dr. Venters noted that
Calhoun fails to proactively screen high-risk detainees, such as Mr. Dean, for
symptoms and to take any action to improve their responses to sick call requests. *Id.*
If Mr. Dean's death is connected to these deficiencies, that tends to show that
Defendants' emphasis on admission screening and quarantine is inadequate to
protect Plaintiffs' constitutional rights.

Any connection between Mr. Dean's death and Calhoun's response to
COVID-19 or its deficient medical care system would also underscore the danger
posed to Habeas Litigation Group members. As has been repeatedly argued in this
case, the continued detention of medically vulnerable detainees poses such a high

6

risk of serious illness or death from COVID-19 that their release from custody is required unless Defendants prove that such a risk of flight or danger to the community is present that continued detention is warranted. Mr. Dean was a conceded member of the Habeas Litigation Group. *See* ECF No. 524, Ex. A at 3. The cause of Mr. Dean's death—particularly if it is related to COVID-19 or capacity of Calhoun's health services to treat high-risk individuals during the pandemic—is further evidence of the deadly risks facing medically vulnerable detainees who are unable to protect themselves while in custody. It also shows the appropriateness of Dr. Venter's recommendation that Defendants prioritize the release of detainees at higher risk for serious illness and death from custody, as the precautions at Calhoun are insufficient to reasonably protect them. ECF No. 483-1, PageID.12520.

Finally, it is premature to conclude, based only on reported negative test results from tests (of unknown reliability) conducted prior to the date of Mr. Dean's death, that "there is no reasonable basis to believe Mr. Dean had COVID-19" and, as Defendants immediately asserted, any discovery is "beyond the scope of this lawsuit." Ex. 2, at 3–4. Withholding discovery at this stage risks drawing false comfort from preliminary data. Just last summer, the death of a 67-year-old Cuban man at the North Lake Correctional Institution was originally attributed to a cardiac arrest—but after investigation was revealed to have actually passed in the prison

infirmary as a result of complications "associated with COVID-19."[2] The same hasty

conclusions should not be drawn in Mr. Dean's case. For Defendants to assert that

there is no reasonable basis to believe that COVID-19 was implicated in his death—

without any definitive results from a neutral autopsy or any post-mortem COVID-

19 tests—bestows an inappropriate certainty on these results.[3]

## II.    Plaintiffs' Discovery Requests Are Narrowly Tailored to Answer Open Questions About the Circumstances of Mr. Dean's Death.

"Relevance for discovery purposes is extremely broad." *Hoxie v. Livingston

Cty.*, No. 09-CV-10725, 2010 WL 457104, at *2 (E.D. Mich. Feb. 3, 2010) (finding

that documents relating to jail cell assignments and inmate mail and health care logs

were relevant and discoverable in action where inmate alleged insufficient medical

---

[2] Felipe De La Hoz, *Cuban Man Died of Coronavirus in Private Prison Plagued by Medical Neglect*, The Intercept (Aug. 14, 2020), https://theintercept.com/2020/08/14/coronavirus-immigrant-prison-taft-north-lake-death/.

[3] Moreover, from at least the evening of February 8 to mid-day February 9, ICE's website reported that Calhoun had one detainee death related to COVID-19. *See* Ex. 4, *ICE Guidance on COVID-19*, U.S. Immigration and Customs Enforcement (Feb. 8, 2021) at 15. For the purposes of its published statistics, ICE defines a "detainee death" as including "detainees who have died after testing positive for COVID-19 while in ICE custody" even where "COVID-19 may not be the official cause of death." *Id.* at 20. The same night as it updated its published statistics, ICE also published a notice of Mr. Dean's death on its website, noting his cause of death as "caused by a medical emergency." Ex. 5, Newsroom, *Bahamian Man in ICE Custody Passes Away in Michigan*, U.S. Immigration and Customs Enforcement (Feb. 8, 2021). This may indicate, for example, that Calhoun presumptively treated Mr. Dean's death as a COVID-19-related death for some time, or else it may be merely a technical error. Discovery on the matters requested will illuminate how Mr. Dean's was handled and why this might have occurred.

