# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Janet Malam,

        Petitioner-Plaintiff,

and

Qaid Alhalmi, *et al.*,

        Plaintiff-Intervenors,

v.

Rebecca Adducci, *et al.*,

        Respondent-Defendants.

_____/

Case No. 20-10829

Judith E. Levy
United States District Judge

Mag. Judge Anthony P. Patti

## EIGHTEENTH ORDER ON BAIL
## [521, 528, 547, 570, 573]

Between February 8, 2021 and March 10, 2021, Plaintiffs submitted bail applications for habeas litigation group members Andres Zapete-Mijengos, Melchor Mata-Salazar, Imer Gashi, Badr Al-Yasiri, and Safet Avdulahaj. (ECF Nos. 521, 528, 547, 570, 573.) Between February 11, 2021 and March 15, 2021, Defendants filed responses. (ECF Nos. 529, 535, 558, 575, 576.) Between February 16, 2021 and March 17, 2021, Plaintiffs filed replies. (ECF Nos. 536, 540, 563, 580, 582.)

After reviewing the application and briefing, the Court denies bail for group members Zapete-Mijengos, Mata-Salazar, Gashi, Al-Yasiri, and Avdulahaj.

## I. Eligibility for Bail

The Sixth Circuit has recognized the district court's "inherent authority" to grant a habeas petitioner release on bail pending adjudication of the petition's merits. *Nash v. Eberlin*, 437 F.3d 519, 526 n.10 (6th Cir. 2006). "The district court may release petitioners on bail if there is a 'substantial claim of law' and the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Id.* (citing *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993)).

On November 30, 2020, the Court found that "[t]he habeas litigation group members continue to raise substantial claims of law" because group members "continue to show a likelihood of success on the merits of their due process claim challenging their continued detention at [Calhoun County Correctional Facility ("CCCF")] during the COVID-19 pandemic." (ECF No. 430, PageID.11345, 11348.) Additionally, the

Court found that "COVID-19 presents special circumstances making the bail applications exceptional." (*Id.* at PageID.5295.)

CCCF experienced a COVID-19 outbreak in October and November of 2020, as well as an additional outbreak starting in March 2021. (*See* ECF Nos. 365, 388, 556.) As of April 20, 2021, at least 103 detainees and inmates, as well as 28 employees, have tested positive for COVID-19. (*See* ECF No. 570, PageID.13940–13941 (reporting 99 detainees and inmates, as well as 26 employees, who tested positive as of March 8, 2021); E-mail from Jennifer L. Newby, Assistant U.S. Att'y, to Cassandra J. Thomson, Law Clerk to Judge Judith E. Levy (Mar. 30, 2021 9:34 EST) (on file with the Court) (indicating 1 new positive inmate as of March 30, 2021); E-mail from Jennifer L. Newby, Assistant U.S. Att'y, to Cassandra J. Thomson, Law Clerk to Judge Judith E. Levy (Mar. 30, 2021 13:33 EST) (on file with the Court) (1 new positive staff member as of March 30, 2021); E-mail from Jennifer L. Newby, Assistant U.S. Att'y, to Cassandra J. Thomson, Law Clerk to Judge Judith E. Levy (Apr. 5, 2021 11:11 EST) (on file with the Court) (1 new positive inmate as of April 5, 2021); E-mail from Jennifer L. Newby, Assistant U.S. Att'y, to Cassandra J. Thomson, Law Clerk to Judge Judith E. Levy (Apr. 15, 2021 10:18 EST) (on file with

the Court) (1 new positive inmate as of April 15, 2021); E-mail from Jennifer L. Newby, Assistant U.S. Att'y, to Cassandra J. Thomson, Law Clerk to Judge Judith E. Levy (Apr. 20, 2021 10:22 EST) (on file with the Court) (1 new positive inmate and 1 new positive employee as of April 20, 2021).)