care).   Nonetheless, Plaintiffs have narrowly tailored their requests to only documents that are kept by ICE in the ordinary course; their production would impose a minimal burden. Because the set of requested documents is limited, "the need for [Plaintiffs'] expedited discovery outweighs the prejudice to the responding party, based on the entirety of the record to date and the reasonableness of the request in light of the surrounding circumstances." *N. Atl. Operating Co., Inc. v. Ebay Seller Dealz_For_You*, No. 2:17-10964, 2017 WL 6059505, at *1 (E.D. Mich. Dec. 7, 2017) (quoting Moore's Federal Practice—Civil § 26.121 (2016)).

Plaintiffs' document request is "reasonably targeted, clear, and as specific as practicable." *Rockwell Med., Inc. v. Richmond Bros., Inc.*, No. 17-10757, 2017 WL 1361129, at *3 (E.D. Mich. Apr. 14, 2017). For example, Defendants are already required through this litigation to provide Mr. Dean's full medical records, as he is a member of the represented Class. ECF No. 118, PageID.4089–90. Although Defendants have provided certain medical records relating to Mr. Dean's time in Calhoun, they have provided no medical records concerning his death. Plaintiffs also do not request the creation of any new documents, but instead request copies of any investigative reports, audits, witness statements, or other documents related to Mr. Dean's death that would otherwise be created in the normal course of a death in custody. Further, Defendants are already under an obligation to provide rolling document productions, including of detainee medical records. ECF No. 177,

9

PageID.5316–17. Adding documents related to Mr. Dean's death to their productions as they become available would not complicate that process.

These documents are all necessary to the resolve the questions surrounding Mr. Dean's death: Was COVID-19 present in Mr. Dean at the time of death? Did he showcase any symptoms in the time before his death? Did a delay in medical examination or treatment contribute to his death? All these questions go to whether Mr. Dean's and similarly-situated detainees' continued detention is reasonably related to the government's interest in detaining them in the face of a deadly pandemic.

## III. The Court Should Permit Plaintiffs to Disclose the Requested Records to Mr. Dean's Next of Kin

Plaintiffs ask that the Court order, pursuant to Section (3)(d)(vi) of the Second Amended Stipulated Protective Order, that Plaintiffs be permitted to provide to Mr. Dean's next of kin any responsive documents that are produced or otherwise provided to Plaintiffs under the Protective Order to Mr. Dean's next of kin.[4] ECF No. 221, PageID.6317. The Protective Order generally restricts disclosure of "sensitive medical and personal information" in order to protect the privacy of the affected individuals. *Id.*, ¶ 2, PageID.6314. Any responsive documents that do not

---

[4] Following a Status Conference, Defendants provided certain medical records to Plaintiffs subject to the protective order. Ex. 7, Emails Between J. Newby and M. Aukerman (Feb. 11, 2021), at 1.

contain sensitive medical or personal information are not "Confidential Information" under the Protective Order, and are therefore not subject to that order in any event.[5]

The Protective Order recognizes the interest of affected individuals in controlling information about themselves. *Id.* ¶ 3(c), PageID.6315 (barring disclosure "[u]nless consent is given by the person to whom the Confidential Information pertains"); ¶ 3(d), PageID.6316 (same). However, Paragraph (3)(d)(vi) also provides for disclosure "to such other persons … as may be … authorized by the Court. *Id*., PageID.6317. Here the person to whom the Confidential Information pertains is dead and cannot give consent for the disclosure of his information to his next of kin. Accordingly, the Court should order that Plaintiffs be allowed to share the documents with Mr. Dean's next of kin.