Additionally, following several status conferences regarding whether Defendants were willing to implement a vaccination plan at CCCF (*see* ECF Nos. 520, 549-551, 556, 571), Defendants reported to the Court regarding the successful completion of vaccination clinics on March 9 and 12, 2021, as well as a plan for facility-wide vaccine administration on an ongoing basis. (*See* ECF Nos. 562, 577-578.) This facility-wide plan, made in conjunction with the Calhoun County Health Department ("CCHD"), incorporated the provision of educational materials and presentations to detainees, CCCF staff follow-up meetings with all members of the habeas litigation group who did not originally sign up to receive the vaccine, as well as changes to the medical intake process to facilitate vaccination of new detainees at intake. (ECF No. 577, PageID.14529–14533.) As of March 15, 2021, 69 detainees of the total 109 detainees in CCCF at that time had been vaccinated; additionally, 22 out

4

of the 24 identified and previously-unvaccinated high-risk detainees were fully vaccinated or in the process of receiving their second dose of the COVID-19 vaccine. (*Id.* at PageID.14531.)

The Court appreciates Defendants' work establishing vaccination clinics thus far and their efforts to implement an ongoing vaccination system for CCCF. Nevertheless, while the enactment of an initial vaccination plan is significant, this fact alone does not end the Court's inquiry into whether the conditions at CCCF violate habeas litigation group members' Fifth Amendment rights.

Amidst a rapidly changing pandemic landscape, in addition to concomitant changes in our collective understanding of COVID-19 science, there remain numerous questions regarding the effect of COVID-19 vaccination for individuals in congregate settings. There are unknowns concerning the effectiveness of the COVID-19 vaccine when faced with new variants of COVID-19 as well as current COVID-19 vaccines' interaction with existing preventive protocols and treatments. *See COVID-19 Vaccines vs Variants—Determining How Much Immunity Is Enough*, Journal of the American Medical Association (Mar. 17, 2021) *https://jamanetwork.com/journals/jama/fullarticle/2777785*

[https://perma.cc/H3EF-KSCS]. Individuals in congregate settings have faced a greater risk of COVID-19 infection throughout the pandemic (*see* ECF No. 346, PageID.8622–8630), and these same concerns exist in congregate settings post-vaccination: The Centers for Disease Control and Prevention ("CDC") advise that fully vaccinated residents of detention facilities should nevertheless continue to quarantine and be tested for COVID-19 following possible exposure "because residential congregate settings may face high turnover of residents, a higher risk of transmission, and challenges in maintaining recommended physical distancing." *Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control (Apr. 2, 2021) *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html* [https://perma.cc/5VUC-L9A5]. The CDC further recommends that "while experts learn more about the protection that COVID-19 vaccines provide under real-life conditions," correctional and detention facilities should continue to use all preventive strategies available to stop transmission (e.g., provision of masks, social distancing where possible, use of frequent handwashing and hand sanitizer). *COVID-19 Vaccine FAQs in Correctional and Detention Centers*, Centers

6

for Disease Control (Feb. 16, 2021) *https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/vaccine-faqs.html* [https://perma.cc/3XBQ-BE89].

Alongside these global questions are those specific to CCCF itself. The expert reports submitted by both parties do not address the current conditions at CCCF, having been premised on the assumption—as understood at that time—that COVID-19 vaccines would not be available for staff or detainees at CCCF for several months and possibly as late as this summer or fall. (ECF No. 483-1, PageID.12519; ECF No. 499, PageID.12983; ECF No. 499-1, PageID.13002; ECF No. 517, PageID.13338; ECF No. 517-1, PageID.13391–13396.) Questions remain regarding, for example, whether Defendants' stated vaccination plan would successfully account for ongoing vaccination for the fluid population of habeas litigation group members who are often transferred between ICE facilities nationwide. *See* E-mail from Miriam Aukerman, Attorney at American Civil Liberties Union of Michigan, to Cassandra J. Thomson, Law Clerk to Judge Judith E. Levy (Mar. 22, 2021 18:31 EST) (on file with the Court) (indicating 18 class members had been recently transferred out of CCCF). Additionally, Defendants' vaccination plan

7

currently estimates that incoming detainees who are not vaccinated will receive a vaccine within ten days of their arrival at CCCF, and further indicates that Corizon is undergoing the certification process that would allow providers to administer the vaccine directly at intake. (ECF No. 577, PageID.14532–14533.) While awaiting Corizon's certification, incoming detainees may face a dangerous interim of time between arrival and vaccination that provides an opportunity for individual infection and greater facility spread.