Mr. Dean's family has many questions about Mr. Dean's death, and has asked that Plaintiffs' counsel share any documents related to his death so that the family can try to begin to make sense of this tragedy.  Under federal law, Mr. Dean's next of kin are entitled to those documents. Pursuant to 45 C.F.R. § 164.524(a)(1), an individual has a right of access "to inspect and obtain a copy of" one's own medical records. The right to access an individual's medical records extends to her "personal representative," 45 C.F.R. § 164.502(g)(1), including, in the case of deceased

---

[5] The Protective Order also restricts disclosure of information otherwise protected by the Privacy Act or that is law enforcement sensitive, ECF No. 221, ¶2, PageID.6317, provisions that are inapplicable here.

individuals, the administrator of the person's estate. 45 C.F.R. § 164.502(g)(4). In addition, ICE's own detention standards provide that both detainees and their representatives are allowed to request and receive medical records. *See* Ex. 6, 2019 National Detention Standards for Non-Dedicated Facilities, Standard 4.3.P.

Defendants have offered no reason why Plaintiffs should not be allowed to share the requested records with Mr. Dean's next of kin. The Protective Order restricts disclosure of private medical information as a shield to protect the privacy interests of class members. Defendants should not be allowed to use it as a shield to prevent Mr. Dean's family from learning about the circumstances of his death in custody.  Because there is no legitimate reason why the requested information should not be shared with Mr. Dean's next of kin, Plaintiffs respectfully ask that the Court authorize them to do so.

## CONCLUSION

Although Defendants would prefer to close the door on investigating any connection between COVID-19 and Mr. Dean's death, doing so would leave unaddressed important questions about the efficacy of Defendants' precautionary measures and the constitutionality of the continued detention of Habeas Group Members. Mr. Dean's family has many of the same unanswered questions posed in this motion. For these reasons, Plaintiffs respectfully request that this Court order Defendants to respond to the appended Discovery Request within 7 days of its order,

and grant authorization for Plaintiffs to share the produced materials with Mr. Dean's next-of-kin.

Dated: February 11, 2021

Respectfully submitted,

/s/ Miriam J. Aukerman
Miriam J. Aukerman (P63165)
Rohit Rajan
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy Street SE, Suite 260
Grand Rapids, MI 49506
Telephone: (616) 301-0930
maukerman@aclumich.org

Daniel S. Korobkin (P72842)
Monica C. Andrade (P81921)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
Telephone: (313) 578-6824
dkorobkin@aclumich.org
mandrade@aclumich.org

David C. Fathi
Eunice H. Cho
American Civil Liberties Union
  Foundation, National Prison
  Project
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6616
dfathi@aclu.org
echo@aclu.org

Anand V. Balakrishnan
Michael K.T. Tan
Omar C. Jadwat*
ACLU Foundation Immigrants'
  Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2660
abalakrishnan@aclu.org
mtan@aclu.org
ojadwat@aclu.org

My Khanh Ngo
ACLU Foundation Immigrants'
  Rights Project
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0770
mngo@aclu.org

PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP

/s/ Jeannie S. Rhee_____
Jeannie S. Rhee
Mark F. Mendelsohn
Rachel M. Fiorill
Peter E. Jaffe
Darren S. Gardner
2001 K Street NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
jrhee@paulweiss.com
mmendelsohn@paulweiss.com
rfiorill@paulweiss.com
pjaffe@paulweiss.com
dgardner@paulweiss.com

Jonathan M. Silberstein-Loeb
Oleg M. Shik
Katharine W. Gadsden
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
jsilberstein-loeb@paulweiss.com
oshik@paulweiss.com
kgadsden@paulweiss.com

*Attorneys for Plaintiffs*

*Application for admission forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I, Jeannie S. Rhee, certify that on February 11, 2021, I caused a true and correct copy of the foregoing document to be filed and served electronically via the ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. I also caused a true and correct copy of the exhibit filed under seal to be served by electronic mail on counsel for Defendants.

Respectfully submitted,

/s/ Jeannie S. Rhee