Yet, despite these areas of uncertainty, it is also evident that the state of Michigan itself continues to experience a serious surge in infections: Michigan "has led the nation in new infections and hospitalizations for two weeks. Infections have now risen for eight consecutive weeks." *Michigan adds 5,259 cases, 85 deaths from COVID-19*, The Detroit News (Apr. 20, 2021) *https://www.detroitnews.com/story/news/local/michigan/2021/04/20/michigan-adds-5-259-cases-85-deaths-covid-19/7292734002/* [https://perma.cc/78QP-SB3C]. In particular, the state of Michigan has the second highest known presence of the highly infectious B.1.1.7 variant of the states. *Michigan was warned about British COVID-19*

8

*variant, but many ignored it*, Detroit Free Press (Apr. 18, 2021) *https://www.freep.com/story/news/local/michigan/2021/04/18/michigan-british-covid-19-variant-coronavirus/7220315002/* [https://perma.cc/FE69-3CVF]. Calhoun County is no exception, currently considered at a "very high" risk level of infections. *Calhoun County, MI*, COVID Act Now, *https://covidactnow.org/us/michigan-mi/county/calhoun_county/?s=1769690* [https://perma.cc/Y9WZ-HLYW].

Further understanding of CCCF's plan for ongoing vaccination administration and continuation of COVID-19 prevention protocols will inform the Court regarding what, if any, additional relief may be needed for the class and the habeas litigation group. Considering the known conditions at CCCF, in tandem with the renewed surge in COVID-19 cases throughout Michigan, the Court finds that habeas litigation group members remain in conditions that may violate these members' Fifth Amendment rights.

Accordingly, the Court continues to find that habeas litigation group members raise substantial claims of law and that COVID-19

9

presents special circumstances making the bail applications exceptional. The Court will continue to evaluate individual bail applications.

## II. Individual Bail Applications

This bail order marks the first instance in which the Court is presented with bail applicants who had access to the COVID-19 vaccine during their detainment at CCCF. It is necessary to evaluate whether these bail applicants remain members of the habeas litigation group in light of the applicants having been offered, or having received, the COVID-19 vaccine.

First, the Court will consider the impact of receipt of the COVID-19 vaccine. Zapete-Mijengos, Mata-Salazar, Al-Yasiri, and Avdulahaj all received the Janssen/Johnson & Johnson ("J&J") COVID-19 vaccine on either March 9 or March 12, 2021. (ECF No. 586, PageID.14636; ECF No. 587, PageID.14642.) Because Zapete-Mijengos, Mata-Salazar, Al-Yasiri, and Avdulahaj have received the COVID-19 vaccine, the bail applications of all four individuals will be considered collectively.

Membership in the habeas litigation group has continually been premised upon an individualized assessment of an individual's medical circumstances and whether such circumstances place them at heightened

risk of a dire outcome in the event of COVID-19 infection. The Court certified a habeas litigation group on July 31, 2020, and later amended this definition on August 19, 2020, of "all noncitizens who are detained in ICE custody in the [CCCF] or who have been released pursuant to a preliminary injunction or bail order issued by the undersigned, and who have one or more medical risk factors placing them at heightened risk of severe illness or death if exposed to COVID-19." (ECF No. 191, PageID.5578.) In so doing, the Court's order clarified that it would not limit the risk factors to be used to determine an individual's eligibility in the habeas litigation group, instead recognizing that "whether an individual is at heightened risk of a dire outcome requires individualized analysis." (ECF No. 162, PageID.5135.) Furthermore, as the Court explained when concluding that the habeas litigation group met Federal Rule of Civil Procedure 23(a)'s commonality requirement, "the key question for the Court's adjudications has been not the precise level of risk, which exists along a spectrum, but instead whether a given Plaintiff had heightened risk, which is a binary determination." (ECF No. 162, PageID.5138.)

Here, Zapete-Mijengos, Mata-Salazar, Al-Yasiri, and Avdulahaj each have medical risk factors (specifically, medical diagnoses) that Defendants have conceded as placing them at risk of a dire outcome from COVID-19 without the protections of a COVID-19 vaccine. However, the CDC advises that the J&J vaccine is 66.3% effective[1] at preventing COVID-19 in individuals who have not previously contracted COVID-19 and has demonstrated "high" efficacy at preventing hospitalization and death in individuals who did contract COVID-19. *Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety*, Centers for Disease Control (Apr. 13, 2021) *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html* [https://perma.cc/H99F-RMMF]. This degree of protection increased even further after four weeks had elapsed since receipt of the J&J vaccine: In the clinical trials relied upon by the CDC, "[n]o one who got COVID-19 at least 4 weeks after receiving the J&J/Janssen vaccine had to be hospitalized." *Id*. There is no doubt receipt of the J&J vaccine altered the risk profile calculus of

---

[1] Efficacy was found to be even higher in the United States: J&J vaccine efficacy was 74.4% during clinical trials. *The Advisory Committee on Immunization Practices' Interim Recommendation for Use of Janssen COVID-19 Vaccine — United States, February 2021*, Centers for Disease Control (Mar. 5, 2021) *https://www.cdc.gov/mmwr/volumes/70/wr/mm7009e4.htm?s_cid=mm7009e4_w* [https://perma.cc/4STF-P69Y].

these four bail applicants, and there is strong evidence to suggest that these four individuals would not face the same risk of hospitalization or death if exposed to COVID-19 as before being fully inoculated.

The extent to which fully vaccinated individuals with certain high-risk medical circumstances face a worse clinical outcome from COVID-19 than vaccinated individuals without high-risk medical conditions is unknown to the Court. However, the Court need not identify the precise level of risk an individual bail applicant faces, but rather, considers the binary question of whether such an applicant is at heightened risk of a dire outcome. Based on the research available at this time, the Court finds that all individuals who have received the J&J vaccine[2] and have

---

[2] The efficacy rates of the other COVID-19 vaccines available in the United States— Pfizer-BioNTech ("Pfizer") and Moderna—leads to a similar conclusion for individuals who receive those vaccines. The CDC reports that the Pfizer vaccine "was 95% effective at preventing laboratory-confirmed COVID-19 illness in people without evidence of previous infection" and that people who received the vaccine "were less likely to have more serious outcomes" than those who received a placebo. *Pfizer-BioNTech COVID-19 Vaccine Overview and Safety*, Centers for Disease Control (Apr. 16, 2021) *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html* [https://perma.cc/Q5KD-YJH7]. Likewise, Moderna is reported to be "94.1% effective at preventing laboratory-confirmed COVID-19 illness in people who received two doses who had no evidence of being previously infected" and resulted in fewer hospitalizations among people who received the Moderna vaccine than those who received a placebo. *Moderna COVID-19 Vaccine Overview and Safety*, Centers for Disease Control (Apr. 5, 2021) *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html* [https://perma.cc/BX8V-X8JB]. Accordingly, all individuals who have received at least one dose of the Pfizer or Moderna vaccine and have no prior evidence of COVID-19 infection two weeks after receiving that dose vaccine

no prior evidence of COVID-19 infection two weeks after receiving the vaccine are no longer at sufficient risk of hospitalization or death to meet the heightened risk threshold.

As a result of their receipt of the COVID-19 vaccine, Zapete-Mijengos, Mata-Salazar, Al-Yasiri, and Avdulahaj are no longer at heightened risk of a dire outcome from COVID-19. Accordingly, while Zapete-Mijengos, Mata-Salazar, Al-Yasiri, and Avdulahaj continue to be members of the class, they are no longer members of the habeas litigation group. The bail process as instituted solely considers members of the habeas litigation group—not class members generally—for bail. (ECF No. 168, PageID.5293–5294.) Because Zapete-Mijengos, Mata-Salazar, Al-Yasiri, and Avdulahaj are no longer members of the habeas litigation group, they are no longer eligible for bail on the basis of their heightened risk.

Second, the Court will consider the impact of an applicant having been offered, but declining to take, the COVID-19 vaccine. Imer Gashi was offered the vaccine, and subsequently declined it, on March 12, 2021.

---

are no longer at sufficient risk of hospitalization or death to meet the heightened risk threshold.

14

(ECF No. 586, PageID.14636.) It is unclear from the record presented why Gashi declined the vaccine.

Now as before when certifying the habeas litigation group, "[t]he Court's reasoning with respect to COVID-19 risk factors has developed as the case has moved forward." (ECF No. 162, PageID.5138.) The Court adjudicates group membership based on a holistic, individualized determination of whether an individual "ha[s] one or more medical risk factors placing them at heightened risk of severe illness or death if exposed to COVID-19." (ECF No. 191, PageID.5578; *see* ECF No. 414, PageID.11029.) The CDC broadly[3] recommends that individuals with medical conditions that make them more likely to be severely ill from COVID-19 work with their medical providers to be vaccinated as soon as possible. *People with Certain Medical Conditions*, Centers for Disease Control (Mar. 29, 2021) *https://www.cdc.gov/coronavirus/2019-*

---

[3] While the CDC indicates that "COVID-19 vaccines may be administered to most people with underlying medical conditions once vaccine is available to them[,]" individuals with certain medical conditions may have additional considerations to evaluate in order to make an informed decision about receiving a COVID-19 vaccine. *Vaccine Considerations for People with Underlying Medical Conditions,* Centers for Disease Control (Mar. 12, 2021) *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/underlying-conditions.html* [https://perma.cc/DA4A-8UFY].

15

*ncov/need-extra-precautions/people-with-medical-conditions.html*

[https://perma.cc/DA4A-8UFY]. And, as stated previously, individuals who have received the COVID-19 vaccine and are not infected by COVID-19 within the two weeks after receiving the vaccine are no longer at heightened risk of a dire outcome. Accordingly, a person's individual access to the vaccine as a preventive measure is a factor to be considered in the holistic, individualized analysis of whether that person is at heightened risk of a dire consequence from COVID-19.

In the absence of any evidence that he has a medical restriction that prevents him from being vaccinated against COVID-19, Gashi can now reasonably alleviate his risks from COVID-19 by taking the vaccine that has been offered to him. His access to the COVID-19 vaccine mitigates the heightened risk that he would otherwise face as a result of his medical risk factors. Accordingly, Gashi is no longer a member of the habeas litigation group following his denial of the opportunity to take the COVID-19 vaccine. Because Gashi is no longer a member of the habeas litigation group, he is no longer eligible for bail on this basis. The Court denies Gashi's application for bail.

### III. Conclusion

For the reasons stated above, the Court denies bail for class members Zapete-Mijengos, Mata-Salazar, Gashi, Al-Yasiri, and Avdulahaj. Should new research reveal that the vaccines are not effective against variants of COVID-19, or that the length of immunity is limited and habeas litigation group members remain in custody beyond their period of efficacy, these motions may be renewed.

**IT IS SO ORDERED.**

Dated: April 27, 2021　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　JUDITH E. LEVY
　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 27, 2021.

　　　　　　　　　　　　s/William Barkholz
　　　　　　　　　　　　WILLIAM BARKHOLZ
　　　　　　　　　　　　Case Manager